UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| Michael Sessa,<br><br>    *Petitioner*,<br><br> – against –<br><br>United States,<br><br>    *Respondent*. | 92-CR-351<br>20-CV-1957<br><br>**Not for Publication**<br><br>**Opinion & Order** |

ROSS, United States District Judge:

  Michael Sessa brings this motion to vacate his 1993 conviction for using a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). Sessa was convicted of three charges that could have served as the predicate offense for the § 924 conviction. While his conviction for murder in violation of 18 U.S.C. § 1959(a)(1) continues to meet the definition of a crime of violence, his two convictions for conspiracy to commit murder in violation of 18 U.S.C. § 1959(a)(5) no longer constitute valid predicates following the Supreme Court decision in *United States v. Davis*, 139 S. Ct. 2319 (2019). Sessa argues that this means his § 924(c) conviction must be vacated. However, a review of the factual record reveals that in order to convict Sessa, the jury must have believed that he used a firearm in the murder. Thus, the motion is denied.

## BACKGROUND

  In 1993, following a jury trial, Sessa was convicted of the following offenses: (1) using a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) (2) racketeering, in violation of 18 U.S.C. § 1962(c); (3) racketeering conspiracy, in violation of 18 U.S.C. § 1962(d); (4) conspiracy to murder Anthony Coluccio, in violation of 18 U.S.C. § 1959(a)(5); (5) murder of Anthony Coluccio, in violation of 18 U.S.C. § 1959(a)(1); (6) conspiracy to murder members of the so-called "Orena faction", in violation of 18 U.S.C. § 1959(a)(5); and (7)

1

conspiracy to make and collect extortionate extensions of credit, in violation of 18 U.S.C. §§ 892(a) and 894(a).

I. **Evidence Presented at Trial**

The numerous charges against Sessa stemmed from his involvement with the Colombo organized crime family. Three charges served as potential predicates for the 924(c) conviction: conspiracy to murder Anthony Collucio, murder of Anthony Collucio, and conspiracy to murder members of the Orena faction (an opposing faction within the Colombo family). For reasons I will describe further below, the murder of Anthony Coluccio is the piece of this case that is most relevant to this motion. In my opinion and order on Sessa's first habeas petition, I described the evidence the government presented at trial, as well as Sessa's defenses. *See United States v. Sessa*, No. 92-CR-351 ARR, 2011 WL 256330, at *4 (E.D.N.Y. Jan. 25, 2011), *aff'd*, 711 F.3d 316 (2d Cir. 2013). As background for this motion, I reproduce my prior summary of the evidence and defenses concerning the Collucio murder. All of the individuals referred to in this summary are other members and associates of the Colombo crime family.

> Anthony "Bird" Coluccio, an associate of the Colombo Family, and a member of petitioner's crew, was murdered in May 1989. (TT at 219:20–220:1). As part of petitioner's crew, Coluccio primarily conducted loansharking activities, but he had also "done some work with [petitioner's brother and Colombo Family consiglieri Carmine Sessa] and [petitioner], meaning murders." (TT at 221:9–10.) During the several months prior to his murder, Colluccio "was dealing drugs, was taking drugs, was committing robberies, [and] was doing stupid things." (TT at 220:20–21.) In the winter of 1989, he was arrested with his brother for possession of drugs while on his way to Atlantic City, New Jersey. (TT at 918:7–10.) During a meeting between petitioner, Imbriale, Coluccio's wife, and Michael Bullino, a Colombo Family associate, petitioner learned of Coluccio's arrest, and remarked that "Bird is up to his old shit again." (TT at 920:8.)
>
> Fearing that, if arrested again, Coluccio would cooperate with authorities, Carmine Sessa instructed petitioner and Ambrosino to "kill [Coluccio] in the car and dump him off on Third Avenue under the highway where the Puerto Ricans hang out, in a drug infested neighborhood; let everybody think that the drug dealers killed him." (TT at 221:18–21.) Several weeks later, on May 15, petitioner called Ambrosino and instructed him to meet petitioner to begin looking for Coluccio that night. (TT

2

at 222:10–13.) Petitioner, Ambrosino, and Hank Smurra, a made member of the Colombo Family, searched for Coluccio at his regular hangouts to no avail, and abandoned their search at 1:00 a.m. (TT at 222:14–17.) They searched again the next night, but still were unable to locate Coluccio. (TT at 222:18–20.)

The next day, petitioner and Ambrosino were at their usual meeting place on the corner of 13th Avenue and 69th Street at approximately 3:00 p.m., when Coluccio arrived with Sayegh and Billy, a Columbo Family associate. (TT at 222:23–323:1; 223:11.) Petitioner instructed Coluccio to return to the meeting place at 8:00 p.m. (TT at 223:6–7.) While waiting for Coluccio that evening, Ambrosino suggested to petitioner that they take Coluccio to Staten Island instead of leaving his body in Brooklyn. (TT at 772:21–773:12.) Petitioner agreed with Ambrosino, believing that downtown Brooklyn was too crowded and busy for them to carry out their plan. (TT at 773:10–12.)

When Coluccio arrived at approximately 8:00 p.m., Ambrosino told Coluccio that his "wife was having a problem with a neighbor and [they] had to go to Staten Island to take care of the neighbor." (TT at 223:14–16.) As Coluccio's right arm was in a sling, petitioner instructed Coluccio to move to the passenger seat and allow Ambrosino to drive, and petitioner sat in the back seat on the passenger side. (TT at 223:18–24; 224:2.) Ambrosino drove towards Staten Island, followed by Smurra in his own vehicle. (TT at 223:18–21; 224:15–18.) When they were several blocks from Ambrosino's home, petitioner shot Coluccio three times in the back of the head. (TT at 225: 1–10.) Ambrosino pulled the vehicle over to the right side of the road where he cleaned the steering wheel with his jacket, and petitioner cleaned the door. (TT at 225: 15–17.) They walked to Smurra's vehicle, approximately one block away, and drove towards Rockland Avenue, making several turns along the way. (TT at 226:11–12.) Petitioner threw the gun into a storm drain on Rockland Avenue, where an agent from the Federal Bureau of Investigation ("FBI") recovered the weapon more than two years later. (TT at 794–96.)

\*\*\*

Petitioner's defense consisted of suggesting to the jury that Ambrosino, not petitioner, shot Coluccio, as revenge for insulting Ambrosino during the robbery of a jewelry store. (TT at 1353–54.) Moreover, petitioner attempted to cast doubt upon Ambrosino's testimony that petitioner shot Coluccio by intimating that petitioner was not even present at the Coluccio murder, and that Ambrosino placed him there to obtain a better plea bargain for himself. (TT at 709:25–712:18; 1350:3–1531:19.)…[P]etitioner's defense consisted of the theory that Ambrosino testified truthfully to the facts of the murder, but fictitiously substituted petitioner into the murder plot[.]

*Id.* at \*4, \*25.

## II.   Jury Charge and Verdict

Judge Weinstein provided the following instruction as to the murder charge:

3

> "[T]he government must prove beyond a reasonable doubt that the defendant intended to kill another, and two, that in accordance with that intent, the defendant acted so as to cause the death of that other person….
>
> A person intends to cause the death of another when that is his conscious aim or objective. Even if that person didn't pull the trigger himself, physically cause the death, by himself wielding the gun, the defendant may nonetheless be guilty of murder as charged.
>
> Under New York Penal Law, a person is criminally liable for murder when, acting with the mental culpability required for the commission of murder, he solicits, requests, commands, importunes or intentionally aids another person to commit the murder. We call that aiding or abetting. If you find that the defendant was aiding and abetting another in the commission of the crime of murder, he is as guilty as if he was solely responsible for the planning and the execution of the entire crime.
>
> In order for the defendant to be guilty of aiding and abetting the crime, it is necessary that there be more [than] presence or knowledge that a crime is being committed and more than mere acquiescence in the crime itself. There must be some affirmative participation which encourages or knowingly assists the one who did the criminal act, pulled the trigger.
>
> TT 1437:16–1438:14.
>
> Judge Weinstein provided the following instruction as part of his definition of conspiracy:
>
> [T]he reasonably foreseeable acts, declarations, statements and omissions of any member of the conspiracy, in furtherance of the common purpose of the conspiracy during the course of the conspiracy are deemed under the law to be the acts of all of the members and all of the members are responsible for the acts, declarations, statements and omissions[.]

TT 1143:16–22. This instruction is known as a *Pinkerton* instruction. *See, e.g.*, *United States v. Masotto*, 73 F.3d 1233, 1239 (2d Cir. 1996) (citing *Pinkerton v. United States*, 328 U.S. 640 (1946)).

> Finally, Judge Weinstein provided the following instruction as to the § 924(c) count:
>
> Count Eight charges the defendant with using and carrying firearms. The indictment reads:

4

> In or about and between May 1, 1989 and July 14, 1992, both dates being approximate and inclusive, within the Eastern District of New York ... the defendant Michael Sessa during and in relation to crimes of violence, to wit, the crimes charged in Count Three [conspiracy to murder Coluccio], Four [murder of Coluccio], and Five [conspiracy to murder Orena faction members], did use and carry firearms.[2]

> ...The law the defendant is charged with violating in Count Eight states:

> Whoever, during and in relation to any crime of violence for which he may be prosecuted in a court of the United States, uses or carries a firearm, commits a crime, a violent crime.

> Counts charged in Three, Four and Five are such crimes of violence. To prove the charge of this count then, the government must prove three elements: First, that the defendant committed at least one of the crimes charged in Counts Three, Four and Five. Second, the government has to prove that during the commission of and in relation to that crime or crimes, the defendant used or carried a firearm, or aided and abetted another in so doing. .... And third, the government must prove that the defendant knew that he was carrying or using or helping another to carry and use a firearm and aided and abetted another in so doing in connection with the crime charged.

TT 1458-60.

On November 12, 1992, after a two-week jury trial, Sessa was convicted of all eight counts. The verdict was delivered on a general verdict sheet, which did not require the jury to indicate the predicate offense on which the 924(c) conviction was based.

### III.   Sentencing

Sessa was sentenced to life in prison on the racketeering and murder counts, and the statutory maximum prison terms on the remaining counts, with the sentences to run concurrently, and a five-year term for the 924(c) count to be run consecutively to the other terms.

### IV. Appeals and Post-Conviction Motions

Sessa has sought post-conviction relief prior to this motion: he appealed his conviction, made a Rule 33 motion, and moved to vacate his petition. His convictions were affirmed and his motions denied. *See United States v. Sessa*, 41 F.3d 1501 (2d Cir. 1994) (table). *United States v. Sessa*, 92-CR-351 (ARR), 2011 WL 256330 (E.D.N.Y. Jan. 25, 2011), *aff'd by United States v. Sessa*, 711 F.3d 316 (2d Cir. 2013).

On June 23, 2016, Sessa filed a second motion to vacate, this time arguing his § 924(c) conviction was invalid following *Johnson*. ECF No. 1835. On April 28, 2020, the Second Circuit authorized Sessa to file a successive petition, stating as follows:

> We acknowledge that Petitioner's § 924(c) conviction might still be supported by a valid predicate, even if the other predicates are no longer valid after Johnson and Davis. However, making that determination in the present case would require detailed review of the criminal proceedings and factfinding that the district court is better suited to perform, particularly since portions of the record are not currently available to this Court.

*See* Second Circuit Mandate, ECF No. 1834.

## DISCUSSION

In *United States v. Johnson*, 135 S. Ct. 2551 (2015), the Supreme Court ruled that the portion of the Armed Career Criminal Act defining the term "violent felony" to include "any conduct that presents a serious potential risk of physical injury to another" was unconstitutionally vague. *Id.* at 2557–60 (citing § 924(e)(2)(B)(ii)). *Johnson* led to litigation on similar statutory definitions, including the statute at issue in this case, § 924(c)(3). Section 924(c) authorizes a five-year mandatory minimum sentence for:

> [A]ny person who, during and in relation to any crime of violence…for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence…

6

§ 924(c)(1)(A)(i). For purposes of this subsection, a "crime of violence" is defined as:

[A]n offense that is a felony and—

(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense

§ 924(c)(3).

The Second Circuit initially found that § 924(c)(3)(B) required a different type of analysis than § 924(e)(2)(B)(ii), and therefore it was not similarly void for vagueness. *United States v. Barrett*, 903 F.3d 166, 178 (2d Cir. 2018), *vacated*, 139 S. Ct. 2774 (2019) (Mem.), *and abrogated by United States v. Davis*, 139 S. Ct. 2319 (2019). However, the Supreme Court rejected *Barrett*'s analysis in *United States v. Davis*, 139 S. Ct. 2319 (2019), which held that § 924(c)(3)(B) was unconstitutionally vague. *Davis* did not affect the § 924(c)(3)(A) ("the Force Clause").

In this case, the jury was instructed that Sessa was charged with three offenses which could serve as predicates for a § 924(c) conviction: conspiracy to murder Collucio, murder of Collucio, and conspiracy to murder members of the Orena faction. This instruction was incorrect. After *Davis*, two of those three offenses no longer qualify as crimes of violence.

As the government concedes, *Davis* makes clear that murder conspiracy is not a crime of violence in the meaning of the statute. *See* Govt. Br. 11. But § 1959(a)(1) murder remains a valid predicate offense because it meets the force clause's definition of "crime of violence" because it is a felony that "has as an element the use…of physical force against the person…of another[.]" § 924(c)(3)(A); *See, e.g., United States v. Sierra*, 782 F. App'x 16, 20-21 (2d Cir. 2019) (summary order); *Rizzuto v. United States*, No. 16-CV-3557 (ERK), 2019 WL 3219156, at *3 (E.D.N.Y. July 17, 2019) ("[I]ntentionally 'caus[ing] the death of [another] person' invariably involves 'force

7

capable of causing physical pain or injury to another person.'" (quoting *Johnson v. United States*, 559 U.S. 133, 140 (2010))); *United States v. Russell*, No. 05-CR-401, 2018 WL 3213274, at *3 (E.D.N.Y. June 29, 2018) ("[M]urder, no matter the degree, entails a 'use ... of physical force' sufficient to trigger the elements clause of § 924(c); this conclusion is compelled because the Supreme Court has defined "physical force," in this context, as "violent force—that is, force capable of causing physical pain or injury to another person[.]" (quoting *Johnson*, 559 U.S. at 140)); *Bonilla v. United States*, Nos. 07 CR 0097 (SJ), 16 CV 3269 (SJ), 2017 WL 8813076, at *1 (E.D.N.Y. Aug. 23, 2017) ( "Murder necessarily entails enough force to cause injury[.]").

Sessa argues that the fact that both valid and invalid predicates underly his § 924(c) conviction means that the conviction must be vacated. Sessa Reply 1. He proposes a broad rule: "Section § 924(c) convictions that could be based on both valid and invalid predicates do not survive Davis." *Id.* at 2. This proposed rule is not the law of this circuit. The correct rule is that if a jury is instructed on both valid and invalid predicate offenses, the conviction stands if the verdict "undoubtedly rests on a valid…predicate[.]" *United States v. Vasquez*, 672 F. App'x 56, 61 (2d Cir. 2016); *see also United States v. Nesbitt*, No. 18-11125, 2020 WL 1970519, at *4 (11th Cir. Apr. 24, 2020) (upholding a § 924(c) conviction based on both valid and invalid predicates because "the evidence [wa]s overwhelming" that the jury relied on the valid predicate). This rule is reflected in the Second Circuit's mandate in this case, which states as follows:

> We acknowledge that Petitioner's § 924(c) conviction might still be supported by a valid predicate, even if the other predicates are no longer valid after *Johnson* and *Davis*. However, making that determination in the present case would require detailed review of the criminal proceedings and factfinding that the district court is better suited to perform, particularly since portions of the record are not currently available to this Court.

Mandate 2. Even the case the case Sessa relies heavily on, *United States v. Rodriguez*, 2020 U.S. Dist. LEXIS 66715 (S.D.N.Y. Apr. 15, 2020) does not support the broad rule that Sessa advocates.

8

Instead, Judge Haight conducted a factual inquiry to conclude that in the context of the facts of that particular case, it was impossible to say what predicates the jury rested its § 924(c) verdict on. *Id.* at *21–22.

My review of the record in this case reveals that Sessa's § 924(c) conviction undoubtedly rests on a valid predicate. As described above, the government presented the jury with substantial evidence that Sessa shot Coluccio in the head three times with a revolver. *Sessa*, 2011 WL 256330, at *4 (E.D.N.Y. Jan. 25, 2011). No rational jury would return a verdict of guilty on a § 924(c) charge predicated on two conspiracies to commit murder with a firearm and the substantive offense of murder committed with a firearm, and not return the same verdict if predicated only on the murder committed with a firearm.

The jury was instructed on multiple theories of liability, so it is possible that the jury did not believe Sessa personally shot Coluccio, but instead, believed Sessa aided and abetted in the shooting, or was liable under *Pinkerton* because the murder by firearm was a foreseeable act committed by a co-conspirator. *See* TT 1437:16–1438:14; 1143:16–22. Sessa is correct that "there is no way of knowing if the jury credited some or all of Mr. Sessa's defense and still convicted him believing he aided and abetted the shooter or was the actual shooter." Sessa Reply 5. But that distinction does not actually matter for purposes of § 924(c). A substantive conviction of a categorical crime of violence involving a firearm is a valid predicate for a § 924(c) conviction, regardless of what theory of liability it proceeds on. *See Abouhalima v. United States*, No. 20-CV-834(LAK), 2020 WL 3318031 (S.D.N.Y. June 18, 2020) (holding that assault of a federal officer was a valid § 924(c) predicate, regardless of the fact that the jury was instructed on both principal liability and *Pinkerton* liability); *United States v. McKelvey*, 773 F. App'x 74, 75 (3d Cir. 2019) (holding that for § 924(c) purposes "it does not matter whether [petitioner] was convicted as a

principal or an aider and abetter" to using a gun in a violent crime, because "[a]iding and abetting is not a separate crime" and a "conviction for aiding and abetting is therefore treated as a conviction for the crime");

Thus, regardless of what theory of liability Sessa was convicted under, he was convicted of a crime of violence that unquestionably used a firearm. If there was any dispute about the method of the murder, Sessa's § 924(c) would be undermined by the existence of both valid and invalid potential predicates. However, the facts in this case are clear that any rational jury convicting Sessa of Collucio's murder must have believed that the crime involved a gun, whether used directly by Sessa or an accomplice or con-conspirator.

## CONCLUSION

For the foregoing reasons, petitioner's motion to vacate is denied.

So ordered.

                                            /s/
                                            Allyne R. Ross
                                            United States District Judge

Dated:       June 24, 2020
              Brooklyn, New York