

EL SESSA
004
1000
RG, PA. 17837

CERTIFIED MAIL

7014 1820 0002 3719 4775

**Retail**

U.S. POSTAGE PAID
PM
LEWISBURG, PA 17837
JUN 11, 2025

11201

**$0.00**

S2324Y500816-14

RDC 03

JUN 1 0 202

ZE
6/5/25

THE CHAMBERS OF
HONORABLE ALLYNE R. ROSS
UNITED STATES COURTHOUSE
225 CADMAN PLAZA EAST
BROOKLYN, NY. 11201

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ JUN 1 7 2025 ★

BROOKLYN OFFICE

"LEGAL MAIL"

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

MICHAEL SESSA,
**Petitioner,**

**V.**

Case No. 92 Cr. 351(ARR)

UNITED STATES OF AMERICA,
**Respondent.**

## MEMORANDUM IN SUPPORT OF MOTION FOR REDUCTION IN SENTENCE PURSUANT TO 18 U.S.C. § 3582(c)(1)(A)(i)

### PRELIMINARY STATEMENT

NOW COMES the Defendant, Michael Sessa ("Mr. Sessa"), through counsel, and submits this memorandum in support of his motion for a reduction in sentence under 18 U.S.C. § 3582(c)(1)(A)(i) and Amendment 814 in accordance with the First Step Act. This is Mr. Sessa's third request for such relief. In his first request, Mr. Sessa argued that his health conditions and rehabilitation among other issues constituted extraordinary and compelling reasons for his immediate release. *See* ECF No. 1840 - June 26, 2020. The Court found that Mr. Sessa "has shown that he has serious medical conditions that place him at heightened risk of severe illness from the COVID-19 pandemic," and that he had presented extraordinary and compelling reasons for release concerning his health conditions but concluded that the factors outlined in 18 U.S.C. 3553(a) outweighed those reasons. *See* ECF No. 1843 - July 12, 2020, Court Order denying Compassionate Release.

Mr. Sessa then filed a motion for reconsideration of the order denying compassionate release and that motion was subsequently denied. *See* ECF No. 1895 - Order denying reconsideration.

On July 7, 2023, Mr. Sessa filed a second motion for a sentence reduction explaining that his health factors and rehabilitation still favor compassionate release. ECF No. 1928. Mr. Sessa sought release because his medical conditions placed him at a serious risk of illness or death. He argued that release is warranted because the First Step Act's changes create a disparity between his original sentence and the sentence he would receive today, and because his post-sentencing rehabilitation favors release. He also argued that other co-defendants with more serious relevant conduct were recently granted compassionate release and pointed out the fact that the sentencing guidelines are no longer mandatory and that the First Step Act empowered district courts with evaluating motions for compassionate release to consider any extraordinary and compelling reasons a defendant might raise. Mr. Sessa's motion cited numerous authorities from this Circuit that backed up his position as well as submitted over 130 letters of support as exhibits. *See* ECF No. 1928.

The Court denied Mr. Sessa's second motion for a reduction in sentence on September 8, 2023, and stated:

> For the same reasons stated in my order denying Mr. Sessa's first motion for compassionate release, I find that any evidence of extraordinary and compelling reasons for release is outweighed by the nature and circumstances of his offenses; his history and characteristics; and the need for his sentence to reflect the seriousness of his offense, promote respect for the law, and provide just punishment for his offense. 18 U.S.C. § 3553(a);
>
> I agree with the government and deny Defendant's second motion for compassionate release.

*See* ECF No. 1942 - Opinion and Order, pg. 3 and 6.

In this memorandum, Mr. Sessa presents five extraordinary and compelling reasons that when viewed in their totality, after consideration of the § 3553(a) factors, warrant a sentence reduction: (A) Unusually Long Sentence; (B) Imminent Risk of Being Infected By an Infectious

Disease, (C) Age of Defendant, (D) Other Reasons, and (E) Mr. Sessa's Remarkable Post-Conviction Rehabilitation.

Importantly, as explained in significant detail below, Mr. Sessa provides the Court with a plethora of credible, empirical evidence, establishing "the most up-to-date picture" of his history and characteristics, "which sheds light on the likelihood that [the defendant] will engage in future criminal conduct," *Pepper v. United States*, 562 U.S. 476, 492 (2011), and clearly establishes that he is both unlikely to reoffend and presents no risk to the public if released at this time. Mr. Sessa asks the Court in his letter "to look at the person I am today and not who I was over three decades ago when I committed these serious offenses, was arrested and eventually sentenced." See Exhibit 1. He also expresses his remorse and states, "I truly wish that I could go back more than 30 years and undo the wrongs I have done. I regret them everyday as I sit here and look back on all the harm I have caused the victims and their families." *Id.*

As his institutional record, programming, letters from family and BOP staff to the Court show, he is a changed man and not the same person that he was 33 years ago. He has also lived in constant fear for over 4 years now since the pandemic began in 2019. As he states in his letter to the Court, "COVID-19 was by far the worst time I have spent in prison. As the world embraced an unknown and deadly pandemic, I was locked in a cell for months at a time not being told exactly what was going on. All [that] us inmates knew was what we heard on the radio that people were dying from it all over the world. Newspapers showed tractor trailers outside hospitals being used as makeshift morgues. Then the disease got inside the prison and it spread like wildfire. I was left locked inside the cell to live or die." *See* Exh. 1.

Tara Sessa, the daughter of Mr. Sessa, writes the Court that her father has been incarcerated since she was five months old. She has "never been able to spend any

holidays/birthdays or special family events" with him. *See* Exhibit 2. She adds that other courts have released others involved in the same case and "[h]e deserves a second chance. My father does not deserve to die in prison." *Id.* Linda Sessa explains that Mr. Sessa's life sentence was devastating to her and their families. She describes it as "a slow death sentence imposed on all of us," and adds that "[i]t is the worst feeling in the world to know that your husband has been condemned to die in prison. I have been living with this torment for 31 years." *See* Exhibit 3. She asks the Court to look at the man he is today and "[d]o not leave him behind to die in prison." *Id.*

The victim's wife, Jennie Bruzzese-Coluccio has written a letter to the Court on Mr. Sessa's behalf stating that, "[w]hile Michael has spent over 30 years in prison, he paid dearly for his crimes, and it seems like the sentence is excessive." *See* Exhibit 4. Mrs. Coluccio expressed to the Court that she hopes her letter "can be instrumental in helping Michael get the opportunity to be released and go home to his family." *Id.* Certainly, this letter from the victim's wife, the person most affected by Mr. Sessa's crime should hold tremendous weight with the Court's decision in this case.

We hope that after consideration of his remarkable rehabilitation, harsh conditions of confinement, letter of Mrs. Coluccio and positive behavior and thinking, the Court will agree that a reduced sentence of time-served, in light of the combined "extraordinary and compelling reasons" raised herein and in his first and second requests, is sufficient, but not greater than necessary, to satisfy the goals of sentencing. Certainly, the goals of corrections and rehabilitation have been accomplished in this case. As stated by Tara Sessa clearly Mr. Sessa "does not deserve to die in prison."

For the reasons raised herein, the Court should reduce his sentence to time served.

# STATEMENT OF FACTS

The Court is aware of the circumstances of this case, so we will offer an abridged history here. On November 12, 1992, Mr. Sessa was convicted of eight offenses following a jury trial: (1) Participating in the conduct of the Colombo organized crime family of La Cosa Nostra (the "Colombo Family") through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c); (2) Conspiring to participate in the conduct of the Colombo Family through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(d); (3) Conspiring to murder Anthony Coluccio, a Colombo Family associate, in violation of 18 U.S.C. § 1959(a)(5); (4) Murdering Anthony Coluccio in violation of 18 U.S.C. § 1959(a)(1); (5) Conspiring to murder members of the Colombo Family who were loyal to Victor Orena in violation of 18 U.S.C. § 1959(a)(5); (6) Conspiring to make extortionate extensions of credit in violation of 18 U.S.C. § 892; (7) Conspiring to make extortionate collections of credit in violation of 18 U.S.C. § 894; and (8) Using and carrying a firearm in connection with crimes of violence in violation of 18 U.S.C. § 924(c)(1) (ECF No. 1773 - Jury Verdict 11-12-92).

Judge Weinstein sentenced Mr. Sessa to three terms of Life Imprisonment for the racketeering, racketeering conspiracy, and underlying murder counts; two terms of ten years incarceration for the murder conspiracy counts; and two terms of twenty years incarceration for the loansharking counts. Those sentences ran concurrently. Mr. Sessa also received an additional consecutive term of five years incarceration for the firearm count. Many appeals followed but Mr. Sessa's sentence was ultimately Affirmed.

Mr. Sessa is now 65 years old and files this third motion for compassionate release pursuant to Amendment 814, made effective November 1, 2023, under the new amended policy statement contained at U.S.S.G. § 1B1.13, which establishes specific circumstances that may

provide extraordinary and compelling reasons for a reduction in sentence.

**DISCUSSION**

## I. MR. SESSA MEETS THE PROCEDURAL PREREQUISITES FOR THIS MOTION

Until recently, a District Court could grant a motion for sentence reduction only by the motion of the Director of the Bureau of Prisons. The First Step Act of 2018, Pub. L. No. 115-391, 603(b), 132 Stat. 5194, 5238. The amended law empowers Defendants to bring such a motion in court after fully exhausting administrative remedies. Alternatively, a Defendant may file such a motion without exhausting administrative remedies if more than 30 days have passed since the Defendant delivered a request for relief to the Warden of the Defendant's facility – whichever comes earlier. *See United States v. Saladino*, 7 F. 4th 120, 124 (2nd Cir. 2021). Mr. Sessa is filing this motion more than 30 days after requesting relief from the Warden. He has met the exhaustion or 30 days requirement.

On August 15, 2024, Mr. Sessa emailed a request to the Warden of USP Lewisburg seeking a reduction in sentence due to unusually long sentence, imminent risk of an ongoing infectious disease due to his underlying medical conditions, extraordinary rehabilitation, the harshness of his incarceration during the pandemic, and explained how the § 3553(a) factors favor his release. *See* Exhibit 5. As of the filing of this motion Mr. Sessa has never received a response from the Warden on his request for a reduction in his sentence. This is considered a denial and 30 days have since passed. As such, Mr. Sessa has satisfied any procedural requirements of § 3582(c)(1) (A)(i).

## II. MR. SESSA'S CIRCUMSTANCES TAKEN TOGETHER ARE EXTRAORDINARY AND COMPELLING

The Second Circuit's decision in *United States v. Brooker*, 976 F.3d 228 (2d Cir. 2020) endowed district courts with "near absolute discretion in determining what constitutes an extraordinary and compelling circumstance warranting relief when deciding motions brought directly by a defendant." *United States v. Correa*, 2020 WL 7490098, at *3 (VEC) (S.D.N. Y. Dec. 21, 2020). Practically, this means district courts are "free[ ] ... to consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before them in motions for compassionate release." *United States v. Warren*, 2021 WL 4059437, at *3 (NG) (E.D.N.Y. Sept. 7, 2021), quoting *Brooker*, 976 F.3d at 237.

In *Concepcion v. United States*, No. 20-1650, 2022 WL 2295029, at *14 (U.S. June 27, 2022), the Supreme Court recently clarified that "[t]he only limitations on a court's discretion to consider any relevant materials at an initial sentencing or in modifying that sentence are those set forth by Congress in a statute or by the Constitution" (emphasis added). As applied here, the only "statutory limit [set forth by Congress] on what a court may consider to be extraordinary and compelling is that '[r]ehabilitation ... alone shall not be considered an extraordinary and compelling reason.'" *Brooker*, supra at 237-38 (quoting 28 U.S.C. § 994(t)). "Where no single factor alone may justify release, the totality of circumstances may still rise to the level of extraordinary and compelling reasons for release." *United States v Reynolds*, 99-CR-520 (NGG) (E.D.N.Y. May 6, 2022) (citation omitted); see e.g., *United States v. Tellier*, 92-CR-869 (LGS) (S.D.N.Y. May 10, 2022) ("while Defendant's extraordinary rehabilitation, harsh prison conditions and lengthy imprisonment would alone be insufficient, together they present an extraordinary and compelling reason for Defendant's sentence reduction."); *United States v. Lugo*, 01-CR-922 (NG) (E.D.N.Y. Mar 11, 2022) (finding that Lugo's vulnerability to Covid 19,

sentencing disparity with his co-defendants (and with defendants in a related case), and rehabilitation taken together establish extraordinary and compelling reasons for a sentence reduction); *United States v. Vargas*, 502 F. Supp. 3d 820 (S.D.N.Y. 2020) (finding that, in combination, the defendant's rehabilitation, harsh sentence, medical issues, the pandemic, and intention to care for his mother were extraordinary and compelling reasons); *United States v. Fisher* , 493 F.Supp.3d 231, 235-36 (S.D.N.Y. 2020) (finding that the sum of Defendant's age, health conditions, particularized COVID-19 risk and exceptional rehabilitation efforts constituted extraordinary and compelling reasons); *United States v. Qadar*, No. 00-CR-603, 2021 WL 3087956, at *8 (E.D.N.Y. July 22, 2021), 2021 WL 3087956, at *8 (finding that the combination of Defendant's medical conditions and effects of prolonged COVID lockdown, family circumstances, good character, rehabilitation, and prison accolades constituted extraordinary and compelling reasons); *United States v. Millan*, 2020 WL 1674058, at *7 (S.D.N.Y. Apr. 6, 2020) ("[R]ehabilitation is relevant to the question of whether a sentence should be reduced and that rehabilitation, when considered together with other equitable factors, could constitute 'extraordinary and compelling reasons' for a sentence reduction." (emphasis in original).

As listed above, Mr. Sessa alleges five circumstances that, taken together, are extraordinary and compelling: (1) unusually long sentence; (2) imminent risk of being infected by an infectious disease; (3) age of defendant; (4) other reasons, the harsher than usual continuing prison conditions due to the COVID-19 pandemic are more punitive in nature than the Court could have foreseen during sentencing; and (5) his remarkable post-conviction rehabilitation over the past 33 years.

Mr. Sessa's five extraordinary and compelling circumstances militate against his continued imprisonment and warrant a sentence reduction. We respectfully submit that these five

factors detailed herein - when considered individually or cumulatively - clearly establish the existence of "extraordinary and compelling reasons" for a reduction of Mr. Sessa's sentence to time-served. Courts, both locally and nationally, have found these circumstances, which are discussed below in turn, to be extraordinary and compelling to support sentence reductions.

### (A) UNUSUALLY LONG SENTENCE (U.S.S.G. § 1B1.13(b)(6))

The Second Circuit has made clear that the Court may consider the excessive length of a sentence as a factor among the "full slate" of circumstances supporting a finding that there exists an extraordinary and compelling reason for compassionate release. See *United States v. Brooker*, 976 F.3d 228, 231 (2d Cir. 2020) (rejecting the district court's view that the excessive length of a sentence "cannot qualify as an extraordinary and compelling circumstance"); *United States v. Carlton*, 2020 WL 17104061, at *3 (S.D.N.Y. Nov. 20, 2022) (citing *Brooker*, 976 F. 3d at 237)("In resolving a compassionate release motion, district courts are permitted to consider whether the harshness of a sentence constitutes an 'extraordinary and compelling reason' favoring release."); see also *United States v. Amerson*, 2023 WL 4373589, at *7 (E.D.N.Y. July 6, 2023) (finding the "excessive length" of defendant's sentence as compared to contemporary sentences for similar conduct a factor supporting compassionate release); *United States v. Hall*, 2024 WL 3718341, at *4 (D. Conn. Aug 8, 2024) ("[T]he *Brooker* decision suggests that district courts in this Circuit have wide discretion in considering whether a lengthy sentence, alone or in combination with other factors, is sufficient to warrant a reduction in sentence.").

In addition, Section 1B1.13(b)(6) provides that if a defendant received an unusually long sentence and has served at least ten years of his term of imprisonment, a change in the law may be considered in determining whether the defendant presents an extraordinary and compelling

reason, when such a change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed.

The sentencing commission's guideline is directly applicable to this case. There is no dispute that Mr. Sessa has served more than ten years of his sentence, that his life sentence (for one murder conviction) is unusually long, and that the change in the law regarding the sentencing guidelines from the monumental decision by the United States Supreme Court in *United States v. Booker*, 125 S. Ct. 738 (2005) entitles the defendant to relief. Specifically, the change in the law created by *Booker* and the changes in the sentencing landscape today now provides a gross disparity between the sentence Mr. Sessa is currently serving and the one that would be imposed today.

When a change in the applicable sentencing law would result in a lower sentence, that development can constitute an extraordinary and compelling reason justifying a sentence reduction. *See Concepcion v. United States*, 142 S. Ct. 2389 (2022) ("The First Step Act allows District Courts to consider intervening changes of law or fact in exercising their discretion to reduce a sentence pursuant to The First Step Act."); *United States v. Campbell*, 2022 U.S. App. Lexis 1930 (2d Cir. 2022) (remanding for the reconsideration of compassionate release motion because "changes in sentencing law" may constitute "extraordinary and compelling reasons justifying a sentence reduction."); *United States v. Byam*, 2024 U.S. Dist. Lexis 65774 (E.D.N.Y. April 10, 2024) ("The court finds the drastic disparity between [the defendant's] sentence and the sentence he would receive today is an extraordinary and compelling reason to grant his motion."). Section 1B1.13(b)(6) is consistent with this case law.

Ten of the other defendants in Mr. Sessa's case were convicted of multiple murders, whereas Mr. Sessa was only convicted of one. Every single person who admitted to committing

multiple murders has been released from prison already. Mr. Sessa is asking to be treated just as equally and fairly as his co-defendants and other similarly situated defendants who have come before this Court. What's good for one should be good for all. Times have changed and the criminal justice system has evolved. The sentencing landscape and the tough on crime initiatives from the 1990s are no longer valid. Mr. Sessa would not receive a life sentence if he were sentenced today.

Mr. Sessa's sentencing judge, the late Judge Jack B. Weinstein, even changed his position on handing down harsh incapacitating sentences. *See* Judge Weinstein's statements in *United States v. Polouizzi*, 687 F. Supp. 2d 133 (E.D.N.Y. Jan. 20, 2010). Judge Weinstein explained how times have changed on how society thinks about incarceration now and the draconian laws. He focused on the fact that the United States maintains a grossly disproportionate percentage of the world's incarcerated population compared to the total world's population citing *inter alia*, Glenn C. Loury & Bruce Western, The Challenge of Mass Incarceration in America, Journal of American Academy of Arts and Science (2010) ("With roughly 4 percent of the World's population, the United States currently confines 25 percent of the world's prison inmates. The American Prison system has grown into a leviathan unmatched in human history . . . The financial costs entailed are staggering, and the extent of human suffering endured boggles the mind."); Kwame Anthony Appiah, What Will the Future Generations Condemn Us For, The Washington Post. Sept 26, 2010 at B01 ("We already know that the massive waste of life in our prisons is morally troubling.").

This Court previously speculated that it felt Judge Weinstein would have imposed the same sentence on Mr. Sessa if he were sentenced today. That does not appear to be true based on his more recent opinions. Judge Weinstein's change of perspective was not only reflected in

*Polouizzi*, but also in *United States v. Corozzo, supra*, 2009 U.S. Dist. Lexis 44490. Corozzo was a leader in the Gambino Family charged with Racketeering, Extortion, Conspiracy to Commit Murder, and Murder. In 2009, Judge Weinstein sentenced Corozzo to thirteen and a half years imprisonment and stated in his sentencing memorandum that, "A sentence of thirteen and a half years imprisonment reflects the seriousness of the offense, will promote respect for the law, and provide just punishment . . . the sentence will send a clear message that involvement in organized crime related murders and extortions will result in a substantial prison sentence." Mr. Sessa's and Corozzo's offense conduct was identical. Corozzo was sentenced 16 years after Mr. Sessa, and his sentence reflects Judge Weinstein's changing view on imposing harsh sentences.

Judge Weinstein also further reduced previously imposed pre-*Booker* life sentences to come more in line with current sentencing trends. In *United States v. Watson*, 2008 U.S. Dist. Lexis 102761 (E.D.N.Y. Dec. 15, 2008), the defendant's life sentence was reduced to 30 years. The court considered the *Booker* decision and found that "this is a very violent offense" and it involved a "murder in fairly cold blood." Mr. Sessa is in his mid 60's and has served over 32 years. Judge Weinstein's logic should apply to Mr. Sessa as well.

In *United States v. McMillan*, 2009 U.S. Dist. Lexis 103265 (E.D.N.Y. Nov. 5, 2009), the defendant's pre-*Booker* life sentence for murder was reduced to 30 years. In reducing the Defendant's sentence, Judge Weinstein stated, "The court considered the nature and circumstances of the offense and the history and characteristics of the defendant. The offenses were serious ones. The victim was killed in the presence of his wife - the culmination of an attempt of considerable length to hunt the victim down, with weapons being fired at others during what amounted to a retaliatory gang war."

Judge Weinstein went on to explain, "The defendant's statement that he had matured and had obtained some ethical guidance through religion was accepted. Under these circumstances, a sentence of 30 years imprisonment reflects the serious nature of the offense, would promote respect for the law, and provide just punishment. Under Section 3553(a)(2)(B) there are two major considerations: specific and general deterrence.

General deterrence is satisfied with the sentence imposed. The sentence will send a clear message that any involvement with gangs and gang-related crimes will result in a substantial prison sentence. Specific deterrence is achieved through incapacitation of less than life imprisonment. By the time the defendant is released he will be in an age group not prone to violence."

This Court should reduce Mr. Sessa's sentence as well. Judge Weinstein's most recent decisions before his passing made clear that specific deterrence is achieved through incapacitation of less than life imprisonment, that pre-*Booker* sentences are no longer appropriate, individuals released in their mid-60's are in an age group not prone to violence, and that sentences between 13.5 - 30 years are sufficient for murder convictions. Judge Weinstein's updated statement of reasons favor's Mr. Sessa's release.

Lastly, in addressing the appropriateness of the duration of a murder sentence, this Court recently provided the following analysis in *United States v. Marin Henoa*, 2024 U.S. Dist. Lexis 30739 (E.D.N.Y. Feb. 22, 2024). "Mr Marin argues that his sentence of 420 months is disparate to the sentences judges impose today for comparable crime . . . Mr. Marin fails to acknowledge, however, that his sentence is longer than the average sentence for a single murder because he was convicted on eight counts of murder, one count of aiding and abetting murder, and another count of conspiracy to murder." See also *United States v. Guzzo*, 2023 U.S. Dist. Lexis 87443

(E.D.N.Y. May 18, 2023) (Guzzo was a Colombo family soldier. The court explained that the defendant's 456-month sentence was "not extraordinarily long in light of his eighteen convictions, which included five murders in aid of racketeering") In fact, in several cases involving crimes more closely analogous to Marin's, courts in this Circuit have reduced defendant's sentences from life imprisonment to prison terms closer to Mr. Marin's thirty-five years. See, e.g., *United States v. Russo, supra*, 643 F. Supp. 3d at 331, 336 (E.D.N.Y. 2022) (reducing defendant's sentence for three murders, in addition to other crimes, from life imprisonment to thirty-three years); *United States v. Ramirez*, 571 F. Supp. 3d 40, 42, 52 (S.D.N.Y. 2021) (reducing defendant's sentence for two murders, among other crimes, from forty eight years in prison to forty years in prison).

In determining just punishment for murder convictions in this Circuit, this Court acknowledged that a 420 month sentence was sufficient for eight counts of murder (4 years per murder); A 456 month sentence was sufficient for 5 murders ( about 8 years per murder); a 35 year sentence was sufficient for 2 murders (17.5 years per murder); a 33 year sentence was sufficient for 3 murders (11 years per murder); and a 40 year sentence was sufficient for 2 murders (20 years per murder). Based on this Court's findings of sentences that are sufficient, but not greater than necessary for murder in the Second Circuit, Mr. Sessa has proven that his sentence is unusually long and that changes in the law since the time he was originally sentenced in 1993 have resulted in "a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed." *See United States v. Marin Henoa, supra*, 2024 U.S. Dist. Lexis 30739.

Based on the above, Mr. Sessa's sentence appears excessively long and harsh, especially in light of the recent resentencing of his codefendants that were reduced to "time-served." Mr.

Sessa has shown this to be one of the factors worthy of consideration under the "extraordinary and compelling" compassionate release prong of the First Step Act.

### (B) IMMINENT RISK OF BEING INFECTED BY AN INFECTIOUS DISEASE (U.S.S.G. § 1B1.13(b)(1)(D))

Reflecting on lessons learned from Covid, this new ground covers individuals who are (1) housed at a correctional facility that is affected or at imminent risk of an ongoing infectious disease or public health emergency; and (2) who, due to personal medical conditions, are at an increased risk of suffering from severe complications or death if they are exposed to the infectious disease. Mr. Sessa presents the following in support:

"Since the onset of the covid-19 pandemic, numerous courts have held that the presence of preexisting medical conditions that increase the risks associated with the virus, in combination with the conditions of confinement, constitute extraordinary and compelling reasons for a reduction in sentence under 18 U.S.C. 3582(c)(1)(A)." *United States v. Serrano*, 2020 U.S. Dist. Lexis 161241 (S.D.N.Y. Sept. 3, 2022); See also *United States v. Bush*, 2021 U.S. Dist. Lexis 135984 (S.D.N.Y. July 21, 2021) (noting "courts have granted modified sentences in light of covid-19 for inmates with illnesses or injuries that make them particularly vulnerable to Covid-19").

Covid-19 is the third leading cause of death in this country. Recent studies claim the new COVID vaccine is useless against the latest variants. Since the virus mutates so quickly, it is always ahead of the newest strain of the vaccine. *See* https://www.epochtimes.com (new Covid-19 vaccine ineffective, 11-5-23). The mere fact that you are vaccinated does not protect you, and the risk of death from covid still exists which constitutes extraordinary and compelling reasons for compassionate release. *See United States v. Salemo*, 2021 U.S. Dist. Lexis 169162 (S.D.N.Y. Sept. 7, 2021) (noting vaccinated defendant with underlying medical conditions remained at

extraordinary and compelling reasons for compassionate release. *See United States v. Smith*, 2020 U.S. Dist. Lexis 64371 (S.D.N.Y. April 13, 2020) (finding extraordinary and compelling reasons for release of a defendant serving a 120 month sentence when he was 62 years old and had multiple medical conditions, placing him at higher risk of complications from Covid); *United States v. McCarthy*, 2020 U.S. Dist. Lexis 61759 (D. Conn. April 8, 2020) (finding extraordinary and compelling reasons for release of an inmate convicted of armed bank robbery because he was 65 years old and had health conditions that increased Covid risk); United States v. Zuckerman, 2020 U.S. Dist. Lexis 59588 (S.D.N.Y. April 3, 2020) (released 75 year old inmates with diabetes, hypertension, and obesity because of the great risk posed to elderly people with health such problems); *United States v. Hernandez*, 2020 U.S. Dist. Lexis 58739 (S.D.N.Y. April 2, 2020) (released inmate at high risk of serious illness from Covid after acknowledging the difficulties he would face caring for himself in detention).

This brings us to factors such as deterrence and risk of recidivism. Mr. Sessa is 65 years old, an age when the risk of recidivism is greatly reduced. It is well-established that the likelihood of recidivism drops sharply with age. *See* e.g., Dep't of Justice., Off. of the Inspector Gen., *Review of the Impact of an Aging Inmate Population on the Federal Bureau of Prisons*, at iii (May 6, 2015) (explaining that "aging inmates are generally less of a public safety threat" and have a "significant lower" recidivism rate.); *see also* U.S. Sentencing Commission, Recidivism of Federal Offenders Released (Sept 2021) https://www.ussc.gov/sites/default/files/pdf/research-and-publications/researchpublications/2021/20210930_Recidivism.pdf (noting that recidivism rates steadily decline with increasing age and finding that the lowest rearrest rates were for offenders aged 60 and older); Thus, Mr. Sessa's comparatively advanced age is relevant to evaluating his characteristics and likelihood of recidivism when weighing all the § 3553(a)

factors. *See* e.g., *United States v. Miller*, 92-CR-91, 2024 WL 4107211, at *19 (E.D.N.Y. Sept. 6, 2024) (considering impact of age on recidivism and finding 3553(a) factors support release in spite of defendant's violent and egregious criminal history); *United States v. Piggott*, 2022 WL 118632, at *3 (S.D.N.Y. Jan. 12, 2022)("It is well-established that recidivism decreases significantly with age."); *United States v. Tellier*, 2023 U.S. Dist. Lexis 149994 (S.D.N.Y. Aug. 25, 2023) (Tellier was convicted of Racketeering, 4 murders, numerous Hobb's Act robberies and five 924(c) convictions and sentenced to Life. It should be noted that the Court in *Tellier* cites this court's decisions in *Qadar* and *Monteleone* in justifying the compassionate release of Defendant Tellier after spending 33 years in prison.).

The most compelling consideration in evaluating whether releasing a defendant would be inimical to deterring future criminal conduct by him and protecting the public is shown by the recent statistics which have been compiled since the enactment of the First Step Act. District judges throughout the country have granted 5,311 compassionate release motions from 2019 through the 3rd quarter of 2024. *See* U.S. Sentencing Comm'n, Compassionate Release Data Report, at Table 1 (Aug. 2024). As of January 28, 2024, the Bureau of Prisons has released 44,673 prisoners because of multiple First Step Act reforms. *See* U.S. Dep't of Just., First Step Act Annual Report, at 40 (June 2024). Remarkably, the recidivist rate for that group "stands at 9.7 percent compared to 46.2 percent for all people released from the Bureau of Prisons in 2018." Jessie Brenner & Stephanie Wylie, Brennan Ctr. for Just., *Analyzing the First Step Act's Impact on Criminal Justice* (Aug. 20, 2024) (reporting on DOJ data). Thus, "recidivism is 37 percent lower among people released because of the First Step Act than among others leaving prison." Michael Waldman, Brennan Ctr., for Just., Data on Sentencing Reform Shows the First Step Act Worked (Dec. 19, 2023).

The statistics show that not releasing Mr. Sessa because of the risk that he could become a recidivist should not be the basis for keeping him incarcerated. He has clearly satisfied the rigorous requirements under the First Step Act warranting his release. As Mr. Sessa states in his letter to the Court, "I've spent over half my life in prison. I've spent my daughter Tara Marie's entire life in prison. She was five months old when I turned myself in. I spent half of my wife's life in prison." Exh. 1. Over 3 decades in prison is surely enough punishment, and to watch his family grow from a distance because of his bad choices is enough to deter Mr. Sessa from any further law breaking.

This Court will be in good company by following the decisions of numerous courts in this Circuit and throughout the country that have released other defendants that have also been convicted of serious charges, and who have served less or equal time as Mr. Sessa has. This factor as well constitutes an extraordinary and compelling circumstance for Mr. Sessa's release.

### (D) OTHER REASONS - HARSHNESS OF INCARCERATION DURING THE PANDEMIC (U.S.S.G. § 1B1.13(b)(5))

This new provision gives judges the discretion to identify an unlisted extraordinary and compelling reason. The other reasons should be similar in gravity to the ones listed in the policy statement. Mr. Sessa presents the following in support: Courts throughout the country have been willing to conclude that pandemic induced conditions of confinement can constitute extraordinary and compelling circumstances warranting compassionate release. *See United States v. Oquendo*, 2023 U.S. Dist. Lexis 213643 (S.D.N.Y. 2023), *United States v. Nava*, 2024 U.S. Dist. Lexis 10187 (S.D. Cal. Jan. 19, 2022) (Pandemic induced harsh conditions of confinement are extraordinary and compelling circumstances.); *United States v. Schumack*, 2020 U.S. Dist. Lexis 134766 (S.D. Fla. June 11, 2020); *United States v. Sherrod*, 2021 U.S. Dist. Lexis 147643 (E.D. Mich. Aug. 6, 2021).

"Courts reviewing motions for sentence modifications have considered the extent to which onerous lockdowns and restrictions imposed by correctional facilities attempting to control the spread of the virus have made sentences harsher and more punitive than would otherwise have been the case." *United States v. Hatcher*, 2021 U.S. Dist. Lexis 74760 (S.D.N.Y. June 19, 2021) (Quoting *United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020)).

"Undoubtedly, a day spent in prison under extreme lockdown and a well founded fear of contracting a once in a century deadly virus exacts a price on a prisoner beyond that imposed by an ordinary day in prison." *United States v. McRae*, 2021 U.S. Dist. Lexis 8777 (S.D.N.Y. Jan. 15, 2021). Hence, "detention during the pandemic is essentially the equivalent to either time and a half or two times what would ordinarily be served." *United States v. Elias*, 579 F. Supp. 3d 374, 378 (E.D.N.Y. 2022). If the Court doubled the three years Sessa served under harsh conditions, Sessa has now essentially served a 40-year sentence with good conduct time added.

"While the severe restrictions imposed during the pandemic were aimed at protecting inmates from illness, they also had an indisputably punitive effect; hence the harshness of covid-related restrictions weigh in favor of a sentence reduction even if they do not independently constitute an extraordinary and compelling reason to grant compassionate release." *United States v. Russo*, 2022 U.S. Dist. Lexis 213643 (E.D.N.Y. 2022).

A review of Mr. Sessa's letter to the Court shows the harsh and dangerous conditions of his confinement and a description of the fear he lived under. This was certainly not contemplated by Judge Weinstein when he sentenced Mr. Sessa many decades earlier. As Mr. Sessa states:

> COVID-19 was by far the worst time I have spent in prison. As the world embraced an unknown and deadly pandemic, I was locked in a cell for months at a time not being told exactly what was going on. All us inmates knew was what we heard on the radio that people were dying from it all over the world. Newspapers showed tractor trailers outside hospitals being used as makeshift morgues. Then the disease got inside the prison and it spread like wildfire. I was

left locked inside the cell to live or die. It was the scariest moment of my life. There were many moments when I thought I was going to die. When I was infected with COVID-19 the medical staff would not even come to my cell door. They would stand six feet from the cell door and talk to me from a distance and tell me it was like a bad flu. They told me to rest and drink lots of water. They were just as scared of contracting the virus as we were. Only, they were bringing it into the prison. Thank God I survived but not all were so lucky. It was the scariest time of my life and again I look at my past and think about how stupid I was to put myself into this position. The last four years of being in prison during COVID-19 is by far one of the scariest moments of my life and I can say that if released I will never get in trouble again and live trapped in a cell like this.

*See* Exh. 1 - Sessa's 11/18/24 Letter to the Court.

Mr. Sessa further states in his letter to the Court that

[d]uring the COVID pandemic all programming and visitations came to a halt. We were locked in the cells at times for 23.5 hours a day for the past 4 years and many of those months straight at a time. We had no access to outside recreation, programs, counseling, drug treatment, church services, or visits from our families. We were only permitted out of their cells for thirty minutes a day. During the 30 minutes, we could only shower and use the phone. If we were not able to get in touch with our family, it would cause undue psychological distress. Due to the fact that the news was reporting thousands of people were dying each day, we would automatically assume that our loved ones became infected with the virus and are either in the hospital or dead because they didn't answer the phone. This would cause me to be a nervous wreck until I was able to use the phone again. We were unable to contact our families in other ways like the mail because the guards were not sending the mail out or bringing it in; afraid the virus stayed on the envelope. So for years it was a continuous roller coaster ride of emotions, especially for me because I worried about my family and my own health. It was literally a form of psychological torture until I was able to get in touch with my family.

*Id.*

With this overview of the harsh conditions Mr. Sessa endured for over 33 months, this court should hold that he has established "other reasons" that constitute extraordinary and compelling reasons under § 1B1.13(b)(5). The duration of the punitive conditions were excessive and resulted in permanent psychological damage. As the Third Circuit has explained, "solitary confinement can cause severe and traumatic psychological damage, including anxiety, panic,

paranoia, depression post traumatic stress disorder, psychosis, and even a disintegration of the basic sense of self-identity." *Palakovic v. Wetzel*, 854 F. 3d 209, 225 (3d Cir. 2017). "There is not a single study of solitary confinement where non-voluntary confinement is tolerated for longer than 10 days failed to result in negative psychological effects." *Williams v. Sec'y Pa. Dep't of Corrs.*, 848 F. 3d 549, 566 (3d Cir. 2017) (quoting Craig Haney & Mona Lynch, Regulatory Prisons of the Future: A Psychological Analysis of Supermax and Solitary Confinement (1997). *See also United States v. Bowlson*, 2021 U.S. Dist. Lexis 119868 (E.D. Mich. June 28, 2021) (discussing the debilitating effect of solitary confinement on mental health and noting the United Nations has classified prolonged solitary confinement as a form of torture.).

This court should also hold that the harshness of the Defendant's sentence constitutes an "unforeseen factor that's so extraordinary that the court should now be compelled to release him early." *See United States v. Amerson*, 2023 U.S. Dist. Lexis 116075 (E.D.N.Y. July 6, 2023). Mr. Sessa has proven that the harshness of Covid related restrictions constitutes extraordinary and compelling reasons and favors a reduction in his sentence.

### (E) MR. SESSA'S REMARKABLE POST-CONVICTION REHABILITATION (U.S.S.G. § 1B1.13(d))

This Court previously stated when Mr. Sessa filed his first motion for compassionate release in June of 2020, that his extraordinary rehabilitation constitutes extraordinary and compelling reasons for release. ECF. No. 1942 - Order Denying Sent. Reduction. This Court's previous determination still applies today. Considering all of the facts of Mr. Sessa's case, this Court should exercise its discretion under 3582(c)(1)(A)(i), to reduce his sentence to time served.

Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. Although

rehabilitation "alone" does not constitute an extraordinary and compelling reason to reduce a sentence, this Court stated "courts may consider it as a factor," along with other factors, "in determining if there are extraordinary and compelling reasons for compassionate release." *United States v. Qadar*, 2021 U.S. Dist. Lexis 136980 (E.D.N.Y. July 22, 2021). Thus, the Court may find that "rehabilitation-plus," meaning rehabilitation in conjunction with other appropriate factors, supports a finding of extraordinary and compelling reasons. See *United States v. Tavarez*, __ F. Supp. 4th __, No. 08-CR-242, 2024 WL 4043740, at *5 E.D.N.Y. Sept. 4, 2024) (collecting cases in which Second Circuit district courts found a combination of rehabilitation and other factors warranted a sentence reduction); *see also United States v. Snype*, 683 F. Supp. 3d 351, 364 (S.D.N.Y. 2023) (finding that where "none of the circumstances . . . would alone permit a sentence reduction," a "confluence of all of these circumstances" may do so); *United States v. Russo*, 643 F. Supp. 3d 325, 332, 333, 336 (E.D.N.Y. 2022) (finding a "combination" of factors, including medical circumstance and rehabilitation, may constitute a compelling reason for sentence reduction); *United States v. Phillips*, 469 F. Supp. 3d, 180, 184-185 (S.D.N.Y. 2020) (finding a "totality of the circumstances" warranted a sentence reduction); *United States v. Van Putten*, No. 04 Crim. 803 (GBD), 2024 U.S. Dist. LEXIS 56091 (S.D.N.Y., Mar. 27, 2024)) (50 year-old defendant sentenced to life imprisonment who was convicted of murdering a rival drug dealer, granted a reduced sentence to 30 years. The court found the following circumstances taken together "suffice as extraordinary and compelling reasons: the Sentencing Court's reliance upon its mistaken belief regarding the frequency of life sentences; defendant's especially harsh sentence as compared to his accomplices' sentences; defendant's rehabilitation while incarcerated despite serving a life sentence without any promise of release; and defendant's young age at the time of the crime." *Id.* at *13.

What constitutes rehabilitation is left to the Court's discretion, but courts in this district have considered the following factors: the defendant's "maintenance of familial and societal relationships; letters of support both from community members and prison staff; conduct and disciplinary records while incarcerated; any achievements and education obtained while incarcerated; gains in maturity; and other clear signs that a defendant's incarceration has had rehabilitative value." *United States v. Byam*, 2024 U.S. Dist. Lexis 65774 (E.D.N.Y. 2024).

Rehabilitation of the Defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the Defendant's term of imprisonment is warranted. Mr. Sessa's rehabilitation may be considered because he qualifies for relief under the following: § 1B1.13(b)(6) - Unusually Long Sentence; § 1B1.13(b)(1)(D) - Pandemic Health; § 1B1.13(b)(5) - Other Reasons; and § 1B1.13(b)(2) - Age of Defendant. Mr. Sessa's argument for rehabilitation is as follows: He also argues that his substantial rehabilitation during his incarceration constitutes another extraordinary and compelling reason for release. The case of *Pepper v. United States*, 562 U.S. 476, 491 131 S. Ct. 1229, 179 L. Ed. 2d 196 (2011), best explains post-sentencing rehabilitation. As the Supreme Court wrote, "... the Defendant's post-sentencing rehabilitation provides the most up-to-date picture of the Defendant and evidence of the likelihood the Defendant will or will not engage in future criminal conduct."

"Courts have viewed evidence of a defendant's rehabilitation as support for such deterrence and protection of the public from future harm." *United States v. Whitted*, 2021 U.S. Dist. Lexis 15706 (D. VI. Jan. 28, 2021). Attached to this motion is a transcript of all the programs Mr. Sessa completed since arriving in BOP custody. *See* Exhibit 6. Mr. Sessa has provided ample evidence that he is no longer the same person who stood before the court many

years ago. For the past 32 years, Mr. Sessa has committed himself to rehabilitation and mentoring others "despite...no realistic hope of release." *United States v. Millan*, 2020 U.S. Dist. Lexis 59955 (S.D.N.Y. Apr. 6, 2020).

While in BOP custody, Mr. Sessa has demonstrated a truly extraordinary level of rehabilitation. Over the course of his incarceration, Mr. Sessa has completed over 75 evidence-based, recidivism reduction programs. The programs Mr. Sessa completed were designed to reduce recidivism, lower the participants' public safety factors, and create a successful reentry back into society. It has been proven that inmates who complete these evidence-based programs that Mr. Sessa took are no longer a danger to the safety of the public. Program participants have learned the skills necessary to handle stressful situations, regulate emotions, make better decisions, and problem solve effectively so they are no longer at risk of reoffending.

Mr. Sessa asserts that because of the skills he has learned in these life changing programs, he no longer poses a danger to the community. The programs Mr. Sessa completed have been proven to reduce recidivism. If the courts refuse to acknowledge how these programs affect change in the lives of inmates, there would be no point in even offering these programs.

Mr. Sessa also gives back and helps others in the prison community. Currently, Mr. Sessa is in the mentorship training program for the reintegration unit at USP Lewisburg. As part of the mentorship program, Mr. Sessa is responsible for facilitating groups, organizing activities, and helping others when problems in the prison arise. As part of his commitment to this program, Mr. Sessa has performed over 750 hours of community service by doing projects for the prison community and assisting other inmates and staff.

In addition to the over 75 educational courses Mr. Sessa has completed, he has also earned his GED, obtained a degree as a certified paralegal, is currently enrolled in college classes

and is working towards his Bachelor's degree. He has continuously maintained employment, received a rating of minimal risk of recidivism with -13 points (the lowest possible score you can achieve), and has received over 150 letters of support written by family and friends, the victim's wife, BOP Staff and members of the community *See* Exhibits 1-4, 8-3; *See also* ECF. 1928, Exhibits 2, 4 and 5.[2]

Mr. Sessa "has used his years in prison not just to better himself, but also to better his community." *United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020). His behavior and achievements thus "exceeds the bounds of what we consider rehabilitation." *United States v. Torres*, 464 F. Supp. 3d 661 (S.D.N.Y. 2020). Mr. Sessa is truly a leader in the prison community and his positive attitude, work ethic, and behavior, along with his desire to help others will translate well out in the community. Mr. Sessa's rehabilitative efforts favors his release.

### (1) Mr. Sessa's Prison Record and Demonstrated Rehabilitation are Remarkable

Although it is well settled that "rehabilitation alone shall not be considered an extraordinary and compelling reason" *United States v. Brooker*, 973 F.3d 228, 237-38 (2d Cir. 2020) (citing 28 U.S.C. § 944(t)), Mr. Sessa has provided sufficiently exceptional evidence of his rehabilitation to warrant a reduction of his sentence. *See United States v. Vasquez*, 2024 WL 2385264, at *5 (E.D.N.Y., 2024) ("What constitutes rehabilitation is left to the Court's discretion, but courts in this district have considered the following factors: the defendant's 'maintenance of familial and societal relationships; letters of support both from community members and prison staff; conduct and disciplinary records while incarcerated; . . . any

---

[2] These ECF 1928 Exhibits present an unprecedented and voluminous amount of character letters from family, friends, inmates and BOP staff. Mr. Sessa did not want to overburden the Court with a voluminous amount of exhibits in this motion and has referenced it herein for the Court's consideration.

achievements and education obtained while incarcerated; . . . gains in maturity[;] and other clear signs that a defendant's incarceration has had rehabilitative value'." (quoting *United States v. Byam*, No. 12-CR-0586, 2024 WL 1556741, at *8 (E.D.N.Y. Apr. 10, 2024)) (emphasis added).

Mr. Sessa has shown a remarkable record of rehabilitation. He committed his last criminal offense more than 33 years ago. During the years he has been in prison - housed in some of the most dangerous and dysfunctional federal facilities - he has received only two (2) minor disciplinary infractions in the 33 years. The last one was in 2008, over 16 years ago.

"[M]aintain[ing] a clear disciplinary record" is "no minor feat in prison." *United States v. Stephenson*, 2020 WL 2566760, at *7 (S.D. Iowa May 21, 2020). That Mr. Sessa maintained a good disciplinary record in his 33 years of incarceration, in the face of living in some dangerous prisons, strongly supports the likelihood that he would remain a law abiding individual if released. *See United States Ledezma-Rodriguez*, 2020 WL 3971517, at *5 (S.D. Iowa July 14, 2020) (granting compassionate release and noting that the "defendant has not incurred a single disciplinary infraction since 2014, no small feat in a closely monitored federal prison"); *United States v. Adeyemi*, 2020 WL 3642478, at *27 (E.D. Pa. July 6, 2020) (finding disciplinary record favored release based on no infractions in the past three years and only four minor infractions during the defendant's fourteen years in prison); *United States v. Marks*, 455 F. Supp. 3d 17, 27, 36 (W.D.N.Y. 2020) (granting compassionate release and noting the defendant's "clean disciplinary record for many years past," with no violations for the past seven years and no violent violations for the past ten years); *United States v. Kwok-Ching Yu*, 90-CR-47 (AT) (S.D.N.Y. Nov. 23, 2020) ("Yu's clean disciplinary record for the last eight years, and the absence of any disciplinary infraction related to violence or drug use, demonstrates that he is unlikely to commit future criminal acts or pose a danger to the community"). Although Mr.

Sessa's crimes were serious, the homicide that gave him the life sentence occurred in 1989, over 3-and-a-half decades ago and "[n]othing in [his] prison disciplinary record raises any concern about him having a continued propensity for violence." *United States v. Clausen*, 2020 WL 4260795, at *8 (E.D. Pa. July 24, 2020). As shown above, Mr. Sessa has maintained an exemplary prison record for someone who has served 33 years (over 3 decades) in prison.

Mr. Sessa has been incarcerated since age 32 and turned 65 in October of 2024. As of May of 2025, he will have served 396 months in prison without factoring in good conduct time. During these 33 years, rather than get into trouble, he used his time as productively as possible: he studied the law and earned his paralegal certificate. He participated in programming. He devoted himself to religion. He engaged in decades of acts of community service, and strengthened his bonds with family and friends. He has been a dedicated father to his daughter. As described in detail within this petition and in the many attached letters from family and friends, he has been a father, friend and a source of support for numerous people both in and outside of prison. Most importantly, he has cultivated a basic human decency and compassion for others that is rare impossible to find or maintain in a prison setting. His record is nothing short of extraordinary. *See United States v. Van Putten*, supra, 2024 U.S. Dist. LEXIS 5609 (the court found that one of the circumstances warranting release was defendant's rehabilitation while incarcerated despite serving a life sentence without any promise of release.).

## (2) **Programming**

Mr. Sessa has committed himself to taking full advantage of the rehabilitation and educational programs available to him through the BOP. He has used his 33 years of incarceration to better himself through extensive investment in the rehabilitative programming available to him. Although the last four years of his educational pursuits have been stymied by

prison lockdowns and quarantines in response to the COVID-19 pandemic, Mr. Sessa has striven to continue his growth and education through numerous self-study programs, including through the prison ministry.

We submit that Mr. Sessa has been rehabilitated over the 33 years he has spent imprisoned. During his 33 years of incarceration, Mr. Sessa has received over 75 certificates for completing various programs and courses spanning a wide variety of topics, such as enrolling in and earning a paralegal certificate from Penn Tech, among others. *See* Exhibit 7. Mr. Sessa has completed numerous ACE courses and many others that total a remarkable 75 educational courses. In total he has invested hundreds of hours in courses that he has completed. At the current time he is enrolled in numerous FSA Assignments. *See* Exh. 7.

A review of Mr. Sessa's work performance shows that his work performance evaluations are "satisfactory." He gets along well with staff and inmates alike. As indicated herein, Mr. Sessa has traveled down a long road of displaying remarkable rehabilitation for over 3 decades. His persistent and exceptional behavior certainly amounts to extraordinary and compelling actions. In *United States v. Rodriguez*, 492 F. Supp. 3d 306, (S.D.N.Y. Sept. 30, 2020), Judge Jed S. Rakoff found that defendant Rodriguez had undertaken extraordinary efforts at rehabilitation that weighed strongly in favor of a sentence reduction and reduced the defendant's sentence from life to 30 years imprisonment.

Mr. Sessa's work and programming record suggests that he is remorseful and rehabilitated. It shows that he has become the productive citizen that Hon. Judge Weinstein had hoped he would become when he was sentenced in 1992. He has obtained certificates for many rehabilitative courses. Even beyond these impressive certificates and courses, Mr. Sessa represents that he has achieved a personal religious transformation. Mr. Sessa acknowledges the

substantial harm he caused and has exhibited remorse. In his letter to the Court, he expresses that he has rehabilitated himself with the help of the BOP and he has accepted full responsibility and is remorseful for his actions. *See* Exh. 1.

Finally, given Mr. Sessa's "extensive use of prison programming, the only thing left 'to provide the defendant with the needed education or vocational training' is to pursue an actual vocation." *United States v. Brown*, 2020 WL 2091802, at *10 (citing U.S.C. § 3553(a)(2)(D)). Other Courts have considered similar accomplishments by an inmate to establish his or her rehabilitation in favor of a sentence reduction. *See United States v. Redd*, 444 F. Supp. 3d 717, 729 (E.D. Va. 2020) (finding sentence reduction proper where inmate "demonstrated a commitment to self-improvement, devoted hundreds of hours to vocational programs, assisting others in their rehabilitative efforts, exhibited solid work habits, caring for mental health inmates, and in the process of exceeding his supervisor's expectations across most, if not all, areas of work"); *United States v. Parker*, 2020 WL 2572525, at *11 (C.D. Cal. May 2020) (collecting cases).

"[R]ightly or wrongly, this country's criminal justice system is premised on the idea that a person can – and hopefully will – change after several years locked in prison." *United States v. Ledezma-Rodriguez*, 2020 WL 3971517, at *6 (S.D. Iowa July 14, 2020). The BOP has facilitated this through classes, case managers, re-entry programs, time credits, and security classifications, which Mr. Sessa has taken full advantage of. Together with his spiritual and moral transformation, he appears to offer a success story that weighs in favor of supporting compassionate release.

### (3) Mr. Sessa's Character Letters As Expressed In Letters of Support

Mr. Sessa submits evidence of his strong family ties and opportunities for housing and

employment upon release to further support his contention that he is poised to reenter the community safely and successfully. While incarcerated, Mr. Sessa has maintained close relationships with his daughter, family, relatives and members of his community for the past 33 years. Many of them have written letters detailing his role in their lives over these decades. Friends, family and fellow inmates consistently describe Mr. Sessa as a dedicated father, loyal friend and role model to other inmates. These letters highlight his extremely positive outlook on life despite his difficult circumstances.

**Family and Friends**

Mr. Sessa's daughter, Tara Sessa, writes that she has always known her father to be "kind, loving, and cares more about others than he does himself." Exh. 2. When she struggled with medical issues "he researched remedies" and "was always the type to help [her] in any way he can even while being away." *Id.* Mr. Sessa's wife, Linda Sessa, writes that Mr. Sessa is the love of her life and her best friend. He is always there to support her "when things aren't going so well." She adds that he is kind, generous and a loving man," and they miss him terribly. *See* Exhibit 3. He has lost many family members while incarcerated. One was Linda's father, who had one wish before he left this world – to be able to see Mr. Sessa "come home to enjoy the rest of his life with his family." *Id.* This Court can now make that wish come true.

Mr. Sessa's sister-in-law, Susan Spagnuolo, writes that Mr. Sessa "has proven he is ready to reenter society and be a law abiding citizen. He deserves to be given another chance and come home to live his life with his family. [He] does not deserve to die in prison." *See* Exhibit 8. Mrs. Spagnuolo adds that they "are all here to provide what is necessary to help [Mr. Sessa] transition back into society and his life with us." *Id.*

Mr. Sessa's niece, Amanda Spagnuolo, explains how she lost her father and she understands how Tara Sessa feels living most of her life without seeing her father in the outside world. She explains how Mr. Sessa always was "full of advice and information." *See* Exhibit 9. He "is one of the biggest reasons [she] pursued a college education in criminal justice . . . [and] always encouraged [her] to keep studying and learning all [she] can." *Id.*

Susan Tellier writes that she hopes "that someday society can benefit from Michael's leadership skills. I would certainly want him on my team." *See* Exhibit 10. Ms. Tellier adds that "[Mr. Sessa] has tremendous support from family and friends. We are all invested in his success. We know that, when given the chance, [Mr. Sessa] will be an asset to society." *Id.*

Mr. Sessa's niece, Lilly Sessa, writes that Mr. Sessa "has reformed to a new human with much compassion, love, intelligence and respect . . . [and] he is an encouraging voice, a truth teller, and always available for advice." *See* Exhibit 11. Lilly adds that she deals "with an [a]nxiety [d]isorder and [Mr. Sessa] has always been supportive and very wise when it comes to his avid reading and guided meditation." *Id.*

## Staff Members

As mentioned above, of particular note is the fact that thirteen (13) BOP correctional employees submitted letters on behalf of Mr. Sessa. The most persuasive pieces of evidence of his rehabilitation are these letters from BOP staff. One such letter, from SOS Timothy A. Badman, shows the officer believes that Mr. Sessa "has earned his place back in society" and on his first day of work as an overwhelmed and new correctional officer it was Mr. Sessa that came "to offer help and provide direction to ensure the orderly running of the unit." *See* Exhibit 12. SOS Badman has witnessed Mr. Sessa on many occasions "put others needs before his own" especially when consoling other inmates during a family loss. SOS Badman concludes in his

opinion that Mr. Sessa "has paid his debt" and sees only "a positive and productive outcome to [Mr. Sessa] being placed back in society." *Id.*

Psychologist A. Brockman writes that Mr. Sessa has been an "asset" to the Cadre program at USP Lewisburg. Dr. Brockman states that Mr. Sessa remained diligent "focusing on reducing criminal thinking and building strength through our men of influence program." *See* Exhibit 13. The psychologist writes that Sessa's positive attributes guided others toward change and growth." *Id.* In addition, Dr. Brockman states that "Mr. Sessa will maintain a strong level of dedication toward his continued growth." *Id.*

Supervisory Chaplain B. Carney, writes that Mr. Sessa "attends Catholic worship services on a weekly basis [and] interacts with the Chaplains to post notices . . . [and] assists the priest in preparing the altar for worship." *See* Exhibit 14. Chaplain J. Wallace confirms what Chaplain Carney stated and added that Mr. Sessa has recently "been a participant in a new volunteer led bible study for the inmate population." *See* Exhibit 15.

SOS J. George writes that he believes Mr. Sessa "is no longer a threat to society but an asset to society." *See* Exhibit 16. SOS George is a military veteran and has seen many inmates come through the prison gates and Mr. Sessa "has been the only rehabilitated inmate that [he has] seen ready for release back into society." *Id.* He adds that he "would be glad to have Mr. Sessa as a neighbor." *Id.*

SOS M. Hess writes that he has "known Mr. Sessa for over a decade" and he is "a prime example of a model prisoner worthy of release back into society." *See* Exhibit 17. He states that Mr. Sessa "will be an asset to society . . . [and] deserves to be a free man . . . he has paid his debt to society." *Id.*

Recreation Specialist Officer Andy Kline, who is also the President of Local 148, writes that Mr. Sessa was a "dependable" and "polite" worker and always showed up and got his job done. *See* Exhibit 18. Kline added that Mr. Sessa "may be the best all around worker" he has had in his 24 years of working in the BOP. *Id.*

SOS J. Page writes that Mr. Sessa "has been nothing less than a model inmate. He has been a helpful and reliable resource." *See* Exhibit 19. He states that Mr. Sessa has "the highest regard for any staff member." *Id.*

SOS R. Weaver writes that in his 28 years of service Mr. Sessa has "been respectful and always communicated and interacted with people in a positive way." *See* Exhibit 20. SOS Weaver believes that Mr. Sessa "is not a threat to anyone and after being locked up for 28 years deserves a second chance." *Id.*

SOS J. Wenrick writes that Mr. Sessa "is one of the most respectful and cooperative inmates [he has] encountered." *See* Exhibit 21.

Recreation Specialist Mason Longenberger writes that Mr. Sessa "has always been willing to 'go the extra mile' when asked to perform additional duties and doesn't require much direction when completing those tasks." *See* Exhibit 22.

Recreation Specialist Jason Fox writes that Mr. Sessa is a model inmate and "was always on time, never absent and never needed to be told what to do." *See* Exhibit 23.

SOS D. Hess writes that Mr. Sessa "gets along with all of his fellow inmates and is always courteous towards staff." *See* Exhibit 24. SOS Hess sees Mr. Sessa "as a model inmate." SOS Hess truly believes that Mr. Sessa "is a prime candidate to be released back into society to become a productive member of his community." Id.

Courts have found that letters from prison staff - "written by the unbiased people who have spent more time with the defendant than anyone else - to be powerful evidence of his rehabilitation." *United States v. Rodriguez*, 2020 WL 5810161, at *4 (S.D.N.Y. Sept. 30, 2020).

**Inmate Letters**

Inmate Vincent Sumpter writes that Mr. Sessa was different from other inmates. He would be there for people that needed help regardless of the color of their skin. He even interacted with staff differently. *See* Exhibit 25.

Inmate Craig Wilbur also writes that Mr. Sessa "is one of the reasons I am a better person today, and can now show others how to become a productive member of society." *See* Exhibit 26. He adds that Mr. Sessa is "a light that shines in darkness." *Id.*

Inmate Timothy Wallace writes that Mr. Sessa "is always willing to help, always mentoring the younger prisoners, white, brown, black, it does not matter." *See* Exhibit 27.

Ex-prisoner Tommy Walker III writes that Mr. Sessa had "volunteered his services by assisting other inmates with legal work . . . and general tutoring . . as a result of Mr. Sessa's assistance I am a free man today, running and operating my own business." *See* Exhibit 28. Mr. Walker is the owner of Second Chance 4 R.E.A.L. and states that "Mr. Sessa would be such a valuable asset to his organization/business and to the people that it serves . . . [and] . . . he would be a valuable pillar" to his organization. *Id.*

Ex-inmate Rene Tellier is most likely the most important character letter which not only mentions Mr. Sessa's good attributes, but also describes how the prison system works for inmates in a penitentiary, and the dangers and battles that inmates face with other inmates on a daily basis. Tellier explains how avoiding trouble is "no easy task" and that "post-sentencing records will reveal who they are today." *See* Exhibit 29. His letter breaks down Mr. Sessa's good

character, exemplary behavior, and how he has survived the system and continued to better his life. Tellier explains that Judge Schofield looked at the person Tellier has been for the past 32 years and he explains how his "lifestyle in prison was no different than Sessa's." *Id.* Tellier also reminds the Court that Judge Schofield utilized this Court's decisions in *Monteleone* and *Qadar* in her opinion granting Tellier's release. In Tellier's opinion Mr. Sessa "deserves a second chance" and he is "fully convinced that Sessa will be a productive member of society." *Id.* Tellier states that Mr. Sessa "is clearly not a man who deserves to die in prison." *Id.*

Inmate Adam Carson writes that Mr. "Sessa leads by example. . . [and] . . . "has taken every program USP Lewisburg has to offer, mentors others, goes to Catholic mass weekly, has not had any disciplinary infractions, and is a positive role model in the prison community. Mr. Sessa is a man of honor and integrity who treats others with dignity, compassion, and respect." *See* Exhibit 30. He further states that "[p]eople do change, and Mr. Sessa's actions [have] proven that he is a changed man." Exh 30.

Michael Babb writes that Mr. Sessa was a mentor and someone he could always count on "for wisdom and insight and positivity." *See* Exhibit 31. He adds that Mr. Sessa "has truly been a valuable asset for me and others who have been fortunate enough to share his company." Exh. 31.

The availability of economic and emotional support further mitigates any risk that Mr. Sessa might revert back to his old ways and pose a danger to society. *See e.g., United States v. Danson*, 2020WL 3467887, at *5 (D.D.C. June 25, 2020) (granting release where "[f]amily support and gainful employment thus have the potential to provide Mr. Danson with a powerful support system, which one hopes will aid him in readjusting to life outside of prison and help prevent recidivism"); *United States v. Parker*, 461 F. Supp. 3d 966, 983 (C.D. Cal. 2020)

(granting weight to defendant's "numerous family ties, including family members who will provide for him"). Additionally, at age 65, Mr. Sessa is statistically less likely to reoffend than a younger person would be upon release. *See* Kim Steven Hunt et. al., The Effects of Aging on Recidivism Among Federal Offenders, U.S. Sentencing Commission, at 3 (Dec. 2017).

Notably, the Department of Justice found that "[d]efendants released through the compassionate release program are less likely than a tenth as likely to recidivate as the average federal prisoner." *United States v. Osorto*, 2020 WL 2323038, at *5 (N.D. Cal. May 11, 2020) (citing Department of Justice, Office of the Inspector General, The Federal Bureau of Prisons Compassionate Release program 49-50 (2013)("Inspector General Report")). Moreover, it is estimated that "broader use of compassionate release could save taxpayers millions and free desperately needed space in BOP facilities." *Id.* (citing Inspector General Report at 45-48).

Here, Mr. Sessa has shown that he has maintained strong bonds with his family and community – who continue to support him 33 years later. Nine BOP staff members have written letters on his behalf. He has sought an education while incarcerated and has made many achievements which are reflected in the attached exhibits. The goals of rehabilitation have been met. He is much more mature than he was 33 years ago when he self- surrendered and committed the crimes, as attested to by numerous family members who visit and speak with him regularly. His rehabilitative efforts are commendable. Nothing in his prison records show that at 65 years old he has a propensity for violence. The BOP should be commended for meeting its goals of rehabilitating Mr. Sessa. Keeping him incarcerated for the rest of his life serves no legitimate means. Any further programming or good behavior will not make him any more ready to integrate back into society. Mr. Sessa is a changed man, and according to the BOP staff that see him on a daily basis, as well as his family and friends, he is a changed man and has shown

remorse and is ready and prepared to step back into society. It is rare to see a showing of rehabilitation as strong as Mr. Sessa has made. The letters from BOP staff as well as from Mr. Sessa, family members, friends and inmates, coupled with his actual exemplary conduct while incarcerated, all paint the same picture of a man dedicated to atoning for his crimes to society.

The over 157 letters written in support of Mr. Sessa's release, along with his own letter to the Court, show that he has turned his life around. *See* Exhibits 1-4 and 8-33. *See also* ECF. 1928, Exhibits 2, 4 and 5. Accordingly, it is respectfully submitted that these letters of support provided on Mr. Sessa's behalf along with the other claims raised herein favor granting the requested reduction in sentence.

### (4) Mr. Sessa Has Expressed Remorse

In considering a sentence reduction, the Court should also recognize Mr. Sessa's genuine remorse for his criminal conduct.

After defendants are sentenced and leave the courtroom to head to prison they are usually never seen by the court again. Some defendants continue to litigate their case and that is all the court ordinarily sees, the part of the defendant's life that shows up on his docket sheet. But, that is a very small part of who Mr. Sessa is today. During his over 3 decades in prison, he has fully embraced a different way of life, one that is much different than he had lived in the years prior to his arrest. He recognizes that he committed serious crimes and, as he describes in his attached letter to the Court, "I truly wish that I could go back more than 30 years and undo the wrongs I have done. I regret them everyday as I sit here and look back on all the harm I have caused the victims and their families." *See* Exh. 1. In his letter he explains to the Court how he looked up to his older brother and that is how he was led down the wrong path. He is not blaming his brother for his actions but now realizes that his older brother should've shielded him from that life. He

tells the Court that "[t]oday I want nothing to do with these groups of criminals. I denounce crime. I despise it. I will never have anything to do with that type of lifestyle ever again." Exh. 1. His letter, as well as his behavior over these decades, shows that he is extremely remorseful for the people he hurt and the way he used to be.

The people who know Mr. Sessa readily attest to his remorse, and many have written on the transformation that he has undergone. Tara Sessa writes that Mr. Sessa "has shown a lot of remorse and expressed on many occasions how sorry he was for his past actions." Exh. 2. She believes her father will never engage in "any future criminal action after seeing what it has cost him and [his] family." *Id.*

Linda Sessa writes how Mr. Sessa expressed "how sorry he is for all the harm he caused others including his own family" and "[h]e accepts full responsibility for his actions." Exh. 3. Linda also truly feels that Mr. Sessa would not be involved in any criminal conduct and jeopardize his freedom ever again." *Id.*

Susan Spagnuolo writes that Mr. Sessa "clearly has expressed his remorse and is sorry for all of the wrongdoing he was involved in." *See* Exh. 8. Amanda Spagnuolo writes that Mr. Sessa "is extremely remorseful and takes full accountability for his actions. Exh. 9.

Susan Tellier writes that Mr. Sessa "is aware that his lifestyle decades ago had a devastating impact on individuals, the community and his own family. He regrets those choices. If given the opportunity he would love to make up for[] it by being a contributor to society." *See* Exhibit 10.

Lilly Sessa writes that Mr. Sessa "has fully accepted all responsibility and has repented so for the past 28 years." Exh.11. Adeline Sessa writes that Mr. Sessa "is very remorseful for his actions and I think that the last 29 years he has been able to realize the path he has taken was not

one he should have." *See* Exhibit 32. Richard Ferraro writes that Mr. Sessa "is remorseful for his actions. Our conversations always reflect this and he accepts full responsibility. More than anything, he wants to be back in society, showing that he learned from his mistakes and is being given a second chance to prove it." *See* Exhibit 33.

Inmate Timothy Wallace writes that Mr. Sessa "regrets his past . . . is very remorseful and he is fully rehabilitated . . . as one can be." Exhibit 27. Ex-prisoner Tommy Walker, III writes that "Mr. Sessa has expressed remorse for what he has done and fully accountable for the consequences of his actions. Exh. 28.

Former inmate Rene Tellier writes that Mr. Sessa has expressed "numerous times how sorry he was for the victims in his case and his own family who have been suffering for many years without him. He has no problem expressing remorse in his conversations with anyone." Exh. 29.

As Mr. Sessa writes in his letter to the Court "I blame no one but myself. As I matured, I looked back at all of my bad choices I made over the years. I know that I can never go back and change that so what I did was moved forward and did not let my past define who I am. Even with a life sentence and no chance of release I continue to better myself and life." *See* Exh. 1. He further adds, "I continuously help many others in here that were at some point also lost souls. I provide them with guidance to better their lives and eliminate criminal thinking.." Exh. 1. Mr. Sessa continues to show his remorse and he has accepted full responsibility for his actions. *See United States v. Millan*, No. 01-CR-685 (LAP) (S.D.N.Y. Apr. 6, 2020) (finding that defendant's rehabilitation, remorse, post-conviction conduct, the support of the BOP staff, and the sentence disparity that would result from further incarceration constituted extraordinary and compelling reasons justifying a reduction in sentence.").

Mr. Sessa has consistently shown remorse over these 33 years. He has preached remorse and the perils of living a life of crime over and over to numerous inmates in the prison. His actions over the last 33 years have been oriented around denouncing his former criminal ways. He has expressed for years that he rejects the way of life that comes with being a criminal and now advises other inmates, young and old, against crime, and teaches ways to change their thinking all while in a prison setting. His efforts can be seen through the letters of former staff and other prisoners, his renewed religious faith and all the help and support he provides to other inmates, friends and family.

Clearly he has changed his conduct, his outlook, and his life. Mr. Sessa has served roughly 33 years in prison (or 396 months) – the sentence equivalent to 37-years, when considering good time credit. These have not been easy years since the start of the pandemic in 2019, and they continue to feel like further punishment because of the constant lockdowns and cancellation of visits, recreation and programming. By any measure, this sentence has been sufficient.

## III. THE SECTION 3553(a) FACTORS

A court must "consider the factors set forth in 18 U.S.C. 3553(a) to the extent that they are applicable." 18 U.S.C. § 3582(c)(1)(A); *United States v. Jones*, 17 F. 4th 371, 374-75 (2d Cir. 2021). Section § 3553(a), in turn, lists numerous factors a court must review when imposing a sentence. These include, as most relevant here, "the nature and circumstances of the offense and the history and characteristics of a defendant"; "the need for the sentence impose . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "the need for the sentence impose . . . to provide the defendant with . . . correctional treatment in The most effective manner"; and "the need to avoid unwarranted

sentence disparities among defendants with similar records who have been found guilty of similar conduct." *See United States v. Halvon*, 26 F. 4th 566, 570 (2d Cir. 2022).

A defendant must demonstrate that his proffered circumstances are indeed "extraordinary and compelling" such that, in light of these § 3553(a) factors, a sentence reduction is justified under § 3582(c)(1)(A). *United States v. Saladino*, 7 F. 4th 120, 124 (2d Cir. 2021). The District Court's discretion includes the power to reduce, as well as to eliminate the remaining term of a defendant's sentence. *United States v. Brooker*, 976 F. 3d 228, 237 (2d Cir. 2020).

In considering the 3553(a) factors, the court must "assess the defendant as a whole person." *Koon v. United States*, 518 U.S. 81, 113, 116 S. Ct. 2035 (1996). When determining whether to modify a sentence, the court "considers the defendant on that day, not on the date of his offense or the date of his conviction." *Pepper v. United States, supra,* 131 S. Ct. 1229. The United States Supreme Court has described post-sentencing conduct as "a critical part of the history and characteristics of a defendant, which sheds light on the likelihood that [a defendant] will engage in future criminal conduct." *Pepper*, 131 S. Ct. 1229. Mr. Sessa asks the Court to take a fresh look at the man that stands before the court today. Upon reexamination of the § 3553(a) factors, this Court should hold that the factors support a reduction in Mr. Sessa's sentence.

### (a) History and Characteristics of the Defendant (§ 3553(a)(1))

"The text of the First Step Act, read in conjunction with other sentencing statutes, requires the court to consider all relevant facts, including developments since the original sentence." *United States v. Rose*, 379 F. Supp. 3d 223, 233 (S.D.N.Y. 2019).

Indeed, the principles set forth in *Pepper* and 18 U.S.C. § 3661 require that "the District Court be able to consider the most recent evidence of a defendant's life and characteristics,

which may be the most probative information available, when deciding whether a Defendant should continue to be incarcerated or immediately released." *Rose*, 379 F. Supp. 3d at 233-34.

There is no minimizing the severity of Mr. Sessa's crimes, which were of the utmost seriousness. Mr. Sessa has already served his sentences for loan sharking and the two murder conspiracy counts related to his participation in the Colombo Family war. Those offenses should not be used against Mr. Sessa when considering granting him compassionate release because he has already served his time and been punished for his behavior regarding the Colombo war.

However, the "history and characteristics of the defendant did not freeze on the day of his arrest and incapacitation." *See United States v. Underwood*, 2021 U.S. Dist. Lexis 8378 (S.D.N.Y. 2021). The United States Supreme Court made clear in *Pepper* that "evidence of post sentencing rehabilitation may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed the District Courts to consider." This includes the current history and characteristics of the defendant. Mr. Sessa's current history and characteristics favor his release.

As demonstrated by over 100 letters written by other inmates and BOP staff, and well over 50 letters written by members of his family and the community attached to this motion for compassionate release (*See* Exhibits 2-4 & 8-33; *see also* ECF. 1928 Exhibits 2, 4 & 5 and Footnote 2), Mr. Sessa is described as a mentor, leader, role-model, motivator, and model prisoner. The letters written by BOP staff and inmates, all of whom have had the opportunity to observe and interact with Mr. Sessa on a day-to-day basis over the course of many years, more than sufficiently demonstrates Mr. Sessa's rehabilitation, change, and growth. Mr. Sessa humbly asks this Honorable Court to look at him as he stands before the court today, and not reach back over a third of a century ago to when the crimes were committed as if nothing has changed. That young man no longer exists.

Mr. Sessa has not presented rehabilitation alone as the basis for compassionate release. He has shown that he has spent his time in prison serving his community and has focused on the rehabilitation of other inmates as well as his own personal growth. Service to others is an appropriate consideration when analyzing the history and characteristics of a defendant and when determining whether a sentence reduction is warranted. *See United States v. Millan*, 2020 U.S. Dist. Lexis 59955 (S.D.N.Y. Apr. 6, 2020); *United States v. Torres*, 464 F. Supp. 3d 661 (S.D.N.Y. 2022).

Based on the foregoing, Mr. Sessa's History and characteristics favors his release.

**(b) The Need for the Sentence to Promote Respect for the Law and Provide Just Punishment for the Offense (§ 3353(a)(2))**

As already stated above, the precedent within this Circuit is to reduce life sentences for murder and other serious crimes. *See United States v. Rodriguez*, 492 F. Supp. 3d 306, 311 (S.D.N.Y. 2020). As this Court explained in *United States v. Reid*, 2021 U.S. Dist. Lexis 42380 (E.D.N.Y. Mar. 5, 2021), "In order to promote respect for the law and provide just punishment, unjust sentences must be reduced . . . so that it complies with current law instead of an outdated and unjust sentencing scheme." (Reducing defendant's 119 year sentence to 21 years).

Mr. Sessa's 33 years of incarceration he has already served is harsh and excessive when compared to sentences today for similar crimes. Mr. Sessa's sentence must be reduced as well so that it complies with current sentencing trends for murder. Here are some examples of some unjust sentences from district courts in this Circuit that were reduced for this Court to take into perspective:

*United States v. Fisher*, 493 F. 3d 231, 236, 239 (S.D.N.Y. 2020) - Fisher was sentenced to life under the Drug Kingpin Status for being the leader in a violent drug organization and 8 murders. He was released after spending 36 years in prison.

*United States v. Underwood*, 2021 U.S. Dist. Lexis 8378 (S.D.N.Y. 2021) - Underwood was sentenced to life for being the leader in a violent drug organization and ordering 5 murders. He was released after spending 32 years in prison.

*United States v. Ronald J. Trucchio*, No. 04-CR00348 (TGW) (M.D. Fla. October 24, 2024) - Trucchio, a long-standing member of the Gambino Crime Family of La Cosa Nostra was sentenced to life imprisonment for RICO Conspiracy offenses. Given Trucchio's age, his numerous medical conditions and deteriorating health, his rehabilitative efforts, his letters of support from BOP Officials, and his good behavior in prison, the Court found that he does not pose a danger to any other person or to the community and released him after 20 years of incarceration.

*United States v. Gerard "Prince" Miller*, No. 92-CR-0091 (NGG) (Sept. 6, 2024) - Miller was the leader of the Queens-based Supreme Team enterprise that was a violent and notorious street gang that distributed crack cocaine and under his control committed multiple gruesome killings (the Government's opposition brief argued that Miller had a role in the murder of "more than a dozen people") and was given six life sentences. On September 6, 2024, he was released after spending 34 years in prison. In looking to deterrence of crime, the *Miller* court acknowledged the need for a severe sentence for the offenses charged but held "that 34 years in prison is a lengthy sentence that would suffice for purposes of general deterrence." The *Miller* court quoted *United States v. Bowman*, 2020WL 470284, at *2 (S.D.N.Y. Jan. 29, 2020) ("[O]ne would think that the 26 years of incarceration that [defendant] has served is sufficient to constitute general deterrence.").

*United States v. Scarpa Jr.*, 2020 U.S. Dist. Lexis 21094 (E.D.N.Y. Nov. 11, 2020) - (Colombo Family Captain), Judge Korman released Scarpa after spending 32 years in prison for

his conviction in 2 racketeering trials. He was sentenced to 60 years for being the leader in a violent drug organization which the Government stated, "Scarpa committed six murders and was the shooter in five of those murders."

*United States v. Donato*, 2024 U.S. Dist. Lexis 27620 (E.D.N.Y. Feb. 16, 2024) - Judge Garaufis released Donato (Bonanno Family Soldier) after spending 19 years in prison for racketeering, 1 murder, and also an attempted murder in which the victim was seriously wounded. Judge Garaufis stated, "[t]his sentence is sufficient but not greater than necessary to fulfill the goals of sentencing. Finally the sentence avoids unwarranted disparities for individuals generally convicted of similar conduct and those sentenced for their participation in the Bonanno crime family."

*United States v. Michael Persico*, 2014 U.S. Dist. Lexis 153807 (E.D.N.Y. Oct. 30, 2014) - The same U.S. Attorney's Office that prosecuted most of the cases, sent a 2016 letter to Judge Towns stating he would not ask for more than a "36 to 47 month sentence" for Persico who was charged with racketeering, including 14 racketeering acts, the last murder in the Colombo war of Joseph Scopo, and stated they can also prove Persico's involvement in 3 more murders of Michael Devine, Joseph Lalima, and Bruce Black - 4 murders in all, and the DOJ was satisfied with a less than 3 years sentence that Persico served in a low security prison.

*United States v. Theodore Persico Jr.*, 2012 U.S. Dist. Lexis 205896 (E.D.N.Y. 2012) - (Colombo Family Captain – sentenced to 10 years for the last murder in the Colombo Family war. This Court recently sentenced this defendant to a 5 year sentence for racketeering - his fourth prison term.).

*United States v. Van Putten*, 2024 U.S. Dist. Lexis 56091 (S.D.N.Y. Mar. 27, 2024) - Judge Daniels granted sentence reduction from life sentence for drug conspiracy and murder to a

30 year sentence. Judge Daniels cites this Court's decisions in *Monteleone* and *Qadar* in justifying the sentencing reduction.

*United States v. Joseph C. Testa and Anthony Senter*, No. 84-CR-63 (VLB) (S.D.N.Y.), Known as the "Gemini Twins" were notorious Gambino Crime Family hitmen linked to 11 murders and dismemberments were both paroled after getting a life sentence. Senter was released June 22, 2023 and Joseph Testa was released April 30, 2024, both after serving 35 years.

*Reynolds v. United States,* No. 99-CR-520 (NGG), 2022 U.S. Dist. LEXIS 82483 E.D.N.Y., May 6, 2022) (Defendant "was a soldier in the Bonanno crime family" and "[a]s part of his plea, he admitted to committing numerous predicate racketeering acts, including drug distribution, bank robberies and burglaries, extortion, attempted murder, and several homicides." Now 52, and with 23 years served, his sentence was reduced under § 3582(c)(1)(A) from 42 years to 36 years, based in part on COVID-19, severe conditions of confinement as a result of COVID-19, age, and rehabilitation to include his low BOP PATTERN score).

*United States v. Lugo,* No. 01-cr-922 (NG), 2022 U.S. Dist. LEXIS 43458, at *1-5, *15 (E.D.N.Y., March 11, 2022) (63-year-old defendant's life sentence for VICAR murder and other RICO-related crimes for his role as an assassin in a violent drug trafficking ring engaged in a turf war reduced to 360 months, despite 15 BOP disciplinary infractions. "In short, I see no reason for Lugo to serve a sentence that requires him to die in prison while these other men serve 30 years." *Id.* at *24).

*United States v. Glynn,* 06-cr-580, 2022 U.S. Dist. LEXIS 32794, at *1 (S.D.N.Y., Feb. 24, 2022) (reducing a life sentence to 35 years for leader of the Bloods street gang "that distributed hundreds of grams of crack cocaine and defended its territory through acts of violence, including . . . murder . . . and attempted murder . . .").

*United States v. Ramsay,* No. 96-cr-1098 (JSR), 538 F. Supp. 3d 407, 409 (S.D.N.Y., May 11, 2021) (Defendant, a Bronx street gang member serving a life sentence for murder in aid of racketeering for his attempt to kill the leader of a rival gang by firing into a crowd at a block party, grazing his intended victim, but "fatally wounded two bystanders," one victim "was pregnant; following an emergency delivery, her baby died as well." Court reduced his sentence under Section 3582(c)(1)(A)(i) to 30 years, finding his youth at the time of the offense, his upbringing, and demonstrated rehabilitation taken together compel a sentence reduction.).

*United States v. Cruz,* No. 3:94-CR-112 (JCH), U.S. Dist. LEXIS 68857, at *1-2 (D. Conn., April 9, 2021) (reducing 45-year-old Latin Kings gang member's sentence to time served after roughly 27 years of incarceration for two execution-style murders of suspected informants).

*United States v. Monsanto,* No. 87-CR-555 (LAP), U.S. Dist. LEXIS 19636, at *2-3 (S.D.N.Y., Feb. 2, 2021) (leader of "an extremely violent group that consistently used fierce tactics to secure its position in the heroin business and to enforce discipline within its own ranks," was sentenced to life plus twenty-two years for RICO, CCE, and other related crimes with a prior criminal history for manslaughter, granted compassionate release to time served.).

*United States v. Asaro,* 2020 U.S. Dist. LEXIS 68044, at *1-2 (E.D.N.Y., April 17, 2020) (high-level organized crime family defendant convicted of arson; and who the court determined murdered (by strangulation) a cooperating witness, was granted compassionate release).

In discussing just punishment for the Colombo Family war participants in its *Monteleone* decision, this Court cited Judge Block's recent opinion in *United States v. Russo,* 2022 U.S. Dist. Lexis 213643 (E.D.N.Y. 2022) stating, "If the Government, in offering its plea deals, did not believe that all those indicted on murder charges should be sentenced to life, why should the

court?" That Court's logic must apply to Mr. Sessa as well in order to promote just punishment. Mr. Sessa's Life sentence must be reduced to ensure equal justice under the law.

In *United States v Charles Watts*, No. 92-CR-767 (EDNY, Jan. 2023) (KAM), The Honorable Matsumoto Granted Compassionate Release/Sentence Reduction to Watts from a '1,107' month sentence (92 years, 3 months) sentence to time served after spending '30' years in prison. Judge Matsumoto cites the 'stark disparity' in sentence between Watts and his coconspirator – Daniels – who committed the same offenses and defendants who have committed equally or more serious crimes. "The Court recognizes that Daniels testified against Watts at trial and the Government offered Daniels a plea, which resulted in a sentence of '10' years. Nonetheless, as Mr. Watts asserts, Mr. Daniels sentence demonstrates that the '10' year sentence for Mr. Daniels' identical conduct and trial testimony served the deterrence, public safety, and other goals of 18 U.S.C. 3553(a) for Mr. Daniels and Mr. Watts's identical offenses. Mr. Watts sentence of '92' years, 3 months when compared to the '10' year sentence of Mr. Daniels, exemplifies the term 'trial penalty', and warrants a sentence reduction for Mr. Watts." *See United States v Holloway*, 68 F. Supp 3d 310, 313 (EDNY, 2014) (The Honorable John Gleeson) ("The difference between the sentencing outcome if a defendant accepts the Government's offer of a plea bargain and the outcome if he insists on his right to trial by jury is sometimes referred to as the trial penalty"). Judge Matsumoto cites the 'stark disparity' in sentence of Watts who was sentenced to '9xs' that of which Daniels was sentenced to for identical offenses.

In *United States v Ezell*, 2021 U.S. Dist. LEXIS 26618 (EDPA, Feb. 11, 2021), Attorney John Gleeson won a Compassionate Release/Sentence Reduction for Ezell after spending '18' years in prison on a '120' year sentence. The Court cited Ezell's codefendant who pled guilty

versus Ezell who went to trial stating: "Further, Ezell already served a longer sentence than the '15' year sentence of his co-defendants who pled guilty and have been released from custody." *See* United Sates v Price, 07-CR-0152 (ESH) 2020 U.S. Dist. LEXIS 184784 (D.D.C. Oct. 6, 2020) ("identifying as an extraordinary and compelling reason the fact that defendant's codefendants had already been released"). *See* United States v Sappleton, (PJM 01-CR-284), 2021 U.S. Dist. LEXIS 29020, WL 598232, at *1, *3 (D. Md. Feb. 16, 2021) ("Finding extraordinary and compelling circumstances based on sentencing disparity even where the conspiracy leader cooperated and pled guilty"). *See United States v Eccleston*, 2021 WL 5506754 (D. Md. Nov. 24, 2021) (same).

In *United States v Solothal Thomas*, 2024 U.S. Dist. LEXIS 23311, No. CCB-04-232 (Dec. 27, 2024) (CCB), The Honorable Catherine C. Blake granted Compassionate Release/Sentence Reduction to Thomas, reducing his two mandatory minimum life sentences to '35' years for 18 U.S.C. 1958 (murder for hire) citing the disparity in sentence between Solothal Thomas and his brother Danta Thomas who was sentenced to '77' months for the same murder. Judge Blake states: "Even though some disparity in sentence is no doubt justified because Danta testified and cooperated, the '20' years Solothal Thomas has already served is more than '3xs' that of Danta Thomas' sentence and the life sentence of Solothal is disproportionate, therefore the Court finds that the sentence disparity warrants Thomas' sentence reduction."

Mr. Sessa has now served a '450' months sentence (with good time credits), '110xs' that of what his older brother Carmine Sessa (a 2nd time felon) was sentenced to for each of his murders ('4 months', sentenced to less than '5' years for admitting to '15' murders) including ordering the 1989 murder Michael Sessa is serving his life sentence for and has now served '90xs' that of Joseph Ambrosino (a 3rd time felon) who was sentenced to '5 months' for all the

identical charges as Michael Sessa, including the same 1989 murder. Carmine Imbriale (a 4th time felon) charged with all the same charges as Mr. Sessa (excluding the 1989 murder) and also had an additional New York State case pending for selling drugs and facing a Mandatory '25 to Life' sentence was sentenced to No-time in prison, but if he were sentenced to '1-day', Mr. Sessa has now served more than '12,000xs' that of Imbriale and all were sentenced by Judge Weinstein.

The Egregious sentence disparity in Mr. Sessa's case warrants "extraordinary and compelling' reasons for release. As this Court states in *United States v Manzoor Qadar*, 2021 U.S. Dist. LEXIS 136980, *6 (E.D.N.Y., July 22, 2021),"It is impossible to not recognize the unfairness of Mr. Qadar's incarceration while more culpable parties remain free and at large." This Court released Qadar after spending '20' years in prison on a Mandatory Minimum Life sentence (death eligible) for the shooting and killing of an innocent man who married the woman he loved.

As The Honorable Nina Gershon stated in *United States v Richard Lugo*, (EDNY March 11, 2022) (NG), "In short I see no reason for Lugo to serve a sentence that requires him to die in prison while these other men serve '30' years. I cannot ignore the fact that all four men (including Tyler, McMillan, and Watson) were convicted of murdering Lanny David. Tyler in fact ordered the execution." Judge Gershon reduced Lugo's mandatory minimum life sentence to '25' years. Lugo was the shooter, a 5th time felon in prison '4xs' prior.

In providing a just punishment, the court must consider the position of the victim's family. In *Qadar*, *supra*, 2021 U.S. Dist. Lexis 136980, this Court cited a letter written from Rubina Malik Parvez, the victim's wife, that weighed heavily on this Court in reducing Qadar's sentence. This Court stated that, "[i]t is relevant to note that Rubina, the person most closely

affected by the murder at the heart of this case, feels justice has been served, and she supports Mr. Qadar's release. Rubina's endorsement weighs significantly in favor of reducing Mr. Qadar's sentence." This Court should similarly take into account the letters written by the victim's wife, Jennie Bruzzese-Coluccio, endorsing Mr. Sessa's sentence reduction.

### (i) Victim's Statement

Attached to this motion for compassionate release is a letter from the victim's wife, Jennie Bruzzese-Coluccio, pleading to this court to release Mr. Sessa. Mrs. Coluccio states, "While Michael has spent over 30 years in prison, he paid dearly for his crimes, and it seems like the sentence is excessive." *See* Exhibit 4.

Mrs. Coluccio went on to say that, "I hope my letter can be instrumental in helping Michael get the opportunity to be released and go home to his family. He does not belong in prison for 30 years." Exh. 4. If the victim's wife feels that Mr. Sessa's sentence was excessive and that he does not belong in prison anymore, the Court should deem that the defendant's punishment is excessive. This Court should give Jennie Coluccio's letter the same amount of weight as it did the victim's wife's letter in *Qadar* when considering whether to reduce Mr. Sessa's sentence.

This Court should take note that when it denied Mr. Sessa's previous motion for compassionate release, Mrs. Coluccio wrote a letter to the court expressing her sadness and dissatisfaction with the Court's decision. *See* Exhibit 34. Mrs. Coluccio stated, "My family and I are troubled by the way you treated Michael so unfairly." She explained that she felt that her rights as a victim were not considered and that her and her family's pleas for Michael's release went ignored. She was extremely concerned about how this Court could not recognize the

unfairness of keeping Michael in prison after 33 years when everyone else is free in his case. *See* Exh. 34.

While considerable attention has been focused on many other consequences of crime, "the effect of victim impact statements on excessive prison sentences has been largely overlooked." Huge M. Mundy, *Forgiven, Forgotten? Rethinking Victim Impact Statements for an Era of Decarceration*, 68 UCLA L. Rev. Disc. 302, 308 (2020). Although the subjective consequences of victim impact statements on sentencing is a matter of ongoing speculation and uncertainty,[3] many courts consider the victim's statement to be appropriate.

The drafters of the First Step Act were not oblivious to the relevancy of victim impacts. The Act, for instance, allows prisoners to earn time credits by participating in recidivism reduction programs, a category that encompasses restorative justice and "victim impact" education. 18 U.S.C. § 3635(3)(C)(xii). District Courts throughout the country have considered victim impact statements as a factor in denying a defendant's First Step Act petition. *See, e.g., United States v. Aiello*, 05-CR-60, 2024 WL 665944, at *3 (E.D.N.Y. Feb. 16, 2024) (citing victim impact statement in denying petition); *See also United States v. Wallace*, 02-CR-72, 2023 WL 8435979, at *7 (D. Conn. Dec. 5, 2023) (same); *United States v. Hockenberger*, 21-CR-140, 2023 WL 5955741, at *4 (S.D. Ohio Sept. 13, 2023) (same); *United States v. LeBoeuf*, 19-CR-

---

[3] See Maarten Kunst et al., *The Impact of Victim Impact Statements on Legal Decisions in Criminal Proceedings: A Systematic Review of the Literature Across Jurisdictions and Decision Types*, 56 Aggression & Violent Behavior 1, 8 (2021) ("Due to the low number of studies investigating the imposition of prison and non-custodial sentences, it could not be determined whether the proportion of studies finding a main or a null effect for [victim-impact statement] delivery varied by legal system, sample characteristics, or [victim-impact statement] presentation mode."). For an overview of some of the purported benefits of judicial consideration of victim impact statements, such as the provision of additional information, rehabilitative effect, and benefits for the victim, *see, e.g.*, Paul G. Cassell, *In Defense of Victim Impact Statements*, 6 Ohio St. J. Crim. L. 611 (2009). For a converse description of some perceived problems with the practice, such as Constitutional concerns and unfairness to defendants, *see Kelly v. California*, 550 U.S. 1020 (2008) (cert. denied) (Statement of Stevens, J.).

209, 2023 WL 2456786, at *4 (N.D. Cal. Mar. 10, 2023) (same); *United States v. Hutchins*, No. 19-CR-22, 2023 WL 2394558, at *2 (W.D.N.C. Mar. 7, 2023) (same).

Just as a court may properly consider such statements where they weigh against the reduction of a sentence, a court should likewise account for the inverse scenario, where a victim statement weighs in a defendant's favor and supports a finding of an extraordinary and compelling reason to reduce a prisoner's sentence.

The victim's statement here is keeping with the First Step Act's call for restorative justice and victim-offender reconciliation. *See* 18 U.S.C. § 3635(3)(C). We therefore ask the Court to consider Mrs. Coluccio's statement as one among several factors in combination to support a finding of an extraordinary and compelling reason for Mr. Sessa's release.

### (ii) Honorable Judge Frederic Block's Recent Decision

Honorable Judge Frederic Block had sentenced Walter Johnson – known in Brooklyn as the gunman "King Tut" – to 5 life sentences. Johnson was sentenced to die behind bars, and now 27 years later, Judge Block had a remarkable change of heart. Judge Block decided on October 16, 2024, that Johnson's sentence had been too harsh. *See United States v. Walter Johnson*, Case no. 96-CR-00932 (FB), ECF. 200. Judge Block's new book, "A Second Chance: A Federal Judge Decides Who Deserves It," offers insight on his shift. Judge Block wrote that "second chances are always about redemption." He further wrote, "I believe in the biblical concept of redemption and the First Step Act appropriately provides a path to allow a worthy prisoner a second chance to live a law-abiding life."

In Johnson's case, Judge Block received a victim statement from Crystal Winslow who Johnson had been charged with raping during the robbery (although he was acquitted at trial) for which Judge Block had sentenced him. In his October 16, 2024, Order releasing Johnson, Judge

Block suggested that Winslow's forgiveness, as expressed in her letter, was the tipping point in viewing Johnson as worthy of a second chance. Mr. Sessa's victim's wife, Jennie Coluccio also wrote a letter on his behalf stating, "I hope my letter can be instrumental in helping Michael get the opportunity to be released and go home to his family. He does not belong in prison for 30 years."

Judge Block wrote in his book that "[j]ust like prisoners who have evolved into better human beings during their lengthy periods of incarceration . . . judges also evolve with the passage of years on the bench." Just like Judge Block was able to rethink people's ability to change and the role of compassion, this Court can also find that Mr. Sessa deserves a second chance and not define him for his worst moment in 1989. After 33 years in prison Mr. Sessa is deserving of a second chance, and the Court can move beyond the binary of crime and punishment and realize that people can change for the better. This spirit of understanding was the undercurrent in Judge Block's order that gave Johnson a second chance.

In light of Judge Block's decisions in *Johnson* and *Russo*, and this Court recognizing the unfairness in *Manzoor Qadar's* case, this Court noted how Mr. Qadar spent 20 years in prison while everyone else was free in his case. This Court should also take the same position as it did in *Qadar's* case and take into consideration the letter of Jennie Coluccio, the person most closely affected by the murder at the heart of this case, and hold that Mr. Sessa's 33 years of incarceration is greater than necessary to reflect the seriousness of the offense, afford adequate deterrence, promote respect for the law, and serve the purpose of his original sentence. This factor clearly favors Mr. Sessa's release.

### (iii) Judge Weinstein's Changed Position on Handing Down Harsh Sentences

This court has stated the late-Judge Jack B. Weinstein's decades old comments in its own

opinion denying Mr. Sessa relief that the defendants in this case were "unusual" and their crimes were "extraordinary." Mr. Sessa would like to point out to the Court that there is nothing more extraordinary about this case than any other case which involved any type of criminal organization. Other cases before Judge Weinstein involved many murders and more egregious conduct. *See United States v. Gigante*, 989 F. Supp. 436 (E.D.N.Y. 1997) (Genovese Family Boss, charged with racketeering, loan sharking, 2 murder conspiracies, and partly responsible for 6 murders. Sentenced to 12 years); *United States v. Corozzo*, 2009 U.S. Dist. LEXIS 44490 (E.D.N.Y. 2009) (Leader in the Gambino Crime Family charged with Racketeering, extortion, conspiracy to commit murder and murder sentenced to thirteen-and-a-half years). *See also* Judge Weinstein's other cases listed above in Section A - Unusually Long Sentence, pgs 12-15.

If Mr. Sessa were resentenced today by Judge Weinstein, he certainly would not have received a life sentence. All of Mr. Sessa's codefendants who were convicted of multiple murders have since been released from prison years ago.

### (c) The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct (§ 3553(a)(6))

Section 3553(a)(6) requires a District Court to consider nationwide sentence disparities. *See United States v. Wills*, 476 F. 3d 103, 110 (2d Cir. 2007); *Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558 (2007). But the court may also consider disparities between codefendants in choosing the appropriate sentence. *See United States v. Stewart*, 590 F. 3d 93, 140 (2d Cir. 2009); *United States v. Cardenas*, 2021 U.S. Dist. Lexis 158897 (S.D.N.Y. 2021); *United States v. Lewis*, 2021 U.S. Dist. Lexis 144018 (S.D.N.Y. Aug. 2, 2021). Here, the disparity between codefendants and other defendants who have been convicted of similar crimes strongly favors a sentence reduction for Mr. Sessa. Every single codefendant that was on Mr. Sessa's case, even

those who were charged with multiple murders, have been released from prison. Mr. Sessa would like to present his codefendants' sentences to put his claim into perspective:

Carmine Sessa (Colombo Family Consigliere) - Ordered the murder of Anthony Colluccio, and was charged with and admitted to committing 15 murders. Sentenced by Judge Weinstein to less than 5 years in prison.

Joseph Ambrosino - a three-time felon charged with all the same crimes as Michael Sessa, including the same 1989 murder was sentenced to 5 months in prison by Judge Weinstein.

Carmine Imbriale - A four-time felon charged with all the same charges as Sessa (excluding the murder charge), with prior arrests for rape, kidnapping, sodomy, forcible compulsion, and pending New York State drug charges (facing mandatory 25 years to life in prison). He was sentenced by Judge Weinstein to no time in prison.

Gregory Scarpa Sr. (Colombo Family Captain) - Pled guilty to committing 4 murders and numerous attempted murders and conspiracies during the Colombo war. He also admitted to committing more than 50 murders not listed on the indictment and was involved in a shootout, while out on bail in this case, which left an innocent 20-year-old dead. He was sentenced by Judge Weinstein to 10 years in prison.

Lawrence Fiorenza - Convicted of numerous racketeering charges and 1 murder. Sentenced to time served after spending less than 5 years in prison.

Lawrence Mazza - Pled guilty to committing 4 murders, numerous attempted murders and murder conspiracies. Sentenced to 10 years.

James Delmastro - Pled guilty to committing 4 murders and numerous murder conspiracies. He was sentenced by Judge Weinstein to 5 years in prison.

Frank Sparaco - pled guilty to committing 4 murders and numerous murder conspiracies. He was sentenced by Judge Weinstein to 23 years in prison.

Robert Zambardi (Colombo Family Captain) - Pled guilty to Colombo war conspiracy and numerous other charges including 5 murders on a separate indictment. He was sentenced to an aggregate sentence of 24 years.

Joseph Tomasello (Persico acting Boss) - Pled guilty to Colombo Family war conspiracy. He was sentenced to 8 years.

Richard Fusco (Persico Faction Captain) - Pled guilty to Colombo war conspiracy. He was sentenced to 14 years.

Theodore Persico Sr. (Persico Faction Captain) - Found guilty of Colombo Family war conspiracy. He was sentenced to 23 years.

Thomas Gioeli (Colombo Family acting Boss) - Charged in 2008 with Colombo Family war conspiracy and 4 murders. He was sentenced to 18 years.

Joseph Competiello (Colombo Family soldier) - Pled guilty to 5 murders, including the 1997 murder of NYPD officer Ralph Dohls. Sentenced to 12 years.

Anthony Russo and Joseph Monteleone (Mr. Sessa's Codefendants) - were both recently granted compassionate release. These cases were discussed in detail in this motion.

The sentences above demonstrate that Mr. Sessa's codefendants who committed identical conduct as him (or worse), were deemed to have received just punishment that promoted respect for the law. Mr. Sessa's life sentence, when compared to the sentences imposed on every other person involved in this case from the Persico Faction, exemplifies the term "trial penalty." Michael Sessa is still being held in prison because he did not cooperate. If you compare the sentence he received to the sentence of his older brother Carmine Sessa, clearly Michael Sessa

should have received a less than 5 year sentence. Carmine Sessa cooperated and received a 5 year sentence from Judge Weinstein for admitting to committing 15 murders and being a leader in the Colombo Family. Michael Sessa would have received no more than a 5 year sentence had he not gone to trial and cooperated. In *United States v. Freeman, supra*, 2023 WL 6517466 a sentence reduction was granted primarily based on "the stark disparity between the sentence [Freeman] received and the sentences of his co-defendants." *Id.* at 4.. Specifically, the court was concerned about the fact that the head of the criminal organization who ordered five killings received a sentence of 30 years, and the defendant moving for a sentence reduction, convicted of a single murder, received two life terms plus five years. The *Freeman* case has the same set of facts as this case at bar and should end with the same result.

This court should hold that continuing to keep Mr. Sessa incarcerated would create an unwarranted sentence disparity among defendants with similar records who have been found guilty of similar conduct. This court stated that the strongest factor in granting Joseph Monteleone Sr.'s (Mr. Sessa's Codefendant) compassionate release was the unwarranted sentence disparity that was created by Anthony Russo's sentence reduction. (Mr. Sessa's other Codefendant). This court stated, "While 3553(a) does not require consideration of co-defendant's sentences, it does not preclude such consideration in sentencing." *Monteleone*, 2023 U.S. Dist. Lexis 62518. This court concluded that Russo's sentence reduction created an unwarranted sentence disparity between Monteleone and Russo, and should conclude the same with Mr. Sessa.

### (d) Other § 3553(a) Factors

This Court should also hold that Mr. Sessa is not a danger to the public. *See United States v. Donato*, 2024 U.S. Dist. Lexis 64025 (E.D.N.Y. Apr. 8, 2024); *United States v. Haynes*, 456 F.

Supp. 3d 496, 506 (E.D.N.Y. 2020) (concluding that a defendant who committed violent crimes did not pose a continued risk to the community because he had been a good prisoner, completed significant coursework while incarcerated, and discharged his job duties impressively). Mr. Sessa was the only defendant in this case to self-surrender while many absconded, which makes him a good candidate for supervised release. The conditions of supervised release can limit the risk that Mr. Sessa will reoffend. The defendant will know that if he violates any conditions of supervised release he will be subject to repercussions. The addition of home confinement to the terms of supervised release is another tool this court can use to ensure that the defendant has a successful transition back to society.

This Court does not have the statutory authority to modify a defendant's sentence to home confinement. However, courts may reduce a defendant's current sentence to time served and impose a new term of supervised release and require home confinement as a special condition of supervised release. *See United States v. Sawicz*, 453 F. Supp. 3d 601 (E.D.N.Y. Apr. 10, 2020); *United States v. Pena*, 2021 U.S. Dist. Lexis 24867 (D. Conn, Feb. 9, 2021). Non-custodial sentences like supervised release curtail "prized liberty interests and the defendant always faces the harsh consequences that await if he violates the conditions attached to his release." *United States v. Hancock*, 2021 U.S. Dist. Lexis 3660 (D. Conn, Jan. 8, 2021).

Mr. Sessa is not the same person that appeared before the court many decades ago. "His past decisions haunt him daily" and he wishes every day "to right the wrongs that he has done." He states that while "sorry doesn't seem to be enough at times," he is "truly sorry." Mr. Sessa has done absolutely everything in his power to redeem himself through service to others, and makes amends for his past actions, never letting the weight and hopelessness of a life sentence distract him from bettering himself and helping others. Mr. Sessa deserves a second chance and

begs this court to modify his sentence. "Courts promote respect for the law when they exercise mercy in appropriate circumstances." *United States v. Hansen*, WL 29068 (N.D. Ill, June 14, 2020).

Mr. Sessa's crimes were undeniably and undoubtedly serious, but he committed them over a third of a century ago. Mr. Sessa is now 65 years old. While facing the reality of being sentenced to life imprisonment without parole, Mr. Sessa has used this time to rehabilitate himself and evolve into a humane and law-abiding adult. He has been a model inmate who has taken advantage of every educational opportunity available, while maintaining consistent employment in prison and a near spotless disciplinary record. He has contributed significantly to the prison community, as demonstrated by the voluminous amount of letters from fellow inmates, prison staff, and members of the community.

In addition to the section 3553(a) factors weighing in favor of his release, Mr. Sessa has proven the existence of an unwarranted sentence disparity due to the release of his co-defendants and others that have been charged with similar crimes. Mr. Sessa's rehabilitation should convince the Court that his time in prison is sufficient, but not greater than necessary to meet the ends of the criminal justice system. Finally, the Court should find that a reduction is consistent with the Sentencing Commission's applicable policy statements, as Mr. Sessa poses no danger to any other person or the community. The § 3553(a) factors strongly favor Mr. Sessa's release.

## IV. RELEASE PLAN

If Mr. Sessa is granted compassionate release, he would reside with his wife Linda Sessa in Tuckerton, New Jersey, and will seek medical treatment for his underlying medical conditions at Mercy Health. Mr. Sessa will be employed by his brother, Anthony Sessa, selling RVs in Trenton, New Jersey. Mr. Sessa is committed to changing his life and wants to demonstrate to

this Honorable Court that he is a changed man. Mr. Sessa will follow all orders issued by this court as well as the probation department and be a model citizen.

**V. REPLY BRIEF**

If the Government opposes Mr. Sessa's motion for compassionate release, he would like to have the opportunity to file a Reply Brief within 21 days after receiving the Government's Response before the Court renders a decision.

## CONCLUSION

Wherefore, in the interests of fairness and justice, Mr. Sessa asks that this Honorable Court show mercy and compassion by granting this motion for compassionate release and modify his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(1)(A) and Amendment 814. Alternatively, this court could reduce Mr. Sessa's sentence to time served and/or place him on home confinement as a special condition of supervised release or reduce his total term of incarceration. The aforementioned facts favor Mr. Sessa's release so he can demonstrate to this Court his successful re-entry back into society.

Dated: *June - 5* , 2025.

Respectfully submitted,

*Michael Sessa*
Michael Sessa

If Mr. Sessa continues to remain incarcerated, with his medical conditions, his risk of death greatly increases every day. Continuing to keep Mr. Sessa confined in this unsafe environment constitutes cruel and unusual punishment. Keeping Mr. Sessa in custody could result in a death sentence. Mr. Sessa's concerns warrant an early release so he can be in a safe and sterile environment receiving treatment for his medical conditions. Many District Courts in this Circuit have recognized this danger and have granted compassionate release to defendant's with similar medical conditions as Mr. Sessa. *See United States v. Cromitie*, 2024 U.S. Dist. Lexis 12253 (S.D.N.Y. Jan. 19, 2024) (granting a motion where a 58-year old defendant has served 15 years of his 25 year sentenced and suffered chronic medical conditions); *United States v. Freeman*, 2023 WL 6517466, at \*5 (E.D.N.Y. Oct. 5, 2023) (citing Russo, 643 F.Supp. 3d at 333)(finding health issue to be "one of the several factors contributing" to finding of grounds for sentence reduction); *United States v. Danilovich*, No. 12-CR-171, 2023 U.S. Dist. Lexis 137997 (JPO) (S.D.N.Y. Aug. 7, 2023) (the court found that Danilovich's medical conditions and the harsh nature of incarceration during COVID, constitute extraordinary and compelling reasons to reduce sentence); *See also United States v. Johnson*, 2023 U.S. Dist. Lexis 12906 (E.D.N.Y. April 26, 2023); *United States v. Jennings*, 2023 U.S. Dist. Lexis 182150 (W.D.N.Y. Oct. 10, 2023); *United States v. Patrick*, 2022 U.S. Dist. Lexis 126469 (D. Conn, July 18, 2022), and *United States v. Rivera*, 2022 U.S. Dist. Lexis 99745 (S.D.N.Y. June 3, 2022).

On June 26, 2020, Mr. Sessa filed his first motion for a reduction in sentence, alleging that his health conditions and rehabilitation among other issues constituted extraordinary and compelling reasons for his immediate release. EFC No. 1840. The district court found that "Sessa has shown that he has serious medical conditions that place him at heightened risk of severe illness from the COVID-19 pandemic," and that he had presented extraordinary and

compelling reasons for release concerning his health conditions. *See* Dist. Ct. ECF No. 1843

(Opinion and Order dated July 14, 2020). Certainly Mr. Sessa's serious medical conditions only

worsen as he ages. Therefore, the Court should find that his serious medical conditions still

present extraordinary and compelling reasons for release.

The new policy statement under § 1B1.13(b)(1)(D)(i) states that extraordinary and

compelling reasons exist if a Defendant is housed at a correctional facility affected or at

imminent risk of being infected by an ongoing outbreak of an infectious disease. Given the

combination of the Defendant's medical conditions, and that Covid is still one of the leading

causes of death in this country, this Court should find that Mr. Sessa has established he has a

serious medical condition, is still at risk of being infected with COVID-19 and the new evolving

strains, qualifies for relief under § 1B1.13, has established extraordinary and compelling reasons

for compassionate release, and is eligible for a sentence reduction under 18 U.S.C. § 3582

(c)(1)(A).

### (C) AGE OF THE DEFENDANT (U.S.S.G. § 1b1.13(b)(2))

The Defendant qualifies for relief under this subsection because he is 65 years old, is over

three decades removed from the conduct that led to imprisonment, is experiencing a deterioration

in physical health because of the aging process, and has served at least ten years. As stated in the

previous section, Mr. Sessa suffers from at least six conditions that according to the CDC could

result in serious health complications or death if he were exposed to an ongoing infectious

disease. Those conditions are hypertension, obesity, prediabetes, high cholesterol, heart disease,

and being 65-years of age. *See* Footnote 1, Mr. Sessa's Medical Records.

Several district courts in this Circuit have recognized that the combination of a COVID-

like health crisis, along with a defendant's age and preexisting medical conditions, establishes

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

MICHAEL SESSA,
      Petitioner,

                                    Case No.  92 Cr. 351(ARR)

     V.

UNITED STATES OF AMERICA,
      Respondent.

# EXHIBITS

## <u>EXHIBITS</u>

1 - Letter from Michael Sessa
2 - Letter of Tara Sessa
3 - Letter of Linda Sessa
4 - Letter of Jeanne Bruzzese-Coluccio
5 - BP-9 Request to the Warden
6 - Program & Paralegal Certificates, G.E.D.
7 - BOP Program Review
8 - Letter of Susan Spagnuolo
9 - Letter of Amanda Spagnuolo
10 - Letter of Susan Tellier
11 - Letter of Lilly Sessa
12 - SOS Timothy A. Badman
13 - Psychologist A. Brockman
14 - Sup. Chaplain B. Carney
15 - Chaplain J. Wallace
16 - SOS J. George
17 - SOS M. Hess
18 - Recreation Specialist Andy Kline
19 - SOS J. Page
20 - SOS R. Weaver
21 - SOS J. Wenrick
22 - Recreation Specialist Mason Longenberger
23 - Recreation Specialist Jason Fox
24 - SOS  D. Hess
25 - Letter of Inmate Vincent Sumpter
26 - Letter of Inmate Craig Wilbur
27 - Letter of Inmate Timothy Wallace
28 - Letter of Ex-inmate Tommy Walker, III
29 - Letter of Ex-Inmate Rene Tellier
30 - Letter of Inmate Adam Carson
31 - Letter of Inmate Michael Babb
32 - Letter of Adeline Sessa
33 - Letter of Richard Ferraro
34 - October 1, 2023 Letter of Jennie Bruzzese Coluccio

# EXHIBIT 1

Michael Sessa
Reg. No. 95870-004
FCI Lewisburg
P.O. Box 1000
Lewisburg, PA   17837

December 7, 2024

Honorable Allyne R. Ross
United States District Court Judge
U.S. Court for the Southern District of New York
40 Foley Square
New York, N.Y.   10000

      Re: United States v. Sessa
         Case No. 92 Cr. 00351

Dear Honorable Judge Ross;

I would first like to thank you for taking the time from your busy schedule to read my letter. I would like to bring to your attention the man I am today that you will not read in my PSR or indictment. My family, friends, staff and other inmates have provided you with a large volume of letters in support of my release and each one has given you an insight to who I am today and what I mean to these people. I am writing this letter to ask you to look at the person I am today and not who I was over three decades ago when I committed these serious offenses, was arrested and eventually sentenced.

As you are aware I am now 64 years old. I self-surrendered at 32 years old. I truly wish that I could go back more than 30 years and undo the wrongs I have done. I regret them everyday as I sit here and look back on all the harm I have caused the victims and their families.  My own family and children have also become victims because of my crimes. My daughter has lived her entire life not having me physically present in her life.  I have missed every one of her birthdays and so many holidays.  This is a shame on me. This is something we don't think about when committing a crime. But it became a sad wake up call as I sat behind bars for over three decades and viewed photographs of my daughter at all her special occasions in her life and how she had to grow up without me being present in her life. I think about the embarrassment I caused her when all the other fathers would attend school meetings, soccer games or parties and she would be asked by other kids where her father was. These are all things we never think about before it is too late.

One of the worst tragedies is when a loved one, family member or close friend passes away. We can never properly mourn the loss. We never get to pay our last respects. It is a sad thought I have lived with for many years. Many family members and friends have passed away over the years and especially since COVID. I blame no one but myself. As I matured, I looked back at all of my bad choices I made over the years. I know that I can never go back and change that so what I did was moved forward and did not let my past define who I am. Even with a life sentence and no chance of release I continue to better myself and life. I continuously help many others in here that were at some point also lost souls. I provide them with guidance to better their lives and eliminate criminal thinking.

I've spent over half my life in prison. I've spent my daughter Tara Marie's entire life in prison. She was five months old when I turned myself in. I spent half of my wife's life in prison. My daughter has sacrificed her life to stay at home and take care of her mother. It is as though their lives also stayed still as they do this time with me. My heart aches for my family. On October 24, 2022, New Jersey Governor Phil Murphy and his staff chose to visit my wife and daughter at their home to speak about all they went through for the past 10 years due to Hurricane Sandy because their residence was destroyed. See Governor Murphy's visit:
https://www.dropbox.com/s/oh2405me7znapm2/sessa08.mp4?dl+0. It's events like Hurricane Sandy and all my family suffered from that because I was not there to help. I regret all the bad things that I've done that caused me to come to prison. If not for my stupidity I would've been there with my family.

For many years in my youth I was never involved in organized crime or criminal activities. I looked up to my older brother Carmine when I was younger as happens in many families. These problems happened because I allowed Carmine to lead me down the wrong path. He took me on a path of destruction which he was already on. I realized later that he was not a brother to look up to. I am not blaming him for my actions, I chose the choices I made. But as an older brother he should have guided me down a more productive path in life. He should have shielded me from that life. Today I want nothing to do with these groups of criminals. I denounce crime. I despise it. I will never have anything to do with that type of lifestyle ever again.

Over 3 decades have since passed. Most inmates wake up every day closer to release. With a life sentence I wake up each day closer to death. I am begging your Honor not to let me die in prison. I feel I deserve a second chance. I have done everything in my power for 3 decades to show I changed. I've taken every program available. I've taught classes. I have numerous certificates and a paralegal diploma. Along this forsaken

2

journey, I've reestablished my bond with God and helped many others find their way. I've steered many inmates away from their criminal thinking. My record demonstrates the type of person I am today.

COVID-19 was by far the worst time I have spent in prison. As the world embraced an unknown and deadly pandemic, I was locked in a cell for months at a time not being told exactly what was going on. All us inmates knew was what we heard on the radio that people were dying from it all over the world. Newspapers showed tractor trailers outside hospitals being used as makeshift morgues. Then the disease got inside the prison and it spread like wildfire. I was left locked inside the cell to live or die. It was the scariest moment of my life. There were many moments when I thought I was going to die. When I was infected with COVID-19 the medical staff would not even come to my cell door. They would stand six feet from the cell door and talk to me from a distance and tell me it was like a bad flu. They told me to rest and drink lots of water. They were just as scared of contracting the virus as we were. Only, they were bringing it into the prison. Thank God I survived but not all were so lucky. It was the scariest time of my life and again I look at my past and think about how stupid I was to put myself into this position. The last four years of being in prison during COVID-19 is by far one of the scariest moments of my life and I can say that if released I will never get in trouble again and live trapped in a cell like this.

During the COVID pandemic all programming and visitations came to a halt. We were locked in the cells at times for 23.5 hours a day for the past 4 years and many of those months straight at a time. We had no access to outside recreation, programs, counseling, drug treatment, church services, or visits from our families. We were only permitted out of their cells for thirty minutes a day. During the 30 minutes, we could only shower and use the phone. If we were not able to get in touch with our family, it would cause undue psychological distress. Due to the fact that the news was reporting thousands of people were dying each day, we would automatically assume that our loved ones became infected with the virus and are either in the hospital or dead because they didn't answer the phone. This would cause me to be a nervous wreck until I was able to use the phone again. We were unable to contact our families in other ways like the mail because the guards were not sending the mail out or bringing it in; afraid the virus stayed on the envelope. So for years it was a continuous roller coaster ride of emotions, especially for me because I worried about my family and my own health. It was literally a form of psychological torture until I was able to get in touch with my family.

3

We were given cold food for years and ate in our cells. Hot meals were nonexistent. Every meal, every day, all we would receive were cold cereal for breakfast, a peanut butter and jelly sandwich, a bag of chips, and an apple for lunch, and a bologna sandwich and an apple for dinner. Laundry service was limited to once a week so I had to hand wash most of my clothes. There was no access to a library, so unless our family sent us books, we weren't reading anything. We just sat there for many hours a day. The thought of dying was a constant fear as COVID was a constant threat. These were very rough times for me and I am sure all inmates.

I have sat here and watched thousands of inmates return to their families. Some left the prison high on drugs and not a care in the world about changing their lives for the better. I followed all of the institutional rules and helped every one that I possibly could and continue to do that today. I am asking the Court to look at my record and look at the person I am today which will show you that I am deserving of a second chance. And, please allow me to go back home to my family where I belong.

Thank you for your time and consideration.

With a humble heart,

Michael Sessa

# EXHIBIT 2

Tara Sessa
11 Lake Singleton Court
Little Egg Harbor, New Jersey 08087
609-618-1589

July 1, 2023

The Honorable Allyne R. Ross
U.S. District Court Judge
U.S. District for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

RE:    Compassionate Release Letter
       Regarding Michael Sessa

Dear Honorable Judge Ross,

I am writing to you regarding my father Michael Sessa who has a motion for a reduction of
sentence pending before you.

I'm now 31 years old.  My father has been incarcerated since I was 5 months old. I have never
been able to spend any holidays/birthdays or special family events with my father. My father has
missed out on many opportunities that are essential for a father/daughter relationship.  He was
never able to bring me to my first day of school or any other important events. In those school
days I would see all of the other children with their fathers at school events, holidays and
birthdays. I remember when I was much younger all I would wish for Christmas was for my
father to come home.  Now you can make that wish come true.

Our complete relationship up to this letter has been consistently held together through
numerous daily phone calls and visits when available. Not a phone call goes by where my Dad
doesn't tell me how much he loves me. Throughout my childhood I remember visiting him very
often. I have never viewed my father differently due to him being incarcerated, I have always
known him to be kind and loving. Even with all of his problems and being locked away he has
always been as good of a father as he could be.

My father does not hide from his past.  He has shown me a lot of remorse and expressed on
many occasions how sorry he was for his past actions. He takes the blame for these decades in
which I have grown up without him physically in my life. Still, I've grown to know and love the
type of person that he is. He has done his best to remain an exceptional father even though he
is incarcerated. He is kind, loving, and cares more about others than he does himself. I have the
highest respect for him.

He has continuously stressed the importance to me of education, family and hard work.  I have
learned a lot from our conversations over these many years. I have picked up a lot of my
father's good traits. My mother and family have also taught me a lot about the good person that
he is.

In the past I have struggled with severe acid reflux, I would get very sick and not be able to eat
certain foods. When I told my father that I wasn't feeling well he researched remedies I could do

at home to help heal my acid reflux. I listened to his advice and stood away from certain foods that activated it and took home remedies which helped heal my acid reflux over time. No matter what the situation, my father was always the type to help me in any way he can even while being away.

My father does regret the actions of his past life. And although he committed some bad acts, I believe everyone deserves a second chance. He has certainly earned a second chance. He has turned his life around over these many years incarcerated. He studied very hard while away and took many courses including some in religion and law. He earned his paralegal degree. He never felt sorry for himself or blamed others. He did not sit around and watch tv or play cards. He studied and prepared to better himself in hopes that one day he would come home and put his knowledge to good use.

Even while my father has been incarcerated for over 3 decades, he has still managed to keep a positive mindset and avoid trouble which is a major task while being confined in some of the most violent prisons in the country. He also lived under some terrible conditions. Especially in the past 4 years while COVID-19 was running rapidly through the prisons. Even while COVID risked the lives of everyone, he seemed to always be more concerned about his family. I worry for my father's health due to COVID because he has some serious health problems and is in the bracket amongst those who can become very ill. One can only imagine the horrors of being locked in a cell during a pandemic and hearing on the radio how millions of people around the world were dying. Many in the prison systems throughout the country have died as well. I am sure it takes a toll on every prisoner. These years were very hard on all of us. Yet, my father managed to stay positive and avoid problems. He is the most inspirational person that I know. And I look up to him because of that. He has taught me to always keep a positive mindset and not think negatively. He influenced me to do good in school and college.

My only memories of my father, besides photos of us together when I was a baby, all involve him being incarcerated. I have never been able to spend time with my father in the world. My whole life I have been unable to share experiences with him. All we have are 31 years of memories shared over the phone or in a visiting room. We've never had dinner together in a restaurant. These very simple things that people do every day would mean so much to me if my father was released.

Please consider all that I and others have written about my father. Please seriously consider reducing his sentence so I can have whatever years he has left to enjoy with him and make some future memories together. I'm attaching the last photo I have with my dad before he was incarcerated when I was only 4 months old.

I feel that 31 years of imprisonment is not only a very long period of time but is more than sufficient punishment. My father is remorseful for his actions and takes accountability. I truly feel from my heart that my dad would never invite the idea of any future criminal action after seeing what it has cost him and our family.

Thirty-one years of not having my father present in my life feels like an eternity, one can only imagine what thirty-one years of incarceration feels like to my father. It feels like a lifetime, I am sure. You can now allow him to come home and make up for all that lost time he's missed in each of our lives.

He deserves a chance to come home and walk me down the aisle one day, and he will be able to experience being a grandfather first hand. I know these are experiences he is looking forward to and wouldn't want him to miss out on these milestones in my life. Other courts have released others from the same case as my father. He deserves the same chance. My father does not deserve to die in prison.

Please consider all of these facts when you make your decision.

Thank you for your time.

Sincerely yours,

*Tara Sessa*

Tara Sessa



# EXHIBIT 3

Linda Sessa
11 Lake Singleton Court
Little Egg Harbor, New Jersey 08087
609-618-1145

July 1, 2023

The Honorable Allyne R. Ross
U.S. District Court Judge
U.S. District for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

RE:   Michael Sessa #95870004

Dear Honorable Judge Ross,

My name is Linda Sessa. I am writing this letter in regards to my husband Michael Sessa. He currently has a motion for a sentence reduction pending before the Court. I am hoping you will have time to read this letter when considering his motion for release and will shine light on the person Michael is today and what he means to myself and many others in our community and family.

I met Michael over 40 years ago when I was 17 years old. You can say it was love at first sight. One of the reasons why I fell in love with my husband is the way he loved and respected his family and my own. We spent a lot of time down at my parent's house on the Jersey shore on many weekends with my parents and siblings. Everyone was able to see he was a very caring, loving and giving man. We dated for five years before we got married in Puerto Rico. My father's uncle was a Navy Priest there and he also married my parents. It was an honor to have him marry us. After we got married, we had many obstacles that wouldn't allow me to conceive a child on my own. We decided to try Invitro fertilization and after one miscarriage, we finally conceived. You can't imagine how excited we both were when our daughter, Tara Sessa, was born.

Our daughter Tara was 5 months old when Michael self-surrendered. He had no criminal record prior to this case. The lifetime sentence was devastating to me and our family. This was a slow death sentence imposed on all of us. It is the worst feeling in the world to know that your husband has been condemned to die in prison. I have been living with this torment for 31 years. Now with over three years of COVID-19 and all of the stories I have read about prisoners dying while incarcerated I constantly worry for Michael's well-being.

Over the 40 years of being married to my husband, he has spent ¾ incarcerated. Although he is in custody for so long he continues to be the love of my life and my best friend. He is there to support me when things aren't going so well. He gives me positive feedback to keep my spirit up. He is a good man.

The one thing I love the most about my husband is his optimism. He's always trying to have me not worry about anything. He is always there especially with our daughter for reassurance as to if I'm making the right decisions in her well-being. He's always been supportive of my

decisions. He is kind and honest with answers to my questions. His strength has kept me going for 31 years. We speak every day and he reassures my faith.

Michael was a great husband and also a great son-in-law and brother-in-law. He was loved very much like a son by my parents and siblings. In 1992, my mother had multiple brain aneurysms. At the time, we lived in Brooklyn and my daughter was only a few weeks old, so it was hard for me to be by mom's bedside. My mother was in NYU hospital. My husband and my father were always the last ones to leave my mom's bedside. He loved her like his own mother. He always reassured me that my mom would get through this and prayed for her, in which she did.

Michael has always been a strong-minded person. He didn't take the easy road out when he got to prison and just sat around and watched TV and got himself into trouble. He had a life sentence so he could have easily found trouble. Instead, he showed everyone he was better than the person who was accused of the crimes which placed him in prison. He read a lot and educated himself. He got his GED. He became a paralegal. He was a mentor to many of the men who served with him regarding their health issues – getting them on track to care for themselves, with exercise and a good diet. Taught them to be positive and self-worth. In addition, he studied religion and took many courses while in prison. He is very sincere to his faith. He has had a major religious transformation.

My husband through the years has always kept a positive outlook on life. Even when I had rough times in my life, he has taught me how to think positive for my daughter and for us. Through 31 years of my husband being incarcerated, I have never had to worry about him. He never complained or felt sorry for himself. He expressed how sorry he is for all the harm he caused others including his own family. He accepts full responsibility for his actions.

He also had a great relationship with my father, who just recently passed away in August. There wasn't a day that went by where he didn't call and speak to him. His conversation was always positive. My dad's only wish before he left this world was to see Michael come home to enjoy the rest of his life with his family. Unfortunately, he never had that opportunity, but Your Honor can grant this wish.

Michael has served over three decades in prison. I feel the time he has served is more than enough time to adequately punish any person. Especially in light of the fact of his exemplary conduct, as well as his work and educational history. He has been away from us for over 31 years now and he deserves another chance to live his life as an honest and productive person. We are all here to support him. He has a great support team willing and ready to do all we have to help him transition back into the world.
I truly feel from my heart that my husband would not be involved in any criminal conduct and jeopardize his freedom ever again. Three decades is a very long punishment under any measure. He has spent half of his life behind bars. That is very sad and although I committed no crime, I lived in limbo for all of these years waiting for Michael to be released. These new laws now make that possible. He certainly deserves a break. Our family deserves this break. Our daughter has never spent any alone time with him and our families.

I truly believe that 31 years of imprisonment is more than sufficient punishment for my husband. As one federal judge in New York just stated "A most serious crime, Nevertheless, almost "30 years in prison is a long time behind bars by any measure for anyone." And that is true.

Michael has missed many birthdays and holidays with our family. This affects all of us in different ways. Michael loves his family very dearly. He is a kind, generous and a loving man, and we miss him terribly. All our Aunts and Uncles on both sides of the family love him and appreciate how he loved and respected them.

If Michael wasn't all of these things and more, I would have moved on years ago. My faith and love for God and Michael, and the person he is, keeps me praying for him. The Courts do not take this into account when sentencing an inmate. I ask Your Honor, to look at the man he is today and not the person he was over 31 years ago. He lost his twin brother; he lost his father; my father and mother. He has never been able to mourn the loss of his loved ones. It is very hard on him to not be able to properly mourn for those he lost and loved. Michael called my father everyday till the day he passed just to lift his spirits and check on him.

Please consider granting him the opportunity to spend time with his family and to see his beautiful daughter again. Allow him the chance to walk her down the aisle, be present and involved with his future grandchildren and be there for his family. Please do not leave him in prison to die. He certainly has proven he is ready to be released to society. Let him come home and put the skills he's learned to good use.

Thank you for your time and consideration. Please review his request for compassionate release and look at the man he is today. Do not leave him behind to die in prison.

Sincerely,

*Linda Sessa*

Linda Sessa

# EXHIBIT 4

3/26/2022

Chambers of
Honorable Allyne R. Ross
United States Courthouse
225 Cadman Plaza East
Brooklyn, NY 11201

Honorable Judge Allyne R. Ross,

As I have become aware of the impending hearing on the release of Michael Sessa, I Jennie Bruzzese-Coluccio felt compelled to write you on his behalf. It has been a long time since Michael, and I have spoken. This has been because I have moved several times and had changed my phone number through one of those moves. Just recently Michael and I are in touch again. I consider Michael to be a friend, a friend to my husband Anthony Coluccio and a friend to myself. Michael and my husband we're close. Anthony had asked Michael to be the Godfather for our son's baptism. Anthony also wanted his second son to be named after Michael. A wish I followed through on after my husband's passing. After the untimely passing of my husband Anthony, Michael called me frequently before he was convicted and went to prison. He assisted my sons and myself for the time he was around, and always asked if we needed anything. In all the time I've known him Michael has always been a great guy, the opposite of his brother Carmine. Which is why we kept in touch before Michael went away. After he went away, I even visited him in prison.

I feel Michael is in prison for crimes committed and ordered by his brother Carmine Sessa. I never cared for Carmine, and I expressed that opinion to my husband when he was alive. It does not seem fair to me that Carmine Sessa has gone virtually unpunished for his multiple crimes. While Michael has spent over 30 years in prison, he paid dearly for his crimes, and it seems like the sentence is excessive. I also know for a fact that government witness Carmine Imbriale lied when he stated that there was a meeting with Michael, himself and I. There was no such meeting. The witness stated we met at my father's house on 66th street, with my daughter present and pleaded "don't hurt my husband". There are many discrepancies with Mr. Imbriales account. Starting with the fact that I never met Carmine Imbriale, my father did not live on 66th street, I do not have a daughter and this meeting never took place. Obviously, Mr. Imbriale, did not know me either, which is why his story was completely fabricated. If I knew about this earlier, I would have testified to this at Michael's trial in 1992. And I stated this to Michael's attorneys many years ago (I believe it was 1997).

I also know that I am a mother who has had to care for her sons with neither the support nor presence of my deceased husband. I know the pain my sons have suffered without their father. Our children have been the biggest victims growing up without their fathers. I feel for mine, as well as Michael's daughter Tara who has never spent a single day with her father. I hope my letter can be instrumental in helping Michael get the opportunity to be released and go home to his family. He does not belong in prison for 30 years. I am praying that Michael gets to go home. Your honor I entreat you to release Michael to return home to his family.

Sincerely,

*Jennie Bruzzese-Coluccio*

Jennie Bruzzese-Coluccio
1390 Broad Street
Bloomfield NJ 07003

STATE OF N.Y
COUNTY OF RICHMOND

Sworn to (or affirmed) and subscribed before me this
27 day of ____ 20__ by Jennie Bruzzese-Coluccio

_____      _____
Notary Public Signature      Notary Name

SUZANN P RIZZO
Notary Public - State of New York
NO. 01RI6404491
Qualified in Richmond County
My Commission Expires Feb 24, 2024

# EXHIBIT 5



*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: **SESSA, MICHAEL A**    **25870 004**    **H-210**    **FCI LEWISBURG**
      LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

**Part A- INMATE REQUEST**

I'm requesting Compassionate Release pursuant to 18 U.S.C.
3582 (c)(3)(A) and Amendment 814 in accordance with, P.S.
5050.50 for the following reasons:
1. I am serving an unusually long sentence and my sentence would be
lower if I were sentenced today.
2. I'm at imminent risk of an ongoing infectious disease due to my underly
medical conditions (prediabetic hypertension, heart disease, high cholesterol, age).
3. I am 65 years of age and have served more than 10 years. Over 32 years now.
4. My extraordinary Rehabilitation.
5. Other reasons: Harshness of incarceration during pandemic, disparity in
sentence 3553(a) factors favor my release. If Granted Compassionate Release
I would reside with my wife Linda Sessa in New Jersey. My family will help
me with employment and support. Thank You for Your consideration.

**8-14-24**    *Michael Sessa*
DATE    SIGNATURE OF REQUESTER

**Part B- RESPONSE**

## RECEIVED

### AUG 15 2024

### ADMIN REMEDY CLERK
### USP LEWISBURG

_____    _____
DATE    WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**    CASE NUMBER: **1209205-F1**

CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____
          LAST NAME, FIRST, MIDDLE INITIAL    REG. NO.    UNIT    INSTITUTION

SUBJECT: _____

_____    _____
DATE    RECIPIENT'S SIGNATURE (STAFF MEMBER)    BP-229(13)

# EXHIBIT 6

# EXHIBIT 7

# EXHIBIT 8

Susan Spagnuolo
12 Crest Drive
Colts Neck, New Jersey 07722
718-809-1408

July 1, 2023

The Honorable Allyne R. Ross
U.S. District Court Judge
U.S. District for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

RE:    Michael Sessa ID. No. 95870-004

Dear Honorable Judge Ross,

I write this letter to show you the type of person my brother-in-law Michael really is, not what you
would read in an indictment or hear during his case.

I met Michael approximately 40 years ago. Over the 40 years, he has been incarcerated for 31
of them. During his time while dating my sister he was very involved with our family. He was
always at the family gatherings and very respectful. After Michael married my sister, we all
spent every weekend down the Jersey shore at my parent's house. We all got to really know
one another. We had a lot of good memories. He was a really nice guy. He always went out of
his way for everyone.

I do speak to him often. He calls and speaks to my sister and daughter. Over the past 31 years
our relationship has been mostly via telephone. Since COVID appeared these calls have been
very limited. It seems that the prisons have been on lock down for months on end for the past 4
years. It certainly has been hard on all of us, especially at Mike's age to be confined to a cell for
years now. It's just not good for him. And then to catch COVID numerous times. We are lucky
he is alive.

My feelings for my brother-in-law are nothing less than a brother to me and a great uncle to my
children. I could talk to Michael about anything as he is very inspiring and optimistic about life. I
have a lot of respect for him as he keeps the faith; without that you have nothing. I miss him
dearly.

One of his most important characteristics is how he helps and cares for others. He would give
you the shirt off of his back. My children speak with him often. He's always concerned for their
well-being and stresses the importance of them to do good in school and not to get into any
trouble. I was widowed when my children were 8 and 10 years of age. Michael was very
inspirational to them. They both love him very much as they feel the love from him. My parents
loved him dearly and considered him a son.

As I mentioned earlier, all of my memories of Michael were all happy ones spent weekends with
my parents at Mystic Island on the canal. Michael always made it fun for the kids. One night we
watched a scary movie and he came to the back window in a monster mask and scared all of
the kids. It was so funny. He would bring bags of snacks for everyone. Our ride down to the

shore was fun and we talked for hours with no radio. He was very down-to-earth and always lent an open ear while giving the best advice. His positive traits are being optimistic; keeping the faith; never giving up hope; loving his family, and caring for all.

I remember in the beginning when Michael went away, he was very bitter. Over the years he's changed a lot – he educated himself in many ways and now views life in a more positive way. He's very helpful to all of us when we need advice and to look at things in a different manner. He appreciates life more now than ever and we all hope for the day he can be with us together again as a family, eating, laughing, and spending time with his wife and daughter.

Michael during his time away has always been uplifting whenever I speak to him and teaches us to not take anything we have for granted. He emphasizes that we need to be very thankful for all we have. We all have continuously prayed for decades that one day he will be with us again. He is truly missed.

Honorable Judge Ross, my brother-in-law has been away for 31 years now. That is over 3 decades and has certainly changed his life around. He clearly has expressed his remorse and is sorry for all of the wrongdoing he was involved in. He has maintained good conduct and clearly stays out of trouble. He was chosen to remain at the prison when it became an FCI. The staff know he is a very good mentor or he would have been transferred to another penitentiary with the other hundreds of inmates. He has proven he is ready to reenter society and be a law abiding citizen. He deserves to be given another chance and come home to live his life with his family. Michael does not deserve to die in prison.

 He is not in the greatest state of health. I am also concerned with the coronavirus and how it's deadly to people that are not so healthy and trapped in the prison system. Please consider all we have written about Michael and allow him to come home to his family. We are all here to provide what is necessary to help him transition back into society and his life with us.

Thank you for your time.

Sincerely yours,

*Susan Spagnuolo*

Susan Spagnuolo

# EXHIBIT 9

Amanda Spagnuolo
20 Willow Drive, Apt 1B
Ocean, New Jersey 07712
4/28/2020

The Honorable Allyne R. Ross
U.S. District Court Judge
U.S. District for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

RE:    Michael Sessa #95870004

Dear Honorable Judge Ross:

This letter is to request an early release for my uncle, Michael Sessa.

I am Michael's niece, Amanda. My uncle has been a big part of my life for almost 30 years, 28 of which he has been away from his family. I remember as a child going to visit my uncle with my aunt and cousin, Tara. Tara and I truly looked forward to these trips as children. Growing up without a father is probably one of the hardest things I have done in my life as I lost mine when I was a young girl; Tara, Michael's daughter, deserves a chance to have him present in her life, as much I want him home in my life.

Something you should know about my uncle, Michael Sessa, is that for 28 years, he has NEVER missed one birthday wish or holiday "I love you". He never wants you to ask about how he is or worry about his well-being. He just wants to always make sure we are happy and staying healthy. He is always so full of advice and information; I truly believe his time served has made him even wiser than I imagine he was before his incarceration. My uncle, Michael, is one of the biggest reasons I pursued a college education in Criminal Justice. Any time we spoke, we would talk about what I've learned, what he has studied while away and how the system works, etc. He always encouraged me to keep studying and learning all that I can.

I never asked any questions about my uncle's case or why he was away because I know in my heart, he is a great man, a loving father, husband, uncle and family man. This coming Fall 2020, I will be expecting my first child. I hope and pray for nothing more to have my uncle, who is a father-figure to me to be home to be there for the birth of my first child. Being pregnant during

Honorable Judge Ross
4/28/2020
Page 2

this COVID-19 pandemic has been very difficult for me. You cannot imagine the fear in my heart for my uncle, Michael, during these times as he has been having health problems over the past few years and is part of the high-risk population, especially within the prison systems that are known to be overcrowded.

With that being said, I know in my heart my uncle has sufficiently served his time within the Criminal Justice system, is extremely remorseful and takes full accountability for his actions. I truly hope you can find it in your heart to help my uncle to come home to us, his family and my soon-to-be little one. On behalf of Michael's whole family, we would be forever grateful to have him back in our lives.

Sincerely,

*Amanda Spagnuolo*

Amanda Spagnuolo

# EXHIBIT 10

Susan Tellier
P.O. Box 11222
Richmond VA 23230
April 18, 2020

The Honorable Allyne R. Ross
U.S. District Court Judge
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

My name is Susan Tellier. I am writing this letter on behalf of Michael Sessa, who has submitted a request for compassionate release or a modification of his sentence

I would like to tell you about myself. I am 48 years old. Although I grew up in Astoria New York, I have lived in Richmond Virginia for the last 33 years. I have a bachelor's degree in Criminal Justice. For the last four years, I have worked at the Virginia Department of Health as a disease investigator. Prior to that, I spent 15 years as a Care Coordinator for a non-profit health clinic here in Richmond Virginia. My volunteer experience includes mediation for the Restorative Justice Project of Richmond. I have also been facilitating health classes, throughout prisons in the state of Virginia, for 20 years. I am a proud Court Appointed Special Advocate, a volunteer position that I have held for the last 22 years. I am a mother to a 25-year-old daughter, who graduated from college and currently works and lives successfully in Washington DC.

Now that you have some background about me, let me talk about my friend Michael.
I met Michael through one of my family members over a decade ago. I have always considered myself a good judge of character. I am a suspicious person and always like to verify and proceed with caution. Perhaps this is due to my street smarts, education and work experience. Our friendship began via email and phone calls and I became a support system for him. This is not a task that I take on for just anyone. I was, and continue to be, impressed with Michael's honesty, wit and intelligence. I have found him to be a caring and insightful man. I enjoy his honesty, kindness and great sense of humor. Michael is a genuine gentleman who cares about his family and friends. Michael is a great example of a family man. He genuinely cares about his family. Most important to me, Michael is a man of his word.

Over the years of communication, Michael would turn out to be a strong support system for me as well. Our talks continuously provided me with inspiration, insight and guidance. I have a lot of love and respect for this man. I have benefited greatly from our friendship.

Michael maintains a positive and progressive attitude despite his incarceration for almost 30 years. One would think he would be bitter and angry but he is not. Michael continues to have a positive attitude. Michael serves a role model to other offenders, especially those coming into the system. Guiding them with his perspective on life. Michael uses his own life experiences and

mistakes to guide other offenders as they contemplate their own journeys. Michael believes that people do have redeemable qualities, even those in prison.

Our prisons are saturated with people who deny responsibility. Michael is aware that his lifestyle decades ago had a devastating impact on individuals, the community and his own family. He regrets these choices. If given the opportunity he would love to make up for some it by being a contributor to society.

As you can see by his birthdate, Michael is no "spring chicken". Frankly, most of the cohorts with whom he committed crimes with are now dead. Those facts compounded with the recidivism rate for elder offenders being less than 4% put the likelihood of Michael returning to the life of crime at zero. I know it is zero because he has sacrificed most of his life due to his bad decisions in his younger years. He is not the same person he was, almost 30 years ago, when he received his prison sentence. He is certainly more mature and focused on life, community, family and fulfilling goals.

Michael has been in some of the most dangerous places known to man, a United States Prison! As you know, these facilities are saturated with crime, drugs, violence and gangs. Michael has consistently distanced himself from all of these activities. I can imagine how difficult that must have been in an environment where many must forge an alliance with men who have nothing to live for and act accordingly. Despite his exposure to such elements, Michael has a clean disciplinary record. Michael has not been a problem for the Federal Bureau of Prisons. In fact, over the years, I have known him to help squash problems between other inmates and to assist in maintaining peace and order. Michael practices good common sense. Michael is a natural leader. I hope that someday society can benefit from Michael's leadership skills. I would certainly want him on my team!

Being locked away for almost three decades, Michael has missed out on raising his children and participating in their lives. In addition, Michael has lost more family members than I can count. His parents, siblings and cousins have all died over the last 30 years. Michael was denied the comfort of receiving any type of closure for those losses.

Michael has tremendous support from family and friends. We are all invested in his success. We know that, when given the chance, Michael will be an asset to society. I realize that you have a major responsibility to balance out the needs of society and giving a convicted felon a second chance. I ask that you carefully consider all of the factors that family and friends have brought to your attention.

Thank you for your time, attention and consideration.

Sincerely,


Susan Tellier

# EXHIBIT 11

Lilly Sessa
81 Tanglewood Dr.
Staten Island, NY 10308

In Support of **Michael Sessa 95870004**

24th April 2020

**The Honorable Allyne R. Ross**
U.S. District Court Judge
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Your Honor:

My Name is Lilly Sessa, I am the Niece of Michael Sessa 95870004. I am writing to you today in regards to the U.S.C 3553(a) Factors: Because I strongly believe My Uncle has served his time and deserves to finally be home with his Family and loved ones. I am well aware of the case and sentence of 28 years.

After all the time Michael Sessa has spent in prison he has reformed to a new human with much compassion, love, intelligence and respect. He did previously have all these characteristics, but it has intensified in great lengths. Even throughout my 36 years of life I never lost contact with My Uncle, he is an encouraging voice, a truth teller, and always available for advice. I deal with an Anxiety Disorder and My Uncle Michael has always been supportive and very wise when it comes to his avid reading and guided meditation.

My only wish for him now is that he can get the medical care he so needs and deserves. I wish this Man who has served sufficient enough of time to be free and have his sentence reduced to time served, as he has fully accepted all responsibility and has repented so for the past 28 years.

Please with your whole heart have a look into how much time served and his changed ways have proved no better candidate to be released. There will be no further criminal conduct from Michael Sessa, I can assure and attest to this. My Uncle Michael only longs to be with his family and to be an upstanding citizen.

Sincerely,

**Lilly Sessa**

# EXHIBIT 12

Distinguished Judge,

I am writing in regards to the resentencing hearing for one Michael Sessa. I wish to express my views to find Michael in good faith of his responsibility to himself, community, and his debt paid to society. In expressing these views, I hope you will find Michael has earned his place back in society to be a productive member and provide value to this great nation.

I first met Michael seven years ago, being placed on my first day of work in his assigned housing unit. Being new and placed into a daunting situation as such, I was somewhat overwhelmed by the gravity of the circumstances. Michael knowing that I was new, was the first person to offer help and provide direction to ensure the orderly running of the housing unit. I feel, without his guidance I would have been "lost" more than I was already was. Michael has been known to offer assistance to other officers when they have also needed a little guidance to get by with their day of work.

Michael has always maintained an honorable presence among staff and other inmates. He has been sought out and has consoled others in their times of greatest need, such as the loss of a family member. Michael would drop whatever he was doing, just to ensure that person had comfort from someone that was willing to talk to them and guide them through a difficult situation. I have personally witnessed this happen on several occasions over the years I have worked. For a man to put others needs before his own, is a man that takes value in life itself.

Michael and I have discussed various issues ranging from religion, life in general, and various other events over the years. I have noticed that Michael has always looked to the greater good of man when reviewing any one given event. He always believes that there is goodness and wholesomeness within people. This is a sign of a man that has taken responsibility and believes that he can provide society with a positive presence among his peers.

In concluding, I hope you as the judge will find Michael has earned his place back into society and give him the opportunity to spend his remaining years with his family that he loves and misses. Michael, in my opinion has paid his debt and deserves the right to walk amongst his peers once again. I can see only see a positive and productive outcome to Michael being placed back in to society and no circumstance where it would not be. I thank you for allowing me to write to you and may you find it in your soul to give this man solace.

Respectfully,

Senior Officer Specialist

Timothy A. Badman

# EXHIBIT 13

*****************************SENSITIVE BUT UNCLASSIFIED*****************************

Administrative Note

Psychology Services

Name: Michael Sessa

Register #: 95870-004

Date: November 2, 2022

To Whom it May Concern:

Mr. Michael Sessa (#95870-004) has been an asset to USP Lewisburg as evidenced by his role in the Cadre program at USP Lewisburg. During this time he remained diligent in ensuring the institutional needs were met while participating in programming to assist in altering his thoughts and behaviors. He was diligent in ensuring his programming needs were met, most specifically focusing on reducing criminal thinking and building strength through our men of influence program. During the mission changes which occurred over the last several years, he adapted his thinking and assisted those who were temporary housed at USP Lewisburg through role modeling. His positive attributes guided others toward change and growth. As evidenced by his commitment to his role as a Cadre, it is clear Mr. Sessa will maintain a strong level of dedication toward his continued growth.

Completed By: A. Brockman, Psy.D., RU Psychologist

**EXHIBIT 14**



**U.S. Department of Justice**
Federal Bureau of Prisons

*United States Penitentiary*
*2400 Robert F. Miller Drive*
*Lewisburg, PA 17837*

January 23, 2023

MEMORANDUM FOR ALL CONCERNED

FROM:          B. Carney, Supervisory Chaplain

SUBJECT:       Michael Sessa #95870-004

Michael Sessa #95870-004 attends Catholic worship services on a
weekly basis in the Chapel. He routinely interacts with the
Chaplains to post notices for upcoming services. He assists the
priest in preparing the altar for worship. He has encouraged
other inmates to attend services and special events, such as
showings of the series, "The Chosen."

**EXHIBIT 15**



**U.S. Department of Justice**
Federal Bureau of Prisons

*United States Penitentiary*
*2400 Robert F. Miller Drive*
*Lewisburg, PA   17837*

March 16, 2023

MEMORANDUM FOR ALL CONCERNED

FROM:            J. Wallace, Chaplain

SUBJECT:         Michael Sessa #95870-004

Michael Sessa #95870-004 attends Catholic worship services on a
weekly basis in the Chapel. He routinely interacts with the
Chaplains to post notices for upcoming services. He assists the
priest in preparing the altar for worship. He has encouraged
other inmates to attend services and special events, such as
showings of the series, "The Chosen." Recently he has been a
participant in a new volunteer led bible study for the inmate
population.



**U.S. Department of Justice**

Federal Bureau of Prisons
*United States Penitentiary*
*2400 Robert F. Miller Drive*
*P. O. Box 1000*
*Lewisburg, PA 17837*

October 06, 2021


MEMORANDUM FOR: H-Block Unit Team

FROM:          J. George, S.O.S

SUBJECT:   Inmate Michael Sessa #95870-004


I write to testify of Mr. Sessa's steady and never wavering
moral character and I believe that he is no longer a threat to
society but an asset to society.  I have known Mr. Sessa for the
last ten years while working at USP Lewisburg as a Correctional
Officer with a pretty good judge of character.  I've always been
able to look to Mr. Sessa to serve as the finest example of a
model inmate and mentor for so many other inmates.  I truly
believe that if Mr. Sessa was released tomorrow back into
society he would continue to be a model citizen and work to
deter others from following in his past footsteps.  As I have
seen thousands of inmates come through the gates of USP
Lewisburg over the years.  Mr. Sessa has been the only
rehabilitated inmate that I've seen ready for release back into
society.  I'm a US Military Veteran that would be glad to have
Mr. Sessa as a neighbor.  He has definitely made a positive
impact on many lives.


In the last 18 months, I've seen many inmates freed on
compassionate release, reduction in sentence motions.  Many with
life sentences and not one of them were as worthy of release as
inmate Michael Sessa who has served 30 years in prison as a
model inmate, who continues to mentor many inmates.  It's
disheartening to see Unequal Justice Under The Law.  I
wholeheartedly believe Mr. Sessa will be an asset to society and
needs to be freed. Again, I would be happy to have him as my
neighbor.

 Gmail                    Cesar de Castro <cdecastro@cdecastrolaw.com>

## Fwd: Inmate Sessa's moral character
1 message

**Greg Shuck** <gshuck@bop.gov>                          Tue, Jun 23, 2020 at 1:44 PM
To: cdecastro@cdecastrolaw.com


I write to testify of Mr. Sessa's steady and never wavering moral character and I believe that he is no longer a threat to society but an asset to society. I have know Mr. Sessa for the last ten years while working at USP Lewisburg as a Correctional Officer with a pretty good judge of character. I've always been able to look to Mr. Sessa to serve as the finest example of a model inmate and mentor for so many other inmates. I truly believe that if Mr. Sessa was released tomorrow back into society he would continue to be a model citizen and work to deter others from following in his past footsteps. As I have seen thousands of inmates come through the gates of USP Lewisburg over the years. Mr. Sessa has been the only rehabilitated inmate that I've seen ready for release back into society. I'm a US Military Veteran that would be glad to have Mr. Sessa as a neighbor. He has definitely made a positive impact on many lives.


Jared Georges

Tara Sessa
11 Lake Singleton Court
Little Egg Harbor, New Jersey 08087
609-618-1589

July 1, 2023

The Honorable Allyne R. Ross
U.S. District Court Judge
U.S. District for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

RE:   Compassionate Release Letter
      Regarding Michael Sessa

Dear Honorable Judge Ross,

I am writing to you regarding my father Michael Sessa who has a motion for a reduction of sentence pending before you.

I'm now 31 years old.  My father has been incarcerated since I was 5 months old. I have never been able to spend any holidays/birthdays or special family events with my father. My father has missed out on many opportunities that are essential for a father/daughter relationship.  He was never able to bring me to my first day of school or any other important events. In those school days I would see all of the other children with their fathers at school events, holidays and birthdays. I remember when I was much younger all I would wish for Christmas was for my father to come home.  Now you can make that wish come true.

Our complete relationship up to this letter has been consistently held together through numerous daily phone calls and visits when available. Not a phone call goes by where my Dad doesn't tell me how much he loves me. Throughout my childhood I remember visiting him very often. I have never viewed my father differently due to him being incarcerated, I have always known him to be kind and loving. Even with all of his problems and being locked away he has always been as good of a father as he could be.

My father does not hide from his past.  He has shown me a lot of remorse and expressed on many occasions how sorry he was for his past actions. He takes the blame for these decades in which I have grown up without him physically in my life. Still, I've grown to know and love the type of person that he is. He has done his best to remain an exceptional father even though he is incarcerated. He is kind, loving, and cares more about others than he does himself. I have the highest respect for him.

He has continuously stressed the importance to me of education, family and hard work.  I have learned a lot from our conversations over these many years. I have picked up a lot of my father's good traits. My mother and family have also taught me a lot about the good person that he is.

In the past I have struggled with severe acid reflux, I would get very sick and not be able to eat certain foods. When I told my father that I wasn't feeling well he researched remedies I could do

at home to help heal my acid reflux. I listened to his advice and stood away from certain foods that activated it and took home remedies which helped heal my acid reflux over time. No matter what the situation, my father was always the type to help me in any way he can even while being away.

My father does regret the actions of his past life. And although he committed some bad acts, I believe everyone deserves a second chance. He has certainly earned a second chance. He has turned his life around over these many years incarcerated. He studied very hard while away and took many courses including some in religion and law. He earned his paralegal degree. He never felt sorry for himself or blamed others. He did not sit around and watch tv or play cards. He studied and prepared to better himself in hopes that one day he would come home and put his knowledge to good use.

Even while my father has been incarcerated for over 3 decades, he has still managed to keep a positive mindset and avoid trouble which is a major task while being confined in some of the most violent prisons in the country. He also lived under some terrible conditions. Especially in the past 4 years while COVID-19 was running rapidly through the prisons. Even while COVID risked the lives of everyone, he seemed to always be more concerned about his family. I worry for my father's health due to COVID because he has some serious health problems and is in the bracket amongst those who can become very ill. One can only imagine the horrors of being locked in a cell during a pandemic and hearing on the radio how millions of people around the world were dying. Many in the prison systems throughout the country have died as well. I am sure it takes a toll on every prisoner. These years were very hard on all of us. Yet, my father managed to stay positive and avoid problems. He is the most inspirational person that I know. And I look up to him because of that. He has taught me to always keep a positive mindset and not think negatively. He influenced me to do good in school and college.

My only memories of my father, besides photos of us together when I was a baby, all involve him being incarcerated. I have never been able to spend time with my father in the world. My whole life I have been unable to share experiences with him. All we have are 31 years of memories shared over the phone or in a visiting room. We've never had dinner together in a restaurant. These very simple things that people do every day would mean so much to me if my father was released.

Please consider all that I and others have written about my father. Please seriously consider reducing his sentence so I can have whatever years he has left to enjoy with him and make some future memories together. I'm attaching the last photo I have with my dad before he was incarcerated when I was only 4 months old.

I feel that 31 years of imprisonment is not only a very long period of time but is more than sufficient punishment. My father is remorseful for his actions and takes accountability. I truly feel from my heart that my dad would never invite the idea of any future criminal action after seeing what it has cost him and our family.

Thirty-one years of not having my father present in my life feels like an eternity, one can only imagine what thirty-one years of incarceration feels like to my father. It feels like a lifetime, I am sure. You can now allow him to come home and make up for all that lost time he's missed in each of our lives.

Tara Sessa
11 Lake Singleton Court
Little Egg Harbor, New Jersey 08087
609-618-1589

July 1, 2023

The Honorable Allyne R. Ross
U.S. District Court Judge
U.S. District for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

RE:   Compassionate Release Letter
       Regarding Michael Sessa

Dear Honorable Judge Ross,

I am writing to you regarding my father Michael Sessa who has a motion for a reduction of
sentence pending before you.

I'm now 31 years old.  My father has been incarcerated since I was 5 months old. I have never
been able to spend any holidays/birthdays or special family events with my father. My father has
missed out on many opportunities that are essential for a father/daughter relationship.  He was
never able to bring me to my first day of school or any other important events. In those school
days I would see all of the other children with their fathers at school events, holidays and
birthdays. I remember when I was much younger all I would wish for Christmas was for my
father to come home.  Now you can make that wish come true.

Our complete relationship up to this letter has been consistently held together through
numerous daily phone calls and visits when available. Not a phone call goes by where my Dad
doesn't tell me how much he loves me. Throughout my childhood I remember visiting him very
often. I have never viewed my father differently due to him being incarcerated, I have always
known him to be kind and loving. Even with all of his problems and being locked away he has
always been as good of a father as he could be.

My father does not hide from his past.  He has shown me a lot of remorse and expressed on
many occasions how sorry he was for his past actions. He takes the blame for these decades in
which I have grown up without him physically in my life. Still, I've grown to know and love the
type of person that he is. He has done his best to remain an exceptional father even though he
is incarcerated. He is kind, loving, and cares more about others than he does himself. I have the
highest respect for him.

He has continuously stressed the importance to me of education, family and hard work.  I have
learned a lot from our conversations over these many years. I have picked up a lot of my
father's good traits. My mother and family have also taught me a lot about the good person that
he is.

In the past I have struggled with severe acid reflux, I would get very sick and not be able to eat
certain foods. When I told my father that I wasn't feeling well he researched remedies I could do

Linda Sessa
11 Lake Singleton Court
Little Egg Harbor, New Jersey 08087
609-618-1145

July 1, 2023

The Honorable Allyne R. Ross
U.S. District Court Judge
U.S. District for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

RE:   Michael Sessa #95870004

Dear Honorable Judge Ross,

My name is Linda Sessa. I am writing this letter in regards to my husband Michael Sessa.  He
currently has a motion for a sentence reduction pending before the Court. I am hoping you will
have time to read this letter when considering his motion for release and will shine light on the
person Michael is today and what he means to myself and many others in our community and
family.

I met Michael over 40 years ago when I was 17 years old. You can say it was love at first sight.
One of the reasons why I fell in love with my husband is the way he loved and respected his
family and my own.  We spent a lot of time down at my parent's house on the Jersey shore on
many weekends with my parents and siblings.  Everyone was able to see he was a very caring,
loving and giving man.  We dated for five years before we got married in Puerto Rico. My
father's uncle was a Navy Priest there and he also married my parents. It was an honor to have
him marry us. After we got married, we had many obstacles that wouldn't allow me to conceive
a child on my own. We decided to try Invitro fertilization and after one miscarriage, we finally
conceived. You can't imagine how excited we both were when our daughter, Tara Sessa, was
born.

Our daughter Tara was 5 months old when Michael self-surrendered. He had no criminal record
prior to this case. The lifetime sentence was devastating to me and our family. This was a slow
death sentence imposed on all of us. It is the worst feeling in the world to know that your
husband has been condemned to die in prison. I have been living with this torment for 31 years.
Now with over three years of COVID-19 and all of the stories I have read about prisoners dying
while incarcerated I constantly worry for Michael's well-being.

Over the 40 years of being married to my husband, he has spent ¾ incarcerated. Although he is
in custody for so long he continues to be the love of my life and my best friend. He is there to
support me when things aren't going so well. He gives me positive feedback to keep my spirit
up.  He is a good man.

The one thing I love the most about my husband is his optimism. He's always trying to have me
not worry about anything.  He is always there especially with our daughter for reassurance as to
if I'm making the right decisions in her well-being.  He's always been supportive of my

He deserves a chance to come home and walk me down the aisle one day, and he will be able to experience being a grandfather first hand. I know these are experiences he is looking forward to and wouldn't want him to miss out on these milestones in my life. Other courts have released others from the same case as my father. He deserves the same chance. My father does not deserve to die in prison.

Please consider all of these facts when you make your decision.

Thank you for your time.

Sincerely yours,

*Tara Sessa*

Tara Sessa



# EXHIBIT 16

*Save letter*

Dominic Maritato
11 Lake Singleton Ct
Little Egg Harbor, NJ 08087

January 5,2016

92CR351
ARR

Dear Judge Weinstein,

I'm writing to you on behalf of my Son-in-law, Michael Sessa. I am a Korean War
veteran and I am 87 years old. My daughter, Linda and granddaughter Tara live with me
and take care of me. Linda and Tara are Michael's wife and daughter. I witnessed the
heartache they have went through these last 24 years. Tara was 5 months old when her
father walked into prison. Linda just turned 30. I know if Michael did not go away, that
he and Linda would've had many more children. Tara would've had many brothers and
sisters and I many more grandchildren.

My loving wife Theresa passed away almost 9 years ago. She loved Michael like he was
her own son, as I do. Michael always called my wife Mom and I Dad. When I was about
to retire from American Airlines, we sold our home in Brooklyn and bought this home on
the water in New Jersey. Hurricane Sandy destroyed my home in 2012. We are still in the
process of rebuilding. For the last few years before I retired, my wife and I lived in
Michael and Linda's home in Brooklyn, so it would be an easy commute for me to JFK
airport. Michael was always kind, generous, and a gentlemen. We were proud to have
him as a son and I still am today.

I've seen and read what went on in Michael's case throughout the years. I've seen what
others were sentenced to in the same case. I've recently read what you sentenced a top Al

Qaeda terrorist to '22' years. My Son-in-law Michael has already served a '27' year sentence. Throughout the years, I've also read about the outrageous misconduct of the FBI agent who testified against Michael and him getting indicted for murders. I've read and seen what other defendants in the same case that you gave pleas to and were sentenced to a total of '17' years for over '20' murders. I've read how due process was violated in Michael's case and what the jury heard was not all of what the prosecution knew.

When I fought for this country, I fought for 'Justice for all'. I did not fight for- Justice for some or justice for those who you choose.

Michael's uncle, Michael- whom he was named after- was killed in the same Korean War. He fought for justice for all; he did not fight for justice for some or justice for only those you choose.

Michael's father who passed away 3 years ago, he fought and was wounded for this country in World War II. He fought for- Justice for all; he did not fight for- Justice for some or Justice for only those you choose.

We fought for this country, gave our lives, spilled our blood in battle for Justice for all... I believe you well know- Justice was not given to my Son-in-law Michael.

Amanda Spagnuolo
20 Willow Drive, Apt 1B
Ocean, New Jersey 07712
4/28/2020

The Honorable Allyne R. Ross
U.S. District Court Judge
U.S. District for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

RE:    Michael Sessa #95870004

Dear Honorable Judge Ross:

This letter is to request an early release for my uncle, Michael Sessa.

I am Michael's niece, Amanda. My uncle has been a big part of my life for almost 30 years, 28 of which he has been away from his family. I remember as a child going to visit my uncle with my aunt and cousin, Tara. Tara and I truly looked forward to these trips as children. Growing up without a father is probably one of the hardest things I have done in my life as I lost mine when I was a young girl; Tara, Michael's daughter, deserves a chance to have him present in her life, as much I want him home in my life.

Something you should know about my uncle, Michael Sessa, is that for 28 years, he has NEVER missed one birthday wish or holiday "I love you". He never wants you to ask about how he is or worry about his well-being. He just wants to always make sure we are happy and staying healthy. He is always so full of advice and information; I truly believe his time served has made him even wiser than I imagine he was before his incarceration. My uncle, Michael, is one of the biggest reasons I pursued a college education in Criminal Justice. Any time we spoke, we would talk about what I've learned, what he has studied while away and how the system works, etc. He always encouraged me to keep studying and learning all that I can.

I never asked any questions about my uncle's case or why he was away because I know in my heart, he is a great man, a loving father, husband, uncle and family man. This coming Fall 2020, I will be expecting my first child. I hope and pray for nothing more to have my uncle, who is a father-figure to me to be home to be there for the birth of my first child. Being pregnant during

Honorable Judge Ross
4/28/2020
Page 2

this COVID-19 pandemic has been very difficult for me. You cannot imagine the fear in my heart for my uncle, Michael, during these times as he has been having health problems over the past few years and is part of the high-risk population, especially within the prison systems that are known to be overcrowded.

With that being said, I know in my heart my uncle has sufficiently served his time within the Criminal Justice system, is extremely remorseful and takes full accountability for his actions. I truly hope you can find it in your heart to help my uncle to come home to us, his family and my soon-to-be little one. On behalf of Michael's whole family, we would be forever grateful to have him back in our lives.

Sincerely,

*Amanda Spagnuolo*

Amanda Spagnuolo

Susan Tellier
P.O. Box 11222
Richmond VA 23230
April 18, 2020

The Honorable Allyne R. Ross
U.S. District Court Judge
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

My name is Susan Tellier. I am writing this letter on behalf of Michael Sessa, who has
submitted a request for compassionate release or a modification of his sentence

I would like to tell you about myself. I am 48 years old. Although I grew up in Astoria New
York, I have lived in Richmond Virginia for the last 33 years. I have a bachelor's degree in
Criminal Justice. For the last four years, I have worked at the Virginia Department of Health as
a disease investigator. Prior to that, I spent 15 years as a Care Coordinator for a non-profit health
clinic here in Richmond Virginia. My volunteer experience includes mediation for the
Restorative Justice Project of Richmond. I have also been facilitating health classes, throughout
prisons in the state of Virginia, for 20 years. I am a proud Court Appointed Special Advocate, a
volunteer position that I have held for the last 22 years. I am a mother to a 25-year-old
daughter, who graduated from college and currently works and lives successfully in Washington
DC.

Now that you have some background about me, let me talk about my friend Michael.
I met Michael through one of my family members over a decade ago. I have always considered
myself a good judge of character. I am a suspicious person and always like to verify and proceed
with caution. Perhaps this is due to my street smarts, education and work experience. Our
friendship began via email and phone calls and I became a support system for him. This is not a
task that I take on for just anyone. I was, and continue to be, impressed with Michael's honesty,
wit and intelligence. I have found him to be a caring and insightful man. I enjoy his honesty,
kindness and great sense of humor. Michael is a genuine gentleman who cares about his family
and friends. Michael is a great example of a family man. He genuinely cares about his family.
Most important to me, Michael is a man of his word.

Over the years of communication, Michael would turn out to be a strong support system for me
as well. Our talks continuously provided me with inspiration, insight and guidance. I have a lot
of love and respect for this man. I have benefited greatly from our friendship.

Michael maintains a positive and progressive attitude despite incarceration for almost 30 years.
One would think he would be bitter and angry but he is not. Michael continues to have a positive
attitude. Michael serves a role model to other offenders, especially those coming into the
system. Guiding them with his perspective on life. Michael uses his own life experiences and

mistakes to guide other offenders as they contemplate their own journeys. Michael believes that people do have redeemable qualities, even those in prison.

Our prisons are saturated with people who deny responsibility. Michael is aware that his lifestyle decades ago had a devastating impact on individuals, the community and his own family. He regrets these choices. If given the opportunity he would love to make up for some it by being a contributor to society.

As you can see by his birthdate, Michael is no "spring chicken". Frankly, most of the cohorts with whom he committed crimes with are now dead. Those facts compounded with the recidivism rate for elder offenders being less than 4% put the likelihood of Michael returning to the life of crime at zero. I know it is zero because he has sacrificed most of his life due to his bad decisions in his younger years. He is not the same person he was, almost 30 years ago, when he received his prison sentence. He is certainly more mature and focused on life, community, family and fulfilling goals.

Michael has been in some of the most dangerous places known to man, a United States Prison! As you know, these facilities are saturated with crime, drugs, violence and gangs. Michael has consistently distanced himself from all of these activities. I can imagine how difficult that must have been in an environment where many must forge an alliance with men who have nothing to live for and act accordingly. Despite his exposure to such elements, Michael has a clean disciplinary record. Michael has not been a problem for the Federal Bureau of Prisons. In fact, over the years, I have known him to help squash problems between other inmates and to assist in maintaining peace and order. Michael practices good common sense. Michael is a natural leader. I hope that someday society can benefit from Michael's leadership skills. I would certainly want him on my team!

Being locked away for almost three decades, Michael has missed out on raising his children and participating in their lives. In addition, Michael has lost more family members than I can count. His parents, siblings and cousins have all died over the last 30 years. Michael was denied the comfort of receiving any type of closure for those losses.

Michael has tremendous support from family and friends. We are all invested in his success. We know that, when given the chance, Michael will be an asset to society. I realize that you have a major responsibility to balance out the needs of society and giving a convicted felon a second chance. I ask that you carefully consider all of the factors that family and friends have brought to your attention.

Thank you for your time, attention and consideration.

Sincerely,


Susan Tellier

Susan Spagnuolo
12 Crest Drive
Colts Neck, New Jersey 07722
718-809-1408

April 16, 2020

The Honorable Allyne R. Ross
U.S. District Court Judge
U.S. District for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

RE:   Michael Sessa #95870004

Dear Honorable Ross,

This letter is to request an early release for my brother in law Michael Sessa.

I met Michael approximately 40 years ago. Over the 40 years he has been gone for 28 of those years. During his time while dating my sister he was very involved with our family. Always at gatherings very respectful to my sister and our family. Upon him marrying my sister we all spent every weekend down the shore at my parent's house with lots of clean fun. A lot of good memories. We really didn't involve friends mostly family. I do speak to him when he calls to speak to my sister and daughter. Our relationship has been via telephone. And he stills calls me an old hag, even though he's months older than me. He makes me laugh.

My feelings for my brother in law is nothing less than a brother to me and a great uncle to my children. I have a lot of respect for him to put others before himself. I could talk to Michael about anything as he is very inspiring and optimistic about life. I have a lot of respect for him as he keeps the faith; without that you have nothing. I miss him dearly.

They always get on the phone with him and have conversations he's always caring for their well-being and doing good in school and don't get into any trouble. I was widowed when my children were 8 and 10 years of age. He was very inspirational to them. They both love him very much as they feel the love from him. My parents loved him dearly as he was more of a son to them than their own son.

My memories about Michael were all happy ones. How we spent weekends at my parents at Mystic Island, NJ. on the canal. The first time I drove to 2 hours with Michael we literally drove to 2 hours with absolutely no radio playing. I said that was a ride; all we did was talk and laugh. That weekend we stopped at ACME I waited in car and he literally came out with 4 bags full of snacks. When we got to the house everyone was in the family room watching a scary movie on TV. All of a sudden, we see something outside on the deck and it looked like a monster it scared the hell out of all of us. He literally wore a mask and came knocking on the door. This is an example how down to earth he was and enjoyed life with the family. His positive traits are being optimistic, keeping the faith and never giving up hope, loving his family and caring for all.

I remember in the beginning when Michael went away, he was very bitter. Over the years he's learned a lot -- he educated himself in many ways sees life in a more positive way. Very helpful to all of us when we need advice and to look at things in a different manner. He appreciates life more now than ever and hope for the day he can be with us eating, laughing, and spending time with his wife and daughter.

Michael during his time away has always been uplifting whenever I speak to him and teaches us to not take anything we have for granted. Be thankful for all we have and has faith that one day he will be with us again. He is truly missed.

Honorable Ross my brother in law has been away for 28 years and a good inmate. He is not in the greatest state of health. I am requesting from you to reduce his sentence to spend the rest of his remaining life with my sister, his daughter and the rest of our family and his. He served the best years of his life and we pray he can spend the remaining time of his life with us. I know this is the only things he prays for as do us.

I am also concerned with the coronavirus and how it's deadly to people that are not so healthy. Please consider this request and I pray for all of us.

Be Safe and anything you can do is greatly appreciated.

God Bless you and your family

Susan Spagnuolo

Anthony Pessa. In support of Michael Pessa  95870004

Honorable Allyne R. Ross

Your Honor

My name is Anthony Pessa. Michael Pessa is my
younger Brother. I am 68 years old. I am married
& have 4 children & 8 grandchildren. My brother
has been in prison 29 years. He is and always will
be one of the greatest men I have ever known.
He teaches my Children how to be good parents
and he is always there to give them support and love.
A few years ago our Dad passed away. he would
have been 102 years old. He was a World War II
veteran, and he truly Believed in the American way
all he wanted was to see his son Michael home
to his family. Unfortunately that did not
happen. We have been trying to get him home
for 29 years. That is a really strong sentence.
No one has a bad word to say about Michael
He is Kind Caring and loving. Our father
fought for USA with honor in WWII. Our mothers

Tommy Walker, III

SECOND CHANCE 4 R.E.A.L

P.O. BOX 514

Buffalo, N.Y. 14215-0514

Email: 2ndchance4r.e.a.l@gmail.com

Phone: 1-716-348-9861

The Honorable Allyne R. Ross

U.S. District Court Judge

Eastern District of New York                    April 15th, 2020

225 Cadman Plaza East

Brooklyn, N.Y. 11201

In Re: Character Reference for Michael Sessa

To: Honorable Allyne R. Ross:

     I am writing to express my support for inmate Michael Sessa, who is currently serving time at USP Lewisburg. I am the owner of Second Chance 4 R.E.A.L. which is a Certified Paralegal Service. I also work with other organization(s) to help Reform, Reeducate, and Reintegrate inmates (like Mr. Sessa) back into their position in society through the support of a full spectrum of services and treatment activities. I have known Mr. Sessa for about twenty (20) years through USP Lewisburg prison ministry and the Law Library where Mr. Sessa was an influential and positive mentor to many members.

     I honestly believe that Mr. Sessa should be pardoned as he has expressed intense regret for his transgressions. While working as the Senior Law Clerk at USP Lewisburg Law Library Mr. Sessa volunteered his services by assisting other inmates with legal work (legal Research Classes) and general tutoring (Adult Basic Literacy and GED). Mr. Sessa has been a pillar of strength to me as I had been going through an extremely difficult period in my life. As a result of Mr. Sessa's assistance I'm a free man today, running and operating my own business. Mr. Sessa has exemplified a very keen interest in giving back to society and in making a difference in the lives of those that he has helped. He has become a very valuable person to the men at USP Lewisburg and to the undersigned of this letter. The gratitude that I have for Mr. Sessa is beyond words.

Mr. Sessa has expressed remorse for what he has done and is fully accountable for the consequences of his actions. In the time that I have come to know him, the offense for which he is serving time just seems so out of character for the intelligent, articulate and humble person that I've come to know.

Mr. Sessa would be such a valuable asset to my organization/business and to the people that it serves. I would be honored to have him on board as a mentor and a valuable pillar to our society. I request that any and all consideration be given to Mr. Sessa in striving for his goals.

Sincerely Yours,

Tommy Walker III

Tara Sessa
11 Lake Singleton Court
Little Egg Harbor, New Jersey 08087
609-618-1589

April 18, 2020

The Honorable Allyne R. Ross
U.S. District Court Judge
U.S. District for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

RE:    Michael Sessa #95870004

Dear Honorable Ross,

This letter is to request release of my dad Michael Sessa.

I am Michael Sessa's daughter. I'm 28 years old and my father has been incarcerated since I was 5 months old. I have never been able to spend any holiday/birthdays with my father. Our relationship has been consistent phone calls everyday and visits. Not a phone call goes by where he doesn't tell me how much he loves me. Throughout my childhood I remember visiting him very often. I have never viewed my father differently due to him being incarcerated, I have always known him to be kind and loving. To be as good of a father as he can be while being away.

Although my father has been incarcerated, I still have grown to know and love the type of person that he is. He is kind and loving, cares more about others than he does himself. I have the highest respect for him and being able to father me under the circumstances.

A lot of my father's traits I have learned from hearing stories from my mother. She has always told me the kind of person that he was. As a husband, and through my grandparents I learned what a good son-in-law he was to them. They loved him very dearly.

In the past I have struggled with severe acid reflux, I would get very sick and not be able to eat certain foods. When I told my father that I wasn't feeling well he researched remedies I could do at home to help heal my acid reflux. I listened to his advice and stood away from certain foods that activated it and took at home remedies which helped heal my acid reflux over time. No matter what it is my father was always the type to help me in any way he can even while being away.

My father has turned his life sentence into a positive by doing a lot of research while he's been away. He's educated himself in law and has become a paralegal. He never felt sorry for himself and prepared for the day in which he could come home and use his learnings to better himself.

Even while my father has been incarcerated, he has still managed over the course of 28 years to keep a positive mind set and still be more concerned about his family even more than himself. He is the most inspirational person that I know. And I look up to him because of that. He has taught me to always keep a positive mindset and not think negatively.

I don't speak to my father about his case. His attitude is always very positive. He talks to me about old times in his life with family, or memories of his childhood. And he always tells me how much he loves and misses me.

Please consider reducing his time served as I have never been able to spend real time with my father. My whole life I haven't been able to share experiences with him good or bad, 28 years of memories over the phone no real time experiences and holidays, birthdays with him is gone. I am dearly requesting to consider reducing his sentence so I can have whatever years he has left for future memories together.

I feel after 28 years of imprisonment is sufficient punishment. My father is remorseful for his actions and takes accountability. I truly feel from my heart that my dad would never even invite the idea of any future criminal action after seeing what it has cost him.

All of those years is a lifetime he has missed out on his life. Please allow him to live out the rest of his life at home with his family to make up for all of the years he's missed in each of our lives. I worry for my father's health due to COVID-19 he has health problems and is in the bracket amongst those who can become very ill. My hope is that my father will be home to walk me down the aisle one day, and he will be able to experience being a grandfather at first hand. I know these are experiences he is looking forward to and wouldn't want to miss out on these milestones in my life.

Please find it in your heart to do anything you can for my father to be released home to his family. We will be able to create new memories together.

I will be truly grateful for anything you can do to have my dad in my life.

Sincerely,

Tara Sessa
Tara Sessa

Honorable Allyne R. Ross

U.S. District Court Judge

U.S. District Court for the Eastern District of New York

225 Cadman Plaza East

Brooklyn, New York 11201

April 16, 2020

To the Honorable Judge Allyne R. Ross,

I am Adeline Sessa, and I work in the business food industry in New York City. I am
contacting you about Michael Sessa. I am reaching out because Michael is my brother in
law and I know him for 39 years of my life. He is very special to my husband, myself
and my children.

Through the years of knowing Michael, he always acted as my family even before I
married his brother. We are family but once we met, Myself, My Husband, Michael and
his Wife Linda were best friends as well. When I got married and had my two children
it was Michael that was the first choice to be the godfather for my son. This shows the
type of man he is. During this time of him being incarcerated, he has always had a
positive outlook. He is very remorseful for his actions and I think that the last 29 years
he has been able to realize the path he had taken was not one he should have.

During his time in incarceration he took a negative situation, and made the best of it.
He continues to show that he is a great man that cares for others, even in there. While
he has been incarcerated, he completed his courses in order to receive his GED, and
even furthered his education. He constantly is reading and educating himself. He even
turned to religion to help him have faith to make him an upstanding citizen.

During this hard time and the last 28 years, I think that he has served a just sentence
and that he has shown that during that time, constantly showing good behavior

I want you to know that he is an upstanding citizen. I hope you consider this
information in regards to my brother in law, Michael Sessa. I want to thank you for
your time and consideration!

Sincerely,
Adeline Sessa

397C Hystrix Plaza
Monroe Township, N.J. 08831
May 7, 2020


The Honorable Allyne R. Ross
U.S. District Court Judge
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Dear Judge Ross:

I am writing this letter to ask for leniency in the release of Michael Sessa.

My friendship with Michael Sessa spans over 40 years. Our relationship is built on mutual respect and honesty. That's never wavered over the years. Michael is remorseful for his actions. Our conversations always reflect this and he accepts full responsibility. More than anything, he wants to be back in society, showing that he learned from his mistakes and is being given a chance to prove it. His good qualities are there. Stronger than ever.

Please consider reducing his sentence to time served. The 28 years he was in prison was punishment. He's thankful for the lessons learned. Please let him have the privilege of reuniting with his family and the outside world. With certainty, Michael Sessa will be a model citizen.


Respectfully yours,

Richard Ferraro

Sessa. If there were ever three innocent souls, his wife and two daughters that were deserving and worthy his release, it is them. Of course, you will have to take into account all the factors in 3553. You will see Michael fits into all these factors in a favorable light and worthy of the granting his motion.

> "Man is buffeted by circumstances so long as he believes
> himself to be the creature of outside conditions, but when he
> realizes that he is a creative power, and that he may command
> the hidden soil and seeds of his being out of which
> circumstances grow, he then becomes the rightful master of
> himself"

> James Allen

Michael Sessa did exactly that. He has become the rightful master of himself. He has taken control of his character and strived for perfection of it.

I hope and pray you will view Michael's motion from all perspectives and come to the same conclusion so many people who have gotten to know Michael over the years have come to. The value of Michael's release far outweighs the value to keep him incarcerated.

Sincerely,

3

The honorable Allyne R. Ross
U.S. District Court Judge
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Dear honorable Allyne R. Ross,

My name is Robert Vincent Puglisi. My relationship with Michael started through my father Fred Puglisi. When Michael Sessa went to prison, I was just 18 months old. Obviously, I did not know man he was, prior to his incarceration. Therefore, I can only write and reflect as to the years he was incarcerated. I have a very deep love for Michael due to the years of unbiased advice bonded by love and the caring for me and my family. In my early teens I would always question why he was in prison, to me he was nothing less than a great guy, who really wanted what was best for me. He would call or write letters and I asked him one time why he was in prison. He told me he made mistakes in life that he regrets and now he is in a special school just like my dad to learn from those mistakes.

I am now 29 years old, and still very much in touch with Michael, and always look forward to our next communication. Our conversations can span anywhere from the smallest of novel comments to the deep and profound thoughts of where do our souls go when we die. In all of those conversation for the past 17 years or so, he has always directed me in an upright method of thinking. Even when I would have fights in school and I would talk to him about it, He was always steering me in a win-win direction for everyone involved. Not what I really wanted to hear and at the time, I actually thought it was lame back then. And so many things we've discussed I didn't want to hear or thought was a weak way of handling situations. Now as I look back at what he had told me I see how just, principled and caring he was not just for me but all involved. I cannot say

1

anything short of I love Michael, and not because he loves me and my family but because he loves everyone and cares about everyone.

Till this day I have on my wall hanging a list of habits that Michael sent me and my brothers about 12 years ago. I have included a picture of it with this letter. At the bottom of the print he wrote:

*"You must live by these habits, they will make a world of difference to your future. Love Uncle Mike"*

1) Be proactive.
2) Begin with the end in mind.
3) First things first.
4) Think win-win.
5) Seek first to understand, then to be understood.
6) Synergize!
7) Sharpen the Saw; Growth.

> *"There is nothing noble in being superior to your fellow man;*
> *true nobility is being superior to your former self."*
> **Ernest Hemingway**

If there was ever a person that I could say achieved that what Hemingway wrote, it would overwhelmingly be Michael Sessa.

I hope and pray you see how beautiful a human being my Uncle Mike is today and see the great asset he can be to society. I feel like his potential is being wasted in prison.

Robert Puglisi

2

1) Be proactive.

2) Begin with the end in mind.

3) First things first.

4) Think win-win.

5) Seek first to understand,

6) then to be understood.

7) Synergize!

8) Sharpen the Saw; Growth.

You must live by these habits,

they will make a world of difference to your future.

love uncle Mike

Dear Judge Allyne Ross,

I am writing to you on behalf of my niece Linda Sessa's husband Michal Sessa - Re; United States vs. Michal L. Sessa 92 CR 351

Please your Honor, have it in your heart to check everything in Michal's case, before his next hearing.

Michal has been in jail for 31 yrs now, and long to long to be kept from his loving family. His wife Linda and beautiful daughter Tara, who is now 31 yrs old. Tara was only 6 months when her father Michal turned himself in to the authorities, before they would have arrested him. They also sentenced him on the wrong guide lines. Michal is a great husband and father, he speaks to his wife Linda

and daughter Tara everyday, to make sure, they are alright and doing ok! He also is a good role, model in preson where he is serving his time. Michal has never in the 11 yrs thier given any trouble or problems, All have good things to say about him.

My sister Terra & her husband Don Maritato used to visit Michal as much as they could while Terri was alive. Terri passed away 6 yrs ago and never lived to see Michal free. Terri prayed for him every day, to see him free with and back home Happy again. Tara is now taking the rest of her college classes an will be graduating soon. How wonderful it would be for her Father to be there to see Tara Graduate This time.

Thank you Your Honor, Illynee Ross,

for reading my letter on behalf of our family.

My name is Jeanette DiPinto and I am 13 yrs old. I hope and pray you find it in your heart, to heal our family back together again for our next family get together.

Thank you again

I remain

Jeanette DiPinto

page 1

July 15, 2013

RE: Michael Sessa
ID# 92-CR-351

Dear Honorable Allyne Ross,

My names is Melissa Haggerty,
a good friend of Michael Sessa.
I'm writing this letter in hopes
you look over Michael Sessa Case
and to see that he is a Innocent
Man. He's been incarcerate for 21 years.
Thats "21" year he miss with his
family. Michael is my rock
through all that I have been through.
I lost everything due to "Sandy"!
But in this terrible storm, me +
my Neizlier saved 40 lives that
Nite. I recieve many award from
different Congress men. Michael was
there for me through this rough time,
all other time I needed his support!

page #2

He has a beautiful family that
needs him, I daughter that miss
their dad terrible. Michael is a
man that has a big heart through all
that he has been through. I pray
that you will let him free. This
man needs to be home with his
family + friends, and to be the dad
who's there for his daughter.
Thank you for taking your time to
read this letter, and may God Bless
you always!

                    Thank you
                    Melissa Haggerty

The honorable Allyne R. Ross
U.S. District Court Judge
U.S. District Court for the Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Dear honorable Allyne R. Ross,

My name is Robert Vincent Puglisi. My relationship with Michael started through my father Fred
Puglisi. When Michael Sessa went to prison, I was just 18 months old. Obviously, I did not know
man he was, prior to his incarceration. Therefore, I can only write and reflect as to the years he
was incarcerated. I have a very deep love for Michael due to the years of unbiased advice bonded
by love and the caring for me and my family. In my early teens I would always question why he
was in prison, to me he was nothing less than a great guy, who really wanted what was best for
me. He would call or write letters and I asked him one time why he was in prison. He told me he
made mistakes in life that he regrets and now he is in a special school just like my dad to learn
from those mistakes.

I am now 29 years old, and still very much in touch with Michael, and always look forward to our
next communication. Our conversations can span anywhere from the smallest of novel comments
to the deep and profound thoughts of where do our souls go when we die. In all of those
conversation for the past 17 years or so, he has always directed me in an upright method of
thinking. Even when I would have fights in school and I would talk to him about it, He was always
steering me in a win-win direction for everyone involved. Not what I really wanted to hear and at
the time, I actually thought it was lame back then. And so many things we've discussed I didn't
want to hear or thought was a weak way of handling situations. Now as I look back at what he had
told me I see how just, principled and caring he was not just for me but all involved. I cannot say

1

anything short of I love Michael, and not because he loves me and my family but because he loves everyone and cares about everyone.

Till this day I have on my wall hanging a list of habits that Michael sent me and my brothers about 12 years ago. I have included a picture of it with this letter. At the bottom of the print he wrote:

*"You must live by these habits, they will make a world of difference to your future. Love Uncle Mike"*

1) Be proactive.
2) Begin with the end in mind.
3) First things first.
4) Think win-win.
5) Seek first to understand, then to be understood.
6) Synergize!
7) Sharpen the Saw; Growth.

> *"There is nothing noble in being superior to your fellow man; true nobility is being superior to your former self."*
> **Ernest Hemingway**

If there was ever a person that I could say achieved that what Hemingway wrote, it would overwhelmingly be Michael Sessa.

I hope and pray you see how beautiful a human being my Uncle Mike is today and see the great asset he can be to society. I feel like his potential is being wasted in prison.

Robert Puglisi

2

1) *Be proactive.*

2) *Begin with the end in mind.*

3) *First things first.*

4) *Think win-win.*

5) *Seek first to understand,*

6) *then to be understood.*

7) *Synergize!*

8) *Sharpen the Saw; Growth.*

You must live by these habits,

they will make a world of difference to your future.

love uncle Mike

Dear Judge Allynee Ross,

I am writing to you on behalf of my niece Linda Sessa's husband Michal Sessa - Re; United States VS. Michal L. Sessa 92 C R 351

Please your Honor, have it in your heart to check everything in Michal's case, befor his next hearing.

Michal has been in jail for 21 yrs. now, and long to long to be kept from his loving family, His wife Linda and beautiful daughter Tara, who is now 21 yrs old. Tara was only 6 when her father Michal turned himself in to the authorities, before they would have arrested him. They also sentanced him on the wrong guide lines. Michal is a great husband and father, he speaks to his wife Linda

and daughter Tara everyday, to make sure they are alright and doing ok! He also is a good role model in presion where he is serving his time. Michal has never in the 11 yrs thier given any trouble or problems, all have good things to say about him.

My sister Terrie & her husband Don Maritato used to visit Michal as much as they could while Terri was alive. Terri passed away to young and never lived to see Michal free. Terri prayed for him every day, to see him free with and back home happy again. Tara is now taking the rest of her college classes an will be graduating soon. How wonderful it would be for her Father to be there to see Tara Graduate This time.

Thank you Your Honor, Illynee Ross,

for reading my letter on behalf of
our family.

My name is Jeanette DePinto
and I am 13 yrs old. I hope and
pray you find it in your heart, to
heal our family back together again
for our next family get-together.

Thank you again
Precious
Jeanette DeP

page 1

July 15, 2013

RE: Michael Sessa
ID# 92-CR-351

Dear Honorable Allyne Ross,

My names is Melissa Haggerty,
a good friend of Michael Sessa.
I am writing this letter in hopes
you look over Michael Sessa Case
and to see that he is a Innocent
Man. Hes been incarcerate for "21" years!
Thats "21" years he miss with his
family. Michael is my rock
through all that I have been through.
I lost everything due to "Sandy"!
But in this terrible storm me +
my Neighbor saved 40 lives that
Nite, I recieve many award from
different Congress men. Michael was
there for me through the rough time,
all other time I needed hes support!

page #2

He has a beautiful family that
needs him, I daughter that miss
their dad terrible. Michael is a
man that has a big heart through all
that he has been through. I pray
that you will let him free. This
man needs to be home with his
family + friends, and to be the dad
who's there for his daughter.
Thank you for taking your time to
read this letter, and may God Bless
you always!

Thank you
Melissa Haggerty

April 20, 2020

Your Honor,

My name is Cheryl Pesa. I am the sister-in-law to Michael Pesa 95810001.

I have been his sister-in-law for fourty four years and for many of those years Michael has not been here. It has been sad to see his family his daughters and grand-children being brought up not having his presence in their lives. His wife his daughters his family had no real chance at seeing

# ANGELA CLEMENTE & ASSOCIATES

*CONGRESSIONAL CONSULTING/FORENSIC INTELLIGENCE OFFICES

---

P.O. Box 1904 Bluefield, WV 24701              *Telephone 609-972-3162          Angelaclemente.forensics@gmail.com

---

The Honorable Allyne R. Ross                                          May 5, 2020
U.S. District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: Professional Reference and Rehabilitation- Michael Sessa

Honorable Allyne R. Ross:

I am writing this letter in support of Michael Sessa's request for review of the potential to release him due to Covid19.

I have worked as a congressional consultant directly with chairman and their general counsels of different committees on the U.S. House of Representatives Committee on Government Reform, Committee on Foreign Relations and the U.S. Senate Judiciary. I also have spent over twenty years in Clinical Laboratory and Pathology as well as in direct patient contact and care as a medical surgical technician in some of the largest and busiest emergency room trauma centers in the United States.

Today we are dealing with a Pandemic that is causing many fatalities and medical professionals around the world are still identifying different strains and new symptoms. This novel Coronavirus remains foreign to us as to how we will develop immunity and for how long the immunity will last. It has been established that in institutional settings such as nursing homes and correctional institutions Covid-19 can be alarmingly fatal to their residents and staff.

In Ohio, we have found that the Ohio Department of Corrections and Rehabilitation in an effort to lessen the Covid-19 virus they have asked their residents to "cohort" into groups. Their definition of cohorting was to stay in large and small groups. (See Exhibit A) This is in complete opposition of what the CDC, NIH, WHO and the U.S. medical community has stated is safe. It is also contrary to governors directives throughout the U.S. in keeping social distancing which is already a significant challenge for large institutions such as correctional facilities. However, when the institutions are thrust into a pandemic and they are not medically equipped it sets an unprecedented issue for the prisons and their residents and staff. Exhibit A represents how inmates can be subjected to an institutional directive that places them in direct risk of their lives and can and will cause their demise if they were to follow this directive.

Recently, U.S. District Court Judge James Gwin also located in Ohio made the following decision and statements:

*Gwin said he needed to act because efforts to combat the virus at the Elkton prison in Lisbon, Ohio, were failing. Six inmates there infected with the virus have died in recent weeks, with 52 inmates confirmed infected and 48 staff — the highest number of staff infections of any federal prison in the country.*

*But with fewer than 100 of the 2,400 inmates at Elkton tested, the actual infection rate could be much higher, the judge said, calling the lack of testing at the prison a "debacle" — especially compared with a nearby state prison that has conducted thousands of tests.*

*"Despite their efforts, the Elkton officials fight a losing battle. A losing battle for staff. A losing battle for inmates," wrote Gwin, an appointee of President Bill Clinton. (See Exhibit B)*

I have known Michael Sessa since approximately 2003 and in all my years of working in both prosecution and defense I have never seen anyone more rehabilitated as Michael. When I say rehabilitated please do not misconstrue that I believe he has been convicted for a crime that he committed in fact, I was the person that helped to prosecute the agent[s] that were on his case alongside the Brooklyn District Attorney. I was also involved in bringing his case to the Department of Justice Office of Inspector General who took his case very seriously and began an investigation until politics intervened. I am not involved with any political affiliation. Judge Hogan in the D.C. courts is very much aware of Michael's case and has been tremendous is ordering release of documents that were pertinent to Mr. Sessa. These documents remain of great public interest.

It is my professional legal opinion which is based on the receipt of my successful FOIA litigation records that Michael received a sentence that far exceeded what he should have received had these records been available at the time of his sentencing.

If there is any question of whether Michael is appropriate for release I am confident to state that I would personally allow him and more importantly invite him to work in my office amongst the top officials in the country that I interact with on a regular basis.

Michael is not only rehabilitated he is the prime example of what our justice system should be proud of despite any narratives that has been placed upon him. I would be proud to hire him in my own office. I would not hesitate to ask him to engage with my mentally disabled brother who is autistic. I would not hesitate to have him engage with my own children. I am confident that Michael will not ever engage in criminal activity upon his release.

Honorable Judge Ross what I am not confident in as a professional in both the medical and legal fields is that Michael who was not served a death sentence will not be subjected to a pandemic virus that could very well cause his demise due to his age, underlying medical condition, and most importantly a system that is not equipped to handle this pandemic in the most medically appropriate way without Mr. Sessa losing his very valuable life. Please do contact me so that I can be of any assistance possible to aid in your decision or answering any questions that you may have related to this letter. I am gravely concerned as both a medical and legal professional for his life and continued safety.

The Honorable Allyne R Ross
US District Judge
US District Court Of Eastern District Of New York
225 Cadman Plaza East
Brooklyn, New York 11201

My name is Lawrence Mazza. I am writing on behalf of Michael Sessa with the hopes that I can offer something positive to his future proceedings. I go back to the 70's with Michael. We are from the same neighborhood, and had some mutual friends. Unfortunately, those friends and even family members, were the worst thing to happen to us. Our inane sense of loyalty to them, for what we both have learned is a cancer, led us down a path of destruction, for us and our true family and loved ones. I know Michael is living in regret and remorse as we continue to stay in touch to this day. He cannot get off the phone with me without agonizing over his mistakes and what he has done to his family. All he wants is a chance to make amends with not only them, but society. It has been nearly 30 years.

I remember Michael working with his brother Anthony in the car business. They were successful, and he was a happy , friendly guy. I, about the same time was offered a position as Sales Manager for Hewlitt Supply Co. That position had me bringing paperwork to an "office" on 13th Ave every day. There, I would leave the paperwork with Carmine Sessa or Greg Scarpa. There, Michael and I, as the youngest guys in the "office", became close. We ate lunch each day together and talked about our businesses and how lucky we were to have Greg and Carmine behind us. Their influence, as we learned, came with a price. It came with high expectations. We were forced to "grow up" quickly.

Michael was always honest in his ways and words. I admired Michael for his ethic and fairness with the car business. I once bought a bad car from someone and Michael jumped in to help me immediately. He felt worse than I did, and brought the car to an auction. Then he and Anthony returned with a fine car for me. I will never forget that small gesture, but he did it because he felt bad for me. No other reason. A small thing , yes, but a sign that he has a good heart. No one else at the "office" could have cared any less.

Michael still has that attribute. I hear in his voice, his high hopes of doing good things in the future. He knows he made terrible mistakes in his decisions, as I did. God only knows the regrets Michael lives with. He wants to turn this negative existence into a positive final part of his life, for his family and society. If he is given the chance, I would do anything to help him.

I live in Florida now, since my 10 year sentence was served. I say humbly, that I own a successful fitness center, and would be proud to hire Michael if he needs assistance in re-entering society. I , with my wife, own a 4 bedroom house. If Michael and his family need help, a place to stay until he "get's back on his feet", they are welcome in my home. I would put up my own freedom, as I am so certain Michael is the Michael once again, that he was before his brother brought him in. His brother, like my "mentor" , Greg Scarpa had an innumerable amount of hideous crimes. Scarpa was doing it all while being a top echelon informer for 30 years. Carmine , immediately co-operated and if my memory serves me correctly, did 4years. I know if things were a bit different, if he had a little more time before his trial, he may have thrown in the towel too, and co-operated. He cannot say those exact words to me, for fear of his life , as he is in a maximum security penitentiary. He does, in his own  way make it clear to me. I believe, part of it was to be "spiteful", or to torture his brother. Time, however, can change things, and make one "come of age". Michael has come of age Your Honor.

I did co-operate. I came of age, as soon as I realized the treachery of the life I so agonizingly fell into. I feel some guilt for Mike too, as I, in my proffer discussions , as well as testimony , admitted that Greg Scarpa, Jim Del' Masto, and I were to disguise ourselves as Hasidic Rabbi's to commit a murder. That murder never took place. Michael took the blame for that conspiracy for some reason, and for that I feel guilty.

In closing, Your Honor, I'd like you to know that I have made a good life for myself, I accept my responsibility for my past failures, as Michael has. He too, will make a good life for him and his family. I am doing speeches still, renouncing the life. I was invited by law enforcement to do a seminar for the NCAA sports organization, as well as professional leagues. It was delayed because of this horrible plague we are all fighting. Maybe Michael , God willing, and with your mercy, can stand beside me. I pray that time served in this case is something you will do.
Thank You, With The Utmost Respect For You And The Court, And The USA,
Lawrence M Mazza.

July 28, 2014

Honorable Jack B. Weinstein
225 Cadman Plaza
Brooklyn, NY 11201

RE: United States vs. Michael Sessa 92CR351 (ARR)

Dear Judge Jake B. Weinstein,

     With the utmost respect for the law and your role as Judge, I am writing to you on behalf of my brother in law, Michael Sessa. I have had the pleasure of knowing Michael for over 36 years. I have always found him to be an exceptionally good man and a wonderful husband to my younger sister. He is an outstanding father to his daughter, Tara, who regretfully has not been privileged to see her father outside of a prison. Despite being away for so long, Michael still manages to be an awesome father and husband. It was right after Tara's christening that Michael turned himself into the authorities. He did this with good intentions and not for one minute did he ever think it would result in his incarceration. Michael came forward on his own free will and without any provocation from the legal system yet doing this hurt him in a serious, irreversible and extremely detrimental way. This decision has cost him 22 years of his life. This is time that neither Michael nor his family will ever gain back.

     Michael is a caring person and he is a good, old fashioned family man. He always took care of his elderly parents and his responsibilities to his family were never taken lightly. My sister and Michael were married very young and he is her first and only love. She has waited loyally for over 22 years for her prayers to be answered and for her husband to come home safely to his family. We all have faith that Michael will be released so that he can try to make up for all this time away. He has missed graduations and birthdays and family weddings and even funerals of loved ones. He has missed the milestones that every parent cherishes such as his baby's first steps or the 8th grade father daughter dance. We have missed him terribly and feel that he has more than paid the price with his freedom for 22 years.

     With a sincere, heartfelt request for your consideration to please grant leniency on Michael Sessa, so that he can be paroled and his wife and daughter can be reunited with him along with the rest of our family.

I remain respectfully yours,

Susan Spagnuolo
ridgebabg@aol.com
718-809-1408

July 23, 2014

The Honorable Judge Jack Weinstein
225 Cadman Plaza
Brooklyn, New York 11201

RE: United States vs. Michael Sessa 92CR351 (Ree)

Honorable Judge Jack B. Weinstein,

My name is Tara Sessa and I'm writing you this letter on behalf of my father, Michael Sessa. I am 22 years old and recently a college graduate at Ocean County College receiving my associates' degree in liberal arts. I have kept a high GPA during my time at OCC and have been on the Presidents honor list. In the fall I will continue my education to fulfill my bachelors degree. I have known my father 22 years of my life and he has had a huge impact on my life especially with leading me in the right direction in my education. He is a very smart and educated man.

My father has always influenced me even though he's been behind bars my whole life. He went to prison when I was only 5 months old. Although I never had a face-to-face relationship with my dad, besides visiting him, he was still the greatest father I could have ever asked for. There's not a day that goes by that I don't speak with my father. He never forgets a birthday, graduation, first day of school, or anything along those lines my dad was always the first one to call and show he cares. He is a very kind, gentle hearted man. My father influenced me a lot to be the person I am today and I'm very grateful to know my father as a person but I'm even more grateful to have him as my father. He always gives me the best advice in every aspect of my life I never feel afraid to talk with my father about anything that's going on in my life because he's always a good listener, never judges, and gives me wise advice.

I have been very lucky to be blessed with such great parents. My mom has done her a great job raising me as a single parent. But it's also very unfortunate that I've never been able to have both my mom and dad together because of my father being away my whole life. Not a day goes by that I don't think about my father and how badly I wish he was home so I could build that face-to-face relationship with him. I haven't physically

been able to celebrate any of the big things that have happened in my life such as birthdays, first days of school, graduating college, or getting on the presidents honor list.

I just hope that my father can be home with me and watch me grow even more as an adult because I know he regrets all the time that he wasn't able to watch me grow as a child and it breaks my heart because I know my father is a great man and I hope that he doesn't have to miss out on anything else in my life but rather this time he can actually be by my side that would make me the happiest girl in the world to be able to have my father physically home and present with my family and I. All of us love him very much.

Your Honor, when you're reading this just try to keep in mind all of the wonderful things I've said about my father. He is a great man with a warm heart and I pray everyday he can be home with us and we can be a family like I always wished for. And that someday when I meet my husband and get married that my father will be home to walk me down the aisle with joy and happiness and not miss out on that day because he's behind bars.

Thank you for taking the time to read my letter and I hope reading this letter gave you a better insight on the type of person my father really is. And how much his family really needs him home and have stood by his side all of these years because of the person he is.


Respectfully and wholeheartedly,

Tara Sessa

Tara Sessa

RE: Michael Sessa 92-CR-351

Dear Honorable Allyne Ross,
    On My Cousin Michael's behalf
I would like to tell you what a wonder
Father, son, brother, cousin and MAn he
is. He is very much Loved And missed.
I'm pleading with you to find in your Heart
to give my Cousin Michael a second chance
to spend quailty time with his Family
which he has been away from for 21 years
He is a Good MAN, a good person And TRuly
deserves a second chance to spend the
rest of his years with his family that
he Treasures. Please find it in Your
heart to resentence him and release him.
If you would like to ask me any questions,
Please do so.

                    Sincerely Youe's
                    Michele.
                    646-280.8227

RE: Michael Sessa 92 CR 351

9/1/2013

Dear Honorable Allyne Ross,

This letter is on behalf of Michael Sessa who I know for over 40 years. He was then and now a respectful and good person. He was reliable if you needed him and he cared about people.

He served 22 years in prison. I feel Michael should be released at this time because his time was earned. Others have been released for more charges and served less time.

Please release him at this time and give him a chance to prove to society that he be truly is a good person, and a family man. He has a wife and 2 daughters waiting for him to come back in their lives and that he will be an asset to them and society. I know he will be an upstanding citizen and will not disappoint you.

Respectfully,

*Marie Porzo*

Marie Porzo

9/11/2013

Re: Michael Sessa 92 CR 351

Dear Honorable Allyne Ross,

I'm writing this letter on behalf of Michael Sessa who I've known since he was a teenager. As a young man he became a very likable and respectable person to all who knew him. He was like a big brother to me. He always showed love and respect to me and my family which I returned to him. He's caring and has a good heart especially when things got tough for me. I had a tragedy in my life and I lost a son and Michael showed sympathy and was compassionate to me and my family.

He is a good person and deserves to be released at this time. He has served 22 years in prison which is more than enough for the charges against him. There for the same charges and more have already been released (time served). For example, his brother Carmine Sessa pleaded guilty to 15 murders and was given 5 years. Gregg Scarpa pleaded guilty to 4 murders (it was said he committed 50 murders) he served 10 years. Michael is a first offender and was the only one to self surrender to this case.

He is a good friend to me and my family. He has a wonderful wife, 2 daughters and 2 grandchildren who need him back in their lives. All Michael wants is to be a good husband and father to his family. Please release him back to society and his family. I'm sure that he will be a good citizen and family man.

Respectfully yours,

Anthony Fonzo

Anthony Fonzo

for 22 years. Please your honor, let that be the last thing I see when I pass so I can rest in peace knowing my daughter and granddaughter will be a happy family again.

Thank you for taking the time to read my letter,

Respectfully and wholeheartedly,

Dear Judge Jack B. Weinstein

My name is Jennette DiPinto, I am writting this letter, in behalf of, U.S. verse Michael Sessa - 92CR351.

Michael is married to my niece Linda for over 25yrs., and they have a beautiful daughter Tara who is 22yrs old. Michael has been inprisoned unjustly for over 22yrs., and think it is time to consider his release. He missed the birth of his daughter and all her birthdays, plus all our family gatherings while he was inprison. We are a very close and loving family and miss him.

His father is now 85yrs old and lives with Linda and Tara and think, he would love to see Michael home with the family, before anything happens to his father inlaw. He still He hopes to see him home before before he dies! So would I, I am 73, so please let us have a Happy & merry Christmas this year. I thank you for taking ~~some time~~ to hear me.

Premise,
Jennette DiPint

U.S. verse Michael Sessa - 92CR351

July 28, 2014

Honorable Jack B. Weinstein
225 Cadman Plaza
Brooklyn, NY 11201

RE: United States vs. Michael Sessa 92CR351 *(ARR)*

Dear Judge Jack Weinstein,

I am writing to you on behalf of my uncle, Michael Sessa. I want to start off by telling you I miss him and love him immensely. Although, I was very young when he went away, we always kept in touch. My favorite and most memorable times when I was younger were going to visit him with my Aunt and cousin. As I got older, I slowly learned and understood why my Uncle Michael was away from us. I never had to the nerve to just come out and ask why he was not with us but in a State Prison. So, as I became more and more curious, I researched the internet. I just could not understand and I know deep down, this is not the man I know.

My uncle Michael has been away for 22+ years and he has never once missed calling to wish every single family member a happy birthday, congratulations on graduations, or even if and when we are sick to make sure we are feeling better. He is the most thoughtful man I have ever had the pleasure to know and I have the upmost respect for him. I lost my father at a young age and I know the pain of not having that father figure around. But what I think is worse is the fact that my uncle is just an arms length away, his daughter and cousin, Tara has never, ever been able to form a real relationship with her father. It is almost as unfair as losing someone because he is there. We long for a face-to-face relationship with him in the worst way, we need him.

After learning about my Uncle's case, I just wanted to educate myself as much as I could on the Criminal Justice system. I recently graduated in May, with my Bachelors Degree in Criminal Justice, minor in Psychology. I enjoyed discussing legal issues and talking to my Uncle about anything and everything since he obtained a legal education while away. It completely fascinates me how the system works and I recently finished an internship with The Dunkirk City Court in Western, NY. I worked along side the Judge there and I understand the discretion you use with each individual case. With this being said, I know you must weigh the options of your decision on the facts and evidence you are presented with. All I ask is that you use leniency when re-sentencing my Uncle Michael. We all know that he is a good, loving remorseful man. For the last 22years, he has done nothing but better himself through taking advantage of vocational and educational services offered to him and we will stand by his side no matter what, forever and always. He has a strong support system here and he will continue to have us here for him.

Please feel free to contact me if you have any questions and/or concerns.

Respectfully,

Amanda Spagnuolo
Aspagnuolo02@gmail.com
(516) 761-4189

RE: United States V. Michael Sessa 92-CR-351 (Pro)

I am writing you this letter in regards to my Uncle Michael.

My Uncle is a caring man. He is a family Man, and He is an incredible Uncle,

Brother, Father, Brother in Law etc.  He has a wonderful spirit.

I wish I had more time to spend with him.  I wish as a family we could

Spend holidays together. A huge part of our family has been missing

And it would be a blessing to all be as one again.  I would love for

My nieces & nephews to know the beautiful man I know. My uncle is a

Teacher in his own right. He loves to read and inform me on many topics

that contribute to my life.  I would love to sit and read with him.

My Uncle loves to learn, he is constant in his pursuit of educating

Himself.  He always asks how everyone is doing and checking in on us,

whether via email or telephone.  I would only wish to see him one day

with his daughter and be the Father he was made to be. In sentencing

not only was my uncle affected but we as a family were all affected.

I have researched lots in reference to this case and many cases in like

accounts have not served as much time as my Uncle has.  I feel strongly

that my Uncle has served his time. So I beg your Honor to please consider

this letter when making your decision to please let us be with our Family

Member again.

Sincerely,

Lillian Sessa

Tara Sessa
11 Lake Singleton Ct
Little Egg Harbor, NJ 08087

December 15, 2015

Dear Judge Weinstein,

I am writing you in this very important matter concerning Michael Sessa 92-CR-351.

My name is Tara Sessa. I am Michael Sessa's daughter. I am 23 years old. My father has always been a big part of my life even though he's been incarcerated. He went away when I was 5 months old. Although I haven't had a face-to-face relationship with my father besides visiting him, he is the best father I could have ever asked for. I speak with him everyday. He never forgets a birthday, holiday, and/or any other special occasions. He's always the first one to call and show he cares. I graduated for my associates' degree in liberal arts and plan on furthering my education to become an ultrasound technician. I know my father is very proud of me and has always influenced me to realize how very important education is. My father is a good man. He's kind hearted, caring, and gentle person. There's nothing I can't speak to my father about. He's very understanding. He's a good listener and gives the best advice he can. I feel very grateful to know my father as a person, but most of all I feel even more grateful to have him as my father. I hope and pray everyday my father will come home to be with his family. We all love him very much. I want my father to be able to continue to see me grow as a young lady. I know he regrets not being able to be there my whole life and see every milestone or achievement. It breaks my heart to know that because I know my father is a great man. I have been very lucky to be blessed with two wonderful parents. My mom has done a wonderful job raising me as a single parent. But, it's also unfortunate that I haven't been able to have both of my parents physically together due to him being away. I really hope that reading this will give you a better insight on the type of person my father really is. And how much his family needs him home and has stood by his side all of these years because of who he is as a person.

Michael Sessa self-surrendered around 24 years ago. He was the youngest on the case and he is a first time offender.

Consider these facts; one of the charges you sentenced Michael for was the charge of loan sharking and these were your words (pg. 1178) "They couldn't get anybody to come and testify that they had been extorted?" Michael's attorney, Segal (pg. 1387) "Who...who are the loan shark victims?" Then you charged the jury (pg.1446-1447) and stated four times that the jury must find these elements, they must find that the victim/borrower had comprehended, understood that if they did not pay that there would be violence.

In Michael's pre-sentence report on March 17th, 1993, four months after his trial (pg. 5, paragraph 15) it states: "However, the agent informed that as of this writing, the FBI has been unable to identify any specific victims of the loan sharking conspiracy."

Michael's recommended sentence was '46' months. Even without any identifiable victim, even without the elements of the crime of loan sharking. You sentenced Michael to '20' years on the loan sharking counts alone. Yet, you sentenced other defendants in the same case who were all 2nd, 3rd, and 4th time offenders with a total of '22' murders to a total sentence of '17' years- 3 years less than what you sentenced Michael to for the loan sharking counts alone and again without a victim and the elements of the crime.

Is this justice?

Judge John Gleeson who was the lead prosecutor in Michael's case wrote last year in his published decision, United States V Holloway. The first sentence: "There are injustices in our criminal justice system, including in this district- courthouse."

Judge Gleeson this year also sentenced an Al Qaeda terrorist and stated: "He certainly was the real deal when it came to terrorism." Then gave him a '22'-year sentence.

In contrast, Michael has already served a '27'-year sentence.

Are the words that are etched in stone over the courthouses- "EQUAL JUSTICE UNDER LAW"- just a hoax on the American public?

Also, consider this fact; Michael's case is the only case in history where an FBI agent- DeVecchio- got on the witness stand, testified to murders- Michael was not charged with- that he- DeVecchio- himself got indicted for years later. Agent DeVecchio was indicted for 4 murders, plus 4 more murders as bad acts in 2006 by the Brooklyn District Attorney's office.

This shocks the conscience and boggles the mind.

JUSTICE: The quality of being just; fairness.
The upholding of what is just; especially-fair treatment.
To treat adequately; fairly.
The principle of moral rightness; equity.

Can you honestly say: Justice was served in Michael's case?

As Judge Gleeson stated on pg.10 of his Holloway decision: There's a difference between a department of prosecutors and a department of justice...

Dear Judge Weinstein, a distinguished Judge as yourself knows full well that your job, your oath, is to make sure- Justice is done. You must live up to your title- HONORABLE...

This is the year of Jubile. It states in LEVITICUS 25:10

"And Ye shall hallow the fiftieth year, and proclaim liberty throughout all the land into all the inhabitants there of: it shall be a jubile unto you, and ye shall return every man unto his possession, and ye shall return every man unto his family."

Michael was 32 years old when he went to prison, he is now 56. His family needs him to return home and he needs to return home to his family.

Judge Weinstein, this will be 'your fiftieth' year on the bench. Michael has already served 10, 20, 40 and 55 times what you sentenced others in the same case. Please, have mercy on Michael and give him a 2nd chance like you gave all those others.

Have Mercy, Khesed and LEVITICUS 25:11

"A Jubile shall that fiftieth year be unto you."

I pray that you look into your heart. I pray this with all my heart.

Respectfully,

Tina denna

Dominic Maritato
11 Lake Singleton Ct
Little Egg Harbor, NJ 08087

December 16,2015

Dear Judge Jake B. Weinstein,

I am writing you in this serious matter, concerning the life of Michael Sessa and the life of his loving
family, #92-CR-351.

I am writing to you on behalf of my son-in-law, Michael Sessa. My name is Dominic Maritato. I am 87
years old and a veteran. My daughter Linda and granddaughter Tara live with me and take care of me
due to my health. It's hard for me to get around I have heart problems and I'm diabetic. I just pray
everyday that god gives me the health to be here to see my son-in –law come home to my daughter
Linda and granddaughter Tara. Michael is like a son to me he is missed very much its hard for me to visit
him due to my health. He has always been a caring and loving person to me and my wife and all of my
family. Your honor I am sure you are a father and grandfather so please have some compassion for me
and look into my son-in-Law's case 24 years he has been away from his family who loves and misses him
so much.

Michael Sessa self-surrendered 24 years ago. He is the youngest on the case and he is a first time
offender.

Consider these facts; one of the charges you sentenced Michael for was the charge of loan sharking and
these were your words: (pg. 1178)"They couldn't get anybody to come and testify that they had been
extorted"? Michael's Attorney Segal pg.1387... "Who- who are the loan shark victims"? Then you
charged the jury pgs. 1446-47 and stated four times- that the jury must find these elements- they must
find the victim/borrower had comprehended, understood that if they did not pay that there would be
violence.

In Michael's pre-sentence report on March 17th, 1993- four months after his trial- on pg.5, par.15 it
states: "However, the agent informed that as of this writing, the FBI has been unable to identify any
specific victims of the loan sharking conspiracy.

Michael's recommended sentence was '46' months. Even without any identifiable victim, even without
the elements of the crime of loan sharking.

You sentenced Michael to '20' years on the loan sharking counts alone. Yet, you sentenced other
defendants in the same case, who were all 2nd, 3rd, and 4th time offenders with a total of '22' murders to
a total sentence of '17' years- 3 years less than what you sentenced Michael to for the loan sharking
counts alone and again without a victim and the elements of the crime.

Is this Justice?

Judge John Gleeson who was the lead prosecutor in Michael's case wrote last year in his published decision, United-States-V-Holloway. The first sentence: "There are injustices in our criminal justice system, including in this District courthouse."

Judge Gleeson this year also sentenced an Al Qaeda terrorist and stated: "He certainly was the real deal when it came to terrorism." Then gave him a '22'-year sentence.

In contrast, Michael has already served a '27'-year sentence.

Are the words that are etched in stone over the courthouses- "EQUAL JUSTICE UNDER LAW"- just a hoax on the American public?

Also, consider this fact; Michael's case is the only case in history where an FBI agent- DeVecchio- got on the witness stand, testified to murders- Michael was not charged with- that he- DeVecchio- himself got indicted for years later. Agent DeVecchio was indicted for 4 murders, plus 4 more murders as bad acts in 2006 by the Brooklyn District Attorney's office.

This shocks the conscience and boggles the mind.

JUSTICE: The quality of being just; fairness.
The upholding of what is just; especially-fair treatment.
To treat adequately; fairly.
The principle of moral rightness; equity.


Can you honestly say: Justice was served in Michael's case?

As Judge Gleeson stated on pg.10 of his Holloway decision: There's a difference between a department of prosecutors and a department of justice...

Dear Judge Weinstein, a distinguished Judge as yourself knows full well that your job, your oath, is to make sure- Justice is done. You must live up to your title- HONORABLE...

This is the year of Jubile. It states in LEVITICUS 25:10

"And Ye shall hallow the fiftieth year, and proclaim liberty throughout all the land into all the inhabitants there of: it shall be a jubile unto you, and ye shall return every man unto his possession, and ye shall return every man unto his family."

Michael was 32 years old when he went to prison. He is now 56. His family needs him to return home and he needs to return home to his family.

Judge Weinstein, this will be 'your fiftieth' year on the bench. Michael has already served 10, 20, 40 and 55 times what you sentenced others in the same case. Please, have mercy on Michael and give him a 2nd chance like you gave all those others.

Have Mercy, Khesed and LEVITICUS 25:11

"A Jubile shall that fiftieth year be unto you."

I pray that you look into your heart. I pray this with all my heart.

Respectfully,

Dominic Maritato





"EQUAL JUSTICE UNDER LAW...

It is perhaps the _Most_ inspiring ideal of our society. It is one of the ends for which _our entire Legal System exists_...

_It is Fundamental that Justice Should be the same_, in substance and availability, without the regard to status."

Linda Sessa
11 Lake Singleton Ct
Little Egg Harbor, NJ 08087
(609)618-1145

December 16,2015

Dear Judge Jake B.Weinstein,

I am writing you in this very important matter concerning Michael Sessa 92-CR-351.

My name is Linda Sessa and I am writing to you on behalf of my husband Michael Sessa, I know my husband thirty-eight years and it was love at first sight. We have been married for thirty -three years. He has been in prison for twenty-four years with good behavior. He is a smart and intelligent man who while away, obtained his paralegal certificate. Michael is truly a caring person. He is loved and missed very much by his wife, his daughter and the rest of our large families.

As a husband, Michael has been my backbone. Always supporting me the best he could from behind bars. He has always been my strength after five years we married and five years later tried to have a baby. Unfortunately, to our dismay, we could not conceive. Being determined to have a child we decided to try inv Vitro Fertilization (IVF). It was a terrible pregnancy and we lost our baby due to many complications. This was so hard on us, but Michael stood by my side with support and love. We tried a second time with fertilized eggs that we had from the first time and we were blessed with a little girl, our angel Tara Marie. That was truly the happiest day of our lives. He was an amazing father and it is upsetting to say they only had five short months together before he went away.

As a son-in -law, Michael was so loved by my parents. My mother loved him like he was her own son.  In 1992 after our daughter was born, my mother became very ill. She had multiple aneurysms in her brain. My husband stood by her side day and night. He was always the last one at her side, to say good night when she was in the hospital. It was truly a miracle that she pulled through; even the doctors were in awe. She always held on to the fact that she knew deep down in her heart that Michael would come home to us where he belonged. She supported Michael, Tara and I until the sad day she passed away in February of 2007. My father a veteran at 87 years old asks every day when is Michael coming home.  My father is a diabetic and has numerous heart problems. Our daughter, Tara and I live with my father and take care of him now. I know in my heart my father is just holding on to see the day that Michael is home and to finally see his daughter and granddaughter a happy family once again

Michael Sessa self-surrendered around 24 years ago. He was the youngest on the case and he is a first time offender.

Consider these facts; one of the charges you sentenced Michael for was the charge of loan sharking and these were your words (pg. 1178) "They couldn't get anybody to come and testify that they had been extorted?" Michael's attorney, Segal (pg. 1387) "Who...who are the loan shark victims?" Then you charged the jury (pg.1446-1447) and stated four times that the jury must find these elements, they must find that the victim/borrower had comprehended, understood that if they did not pay that there would be violence.

In Michael's pre-sentence report on March 17th, 1993, four months after his trial (pg. 5, paragraph 15) it states: "However, the agent informed that as of this writing, the FBI has been unable to identify any specific victims of the loan sharking conspiracy."

Michael's recommended sentence was '46' months. Even without any identifiable victim, even without the elements of the crime of loan sharking. You sentenced Michael to '20' years on the loan sharking counts alone. Yet, you sentenced other defendants in the same case who were all 2nd, 3rd, and 4th time offenders with a total of '22' murders to a total sentence of '17' years- 3 years less than what you sentenced Michael to for the loan sharking counts alone and again without a victim and the elements of the crime.

Is this Justice?

Judge John Gleeson who was the lead prosecutor in Michael's case wrote last year in his published decision, United States V Holloway. The first sentence: "There are injustices in our criminal justice system, including in this district- courthouse."

Judge Gleeson this year also sentenced an Al Qaeda terrorist and stated: "He certainly was the real deal when it came to terrorism." Then gave him a '22'-year sentence.

In contrast, Michael has already served a '27'-year sentence.

Are the words that are etched in stone over the courthouses- "EQUAL JUSTICE UNDER LAW"- just a hoax on the American public?

Also, consider this fact; Michael's case is the only case in history where an FBI agent- DeVecchio- got on the witness stand, testified to murders- Michael was not charged with- that he- DeVecchio- himself got indicted for years later. Agent DeVecchio was indicted for 4 murders, plus 4 more murders as bad acts in 2006 by the Brooklyn District Attorney's office.

This shocks the conscience and boggles the mind.

JUSTICE: The quality of being just; fairness.
The upholding of what is just; especially-fair treatment.
To treat adequately; fairly.
The principle of moral rightness; equity.

Can you honestly say: Justice was served in Michael's case?

As Judge Gleeson stated on pg.10 of his Holloway decision: There's a difference between a department of prosecutors and a department of justice...

Dear Judge Weinstein, a distinguished Judge as yourself knows full well that your job, your oath, is to make sure Justice is done. You must live up to your title- HONORABLE...

This is the year of Jubile. It states in LEVITICUS 25:10

"And Ye shall hallow the fiftieth year, and proclaim liberty throughout all the land into all the inhabitants there of: it shall be a jubile unto you, and ye shall return every man unto his possession, <u>and ye shall return every man unto his family</u>."

Michael was 32 years old when he went to prison. He is now 56. His family needs him to return home and he needs to return home to his family.

Judge Weinstein, this will be 'your fiftieth' year on the bench. Michael has already served 10, 20, 40 and 55 times what you sentenced others in the same case. Please, have mercy on Michael and give him a 2nd chance like you gave all those others.

Have Mercy, Khesed and LEVITICUS 25:11

"A Jubile shall that fiftieth year be unto you."

*I pray that you look into your heart. I pray this with all my heart.*

Respectfully,

Linda Sessa

James Sessa

54 Oxford Road

Manalapan, New Jersey 07726

732-792-0138

Honorable Judge Jack Weinstein

United States District Court

Eastern District of New York

225 Cadman Plaza East

Brooklyn, New York 11201

Reference: United Stated VS. Michael Sessa 92-CR-351

Dear Judge Jack Weinstein,

My name is James Sessa. I wanted to write you a letter in reference to my brother Michael Sessa. Being the baby of 6 boys, I constantly was looking up to my older brothers through my entire life. Whether my brothers were babysitting me or taking me to the park I always thought that we shared a special bond. Till this day my brother Michael and I share a special bond. A bond that I feel the distance that has been between us has still continued to thrive. My wife and I were close to the point where we were the best man & matron of honor at his wedding. We also felt extremely close, where as a couple we chose Michael to be my sons godfather and his wife to be my daughters godmother.

This is the year of jubilee. It states in Leviticus 25:10-

And ye shall hallow the fiftieth year, and proclaim Liberty throughout all the land unto all the inhabitants thereof: It shall be a jubilee unto you, and ye shall return every man unto his possession, and ye shall return every man unto his family.

My brother, Michael was only 32 years old with his daughter under the age of one when he went to prison, he is now 56. His family needs him home and he needs to be home with his family.

This will be your "fiftieth" year on the bench. Michael has already served 10, 20, 40 and 55 times what you sentenced others in the same case. Please have mercy and give him a second chance like others have been granted.

Being an American citizen it was instilled that everyone should be treated equally and we all have the same rights, just as it is carved in stone outside most United States Court houses. "Equal Justice Under Law" This implies that all Americans should be treated equally and there

James Sessa

54 Oxford Road

Manalapan, New Jersey 07726

732-792-0138

are many people that were convicted that did a lot worse than my brother that have been let off or have not served their justice.

After many years we have not let the fact that we don't get to see each other hinder our relationship. I hope that we get the chance to enjoy his presence soon, enjoying holidays, family dinners and relaxing. I hope that you can take my letter into thought, as me and the entire Sessa family look forward to his discharge. I hope that in the near future we will be able to take pleasure in a dinner as a family sitting around a table enjoying each other's company.

Sincerely,

James Sessa

One of the enduring mysteries that DeVecchio never resolves in his book is why he didn't try to reopen Scarpa for five years after his closing in 1975. In fact, thirteen years went by from the time DeVecchio first learned about Scarpa in 1967 to the day in 1980 when he says he finally contacted him.[18]

As DeVecchio tells it, that turned out to be an auspicious meeting for both of them. "From the day of our first sit-down," he writes, "and for the ensuing twelve years, Scarpa furnished incredibly valuable information that led to countless RICO convictions and life sentences."[19] It was Scarpa's "singular" intelligence that gave the government the probable cause needed to obtain seventeen key Title III wiretaps and fifty reauthorizations that brought down the bosses of three of the Five Families in the Mafia Commission case.[20] The inside intel he got from "34" made DeVecchio a rising star in the New York Office, where he was eventually promoted to supervisory special agent in charge of not one but two family squads. Meanwhile, Scarpa remained free to steal millions through murder, drug dealing, hijacking, larceny, and racketeering. By 1991, he felt confident enough to trigger the third and bloodiest war for control of the Colombo crime family.

The relationship between Greg Scarpa and Lin DeVecchio proved to be double-edged. It was that third conflict fed by FBI intelligence that almost cost DeVecchio his job and later came close to landing him in prison. Was the relationship between the killer and the agent the kind of "ultimate perversion" Tony Villano had worried about? Was it, as Brooklyn DA Charles Hynes once contended, "the most stunning example of official corruption" his office had prosecuted?[21] Or, as DeVecchio argues in his book, was he framed" by ambitious agents and incompetent prosecutors?

And there are other questions that beg to be answered. Why did *People v. DeVecchio*—the biggest organized crime case in the New York State Court in recent memory—fall apart two weeks into trial? Was it because of the perjury of Linda Schiro, as alleged, or were there other reasons? Was there any link between the state murder charges leveled against DeVecchio and the federal prosecution of the notorious "Mafia Cops"? And if there was, how might that have affected either case? The answers to those questions lie buried in more than ten thousand pages of court pleadings, trial transcripts, and FBI memos, which we've examined during the search for this book.

---

## New Revelations from "Gaspipe"

Another key to the story may come from the one Mafia boss still alive and in prison who not only committed crimes with Gregory Scarpa, but who insists that he stayed out of jail and furthered his racketeering career by tapping into the same "law enforcement" source as Scarpa. Despite efforts by federal prosecutors and prison officials to silence him, Anthony "Gaspipe" Casso, who broke the law with Greg Scarpa Sr. from the early days of their youth, has come forward to make some surprising allegations that are sure to challenge the conventional media assumptions about the G-man and the hit man.

Veteran organized crime reporter Jerry Capeci, to whom DeVecchio was accused of leaking intelligence back in 1994, once wrote that Greg Scarpa "regarded himself as a James Bond figure." *Mission: Impossible*, wrote Capeci, was his "favorite television show."[22] Clearly, the so-called Grim Reaper saw himself as having a license to kill. The question is, how much help, if any, did he get from Lin DeVecchio in furthering his 007 persona? We'll endeavor to answer that.

This is a story about homicide, duplicity, and government misconduct, where the rigid line between right and wrong grew tenuous and sometimes broke; where the lofty goal of eradicating organized crime forced federal agents to compromise their integrity in a system that suborned the very criminal behavior they were sworn to stop.

It's a system in which different federal judges in the same courthouse sent some Mafiosi to jail for life while releasing others who had committed even more vicious crimes. In the "deal with the devil" made by the FBI in protecting Gregory Scarpa Sr., there are lessons to be learned about the price some FBI agents were willing to pay to defeat "the Mafia enemy." We'll explore all of that in the chapters ahead.

*In Michael Sessa's case, it was the same Judge (Weinstein), in the same Courtroom, who did this.*

Anthony Sessa

54 Oxford Road

Manalapan, New Jersey 07726

Anthony.m.sessa@gmail.com

Phone: 732-792-0138

Honorable Judge Jack B Weinstein

United States District Court

Eastern District of New York

225 Cadman Plaza East

Brooklyn, New York 11201

Ref: United States V. Michael Sessa 92-CR-351

Dear Honorable Judge Weinstein,

I am writing on behalf of Michael Sessa #92-CR-351.

I Anthony Michael Sessa, am writing you this letter to tell you how I as Michael Sessa's godson and nephew saw how much of a great man he is! Throughout my life, my uncle has been there for many people, although I haven't been able to see or visit him, he has impacted my life in many ways. I see how although he isn't physically present in our lives, he is still a good person. Every week along with every holiday it is always exciting when we get to talk to my uncle even if it has to be over the phone and not in person. As a person and an uncle he is constantly looking for the good in situations and in others. He has taught me how to find the good in people and see the light at the end of a tunnel. Being a college graduate, in corporate America, I see that you constantly have to search for the light at the end of the tunnel and know that everything happens for a reason.

My Uncle is a great person and I think that he would be an asset to the American society because he has proven himself, time and time again. It is difficult to know that although he doesn't get to see myself, my father who is one of his 5 brothers, his children, and even his grandchildren, he is a good uncle, brother, father & grandfather under the current circumstances.

My Uncle, Michael self-surrendered almost 24 years ago. He is the youngest one on this case and he is a first time offender. I was extremely surprised when researching the case, that in the half a century as a Federal Judge, Michael was the first defendant you gave a life sentence to. There were many of other defendants on the same case who were 2nd, 3rd and 4th time offenders that were charged with more but sentenced to less time collectively.

When thinking about it my uncle, Michael has already served a "27" year sentence.

Anthony Sessa

54 Oxford Road

Manalapan, New Jersey 07726

Anthony.m.sessa@gmail.com

Phone: 732-792-0138

Another Honorable Judge, who was the lead prosecutor in Michaels case, this year sentenced an Al Qaeda terrorist and stated in his hearing "He certainly was the real deal when it came to terrorism" then continued to give him only a 22 year sentence.

Over every courthouse you will see and what you are supposed to abide by "EQUAL JUSTICE UNDER LAW"

I see in the world today there are many people that have gotten away with a lot worse than the crime he is being accused of. I hope that in the near future we will see that every person will be treated equally. I hope that you can take my letter into consideration, as we as a family look forward to his release, hoping that a holiday in the near future we can have him at the table with us and not just speaking to him over the phone!

Respectfully,


Anthony Sessa

**Jacqueline Sessa**

**54 Oxford Road**

**Manalapan, New Jersey 07726**

**Phone: 732-792-0138**

Honorable Judge Jack Weinstein

United States District Court

Eastern District of New York

225 Cadman Plaza East

Brooklyn, New York 11201

Reference: United Stated VS. Michael Sessa 92-CR-351

Dear Honorable Judge Jack Weinstein,

　　My name is Jacqueline Sessa, and I am writing to you in regards of my uncle, Michael Sessa. Although I have not been able to see my uncle many times throughout my childhood, I know that he has always made an effort to keep close with his family and friends. My father is always on the phone with him catching up and updating each other on what has been going in both of their lives, and it is inspiring to see how much of a positive attitude my uncle has kept throughout his entire sentence.

　　My uncle is always looking at the glass half full, and I truly believe that he deserves a second chance at life. It would be amazing to see him get to spend time that he has lost with his siblings, children, grandchildren, and his nieces and nephews.

　　Sincerely,

Jacqueline Sessa

December 15, 2015

To The Honorable Judge Weinstein,

Reference: United Stated VS. Michael Sessa 92-CR-351

   I am Adeline Sessa, and I work in the business food industry in New York City. I am contacting you about Michael Sessa. I am reaching out because Michael hasn't only been my brother in law, but a really special person to me and many people that I love. This is someone that once meeting my husband, we had a connection with and were the Maid of Honor and Best Man in his and his wife's wedding. My husband and I also chose to have Michael be the god father to my son and his wife be the godmother to my daughter.

   He has been nothing but honest and sincere with me and my family since the day that we have met him. As a brother we always feel safe when we are in Michael's presence. I see how much of a great person he is day in and day out, by what he does for other people, how and what he does day to day for his family, especially his children and grandchildren, even if it is just over the phone. I see how he is always there for everyone all the time. The most important thing in Michael's life is undoubtedly his family and his children that he would do anything for, and I know he is a great influence on their lives.

   I want you to know that he is an upstanding citizen. I hope you consider this information in regards to Michael Sessa. I want to thank you for your time and consideration and hope that we can all be as a family again sitting together enjoying the holidays!

Sincerely,

Adeline Sessa

To Guilane
Caldwell NJ

Dear Judge Weinstein,                                          1.

I'm writing You on the matter concerning the Life of Michael Sessa, # 92-CR-351.

My dear friend Michael has served his time and then some. He never _____ _____ Please find Mercy in your heart. It's been long enough. His family, children, grandchildren are without him Please free my dear friend.

Michael self surrendered almost 24 years ago. He is the youngest one on the case and he is a first time offender.

I boggles the mind the sentence You gave Michael, plus the $2 Million in fines, plus the cost of his incarceration. Yet other defendants in the same case, who were all 2nd, 3rd and 4th time offenders — You sentenced them to a total sentence of '17' Years for a total of more than '20' murders!

Judge Gleeson who was the lead prosecutor in Michael's case, this Year sentenced an Al Qaeda Terrorist and these were Gleeson's words: "He certainly was The Real Deal when it came to Terrorism." Then gave him a '22' Year sentence.

In contrast, Michael has already served a '27' year sentence.

Judge Gleeson was correct when he wrote last Year in his Published decision, U.S.-V.-HOLLOWAY, in his First sentence: "There an injustices in our Criminal justice system, including in this District courthouse

2

Consider this Fact, Michael's case is the only case in History where an F.B.I. Agent -Devecchio- got on the witness stand, testified to murders - That Michael was not charged with - that he -Devecchio- himself got indicted for years later. Agent Devecchio was indicted for 4 murders, plus 4 more murders as Bad Acts in 2006 by the Brooklyn District Attorney's office.
This shocks the conscience and Boggles the mind.

JUSTICE: The Quality of being Just; Fairness.
        The upholding of what is Just; Especially Fair treatment
        To treat adequately; Fairly.
        The Principle of Moral rightness; Equity.

Can You Honestly say, Justice was served in Michael's case

As Judge Gleeson stated in his Holloway decision: "There's a difference between a Department of Prosecutions and a Department of Justice"!

Dear Judge Weinstein, a distinguished Judge as Yourself, knows full well that Your Job, Your oath is to make sure -Justice is done You Must live up to Your Title -HONORABLE...

This is The Year of Jubile and it states:
LEVITICUS 25:10
And Ye Shall Hallow the fiftieth year and proclaim Liberty throughout ----, and ye shall return every man unto his possession, And Ye Shall return every Man unto his Family.

3.

Michael was 32 years old when he walked into prison, he is now 56. His Family needs him to return Home and he needs to return Home to His Family.

Judge Weinstein, this will also be Your 'Fiftieth' Year on the Bench. Michael has already served, 10, 20, 40 and 50 x's, times what You sentenced others to in the same case. PLEASE, have Mercy on Michael and give him a 2nd chance, like You gave all those others.

Have Mercy, khesed and
LEVITICUS 25:11
'A Jubile Shall that Fiftieth Year be unto You.

I Pray that You open Your Heart. I Pray that You look into Your Heart. I Pray this with All of My Heart.

Sincerely,

Donna Karaholio?
34 Scunder Street
N. Andover MA 01845

6/19/22

Dear Judge Allyne Ross

I am writing on behalf of Michael
Sessa. Just want to let you know a little about
Michael. He is a good roll model in prison he
mentors people he also mentored my son Matthew
and Matthew learned from Michael how to be a
mentor. Michael has a very good heart I understand he's
been in prison for 30 yes and it He was a first
time offender. If you could see Michael in prison
he isn't a trouble maker minds his own business
and works in prison. Maybe you could take this
in consideration

Sincirly yours
Donna Karaholios